F36340TV.3924
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
WOODY ALLEN,                                    08 Civ. 3179(TPG) (KNF)

                Plaintiffs,

**INITIAL DISCLOSURE
RESPONSE PURSUANT
TO FEDERAL RULE 26 (a) (1)**

      -against-


AMERICAN APPAREL, INC.,

               Defendant(s)
-----------------------------------------------------------------X

     Defendant, AMERICAN APPAREL, INC. (Hereinafter "AAI"), by its attorneys, LAW

OFFICES OF CURTIS, VASILE, P.C., as and for its Automatic Response to Federal Rule

26, alleges upon information and belief, the following matters:

     **A.**    **Individuals likely to Have Discoverable Information.**

       Woody Allen

       Mia Farrow

       Soon-Yi Previn

       Dov Charney, Chief Executive Officer AAI

       Iris Alonzo, Creative Department AAI

       Chris Berdine, Signage AAI

       Adrian Taylor, Corporate Controller AAI

     **B.**    **Documents, Date Compilations and Tangible Things.**

       Defendant has in its possession documents and/or records regarding its

prior use of its billboards, the company's website and other mediums to make

and advance social and political commentary. Defendant will produce such

documents on a date, time, and at a location which is mutually convenient

for the parties *after* a mutually acceptable protective ordered is entered by the Court.

**C.    Computation of Any Category of Damages.**

Not applicable to answering defendant.

**D.    Insurance Agreements.**

Kindly refer to the attached documents which represents defendant's disclosure of insurance information, as follows:

1.    Commercial Insurance Policy of Insurance issued by Travelers Property Casualty Company of America under Policy No. Y-660-4790A876-TIL-07; and

2.    Commercial Excess Liability (Umbrella) Insurance Policy issued by Travelers Property Casualty Company of America under Policy No. YSM-CUP-4790A876-TIL-07.

The defendant, American Apparel, Inc., hereby reserves the right to supplement and/or amend its responses as information is obtained.

Dated: Merrick, New York
September 2, 2008

LAW OFFICES OF CURTIS, VASILE P.C.

By: _____
Dominick A. Piccininni, Jr. (DP-4303)
Attorneys for Defendant
AMERICAN APPAREL, INC.
2174 Hewlett Avenue
PO Box 801
Merrick, New York 11566-0801
(516) 623 - 1111

TO: LOEB & LOEB LLP
Michael P. Zweig Esq.(MZ-5318)
Christian Carbone(CC-6502)
Shelly Elimelekh (SE-0597)
Attorneys for Plaintiff
345 Park Avenue
New York, NY 10154-1895
(212) 407-4000

STATE OF NEW YORK )
                                         )ss.:
COUNTY OF NASSAU )

MARIANNE FORCE, being duly sworn, deposes and says:

That deponent is not a party to the within action, is over eighteen (18) years of age and resides in WANTAGH, NEW YORK.

That on 2nd day of September , 2008 deponent served the within

INITIAL DISCLOSURE RESPONSE PURSUANT TO FEDERAL RULE 26 (a)(1)

upon the following attorney(s) for that purpose by depositing a true copy of same enclosed in a postpaid properly addressed wrapper, in post office box under the exclusive care and custody of the United States Postal Service within the State of New York.

TO: LOEB & LOEB LLP
       Michael P. Zweig Esq.(MZ-5318)
       Christian Carbone(CC-6502)
       Shelly Elimelekh (SE-0597)
       Attorneys for Plaintiff
       345 Park Avenue
       New York, NY 10154-1895
       (212) 407-4000

                                                                    _____
                                                                    MARIANNE FORCE

Sworn to before me this

2nd day of September, 2008

_____
       Notary Public

PATRICIA M. DANTONE
Notary Public, State Of New York
No. 02DA6072318
Qualified In Nassau County
Commission Expires April 1, 20 _10_



**TRAVELERS**

## COMMERCIAL INSURANCE

A Custom Insurance Policy Prepared for:

AMERICAN APPAREL, INC.
AMERICAN APPAREL RETAIL, INC.
747 WAREHOUSE STREET
BUILDING 4, 7TH FLOOR
LOS ANGELES CA 90021

Presented by:  C M MEIERS COMPANY INC

AAI - 000001

 **TRAVELERS**

One Tower Square, Hartford, Connecticut 06183

TEXTILES MANUFACTURING
COMMON POLICY DECLARATIONS
ISSUE DATE: 04/02/07

POLICY NUMBER: Y-660-4790A876-TIL-07

INSURING COMPANY:
TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

1. NAMED INSURED AND MAILING ADDRESS:
   AMERICAN APPAREL, INC.
   AMERICAN APPAREL RETAIL, INC.  (AS PER IL T8 00)
   747 WAREHOUSE STREET
   BUILDING 4, 7TH FLOOR
   LOS ANGELES, CA 90021

2. POLICY PERIOD:  From 04/01/07 to 04/01/08 12:01 A.M. Standard Time at
   your mailing address.

3. LOCATIONS
   Premises  Bldg.
   Loc. No.   No.  Occupancy            Address

   SEE IL T0 03

4. COVERAGE PARTS FORMING PART OF THIS POLICY AND INSURING COMPANIES:
   COMMERCIAL GENERAL LIABILITY COV PART DECLARATIONS    CG T0 01 11 03 TIL
   EMPLOYEE BENEFITS LIABILITY COV PART DECLARATIONS     CG T0 09 09 93 TIL

5. NUMBERS OF FORMS AND ENDORSEMENTS
   FORMING A PART OF THIS POLICY:   SEE IL T8 01 10 93

6. SUPPLEMENTAL POLICIES: Each of the following is a separate policy
   containing its complete provisions:
   Policy                      Policy No.              Insuring Company

                               SEE CALCULATION OF PREMIUM
                               COMPOSITE RATES ENDORSEMENT

7. PREMIUM SUMMARY:
   Provisional Premium    $ 172,221
   Due at Inception       $ 172,221
   Due at Each            $

NAME AND ADDRESS OF AGENT OR BROKER:          **COUNTERSIGNED BY:**
   C M MEIERS COMPANY INC (VC547)
   21045 CALIFA ST #100
   WOODLAND HILLS, CA 91367                   _____
                                              Authorized Representative

                                              DATE:_____

IL T0 02 11 89     PAGE 1 OF 2
OFFICE: GLENDALE CA

AAI - 000002

 **TRAVELERS**

TAXES AND SURCHARGES

POLICY NUMBER: Y-660-4790A876-TIL-07

EFFECTIVE DATE: 04/01/07

ISSUE DATE: 04/02/07

| DESCRIPTION | AMOUNT |
|---|---|
| NEW JERSEY GUARANTY FUND SURCHARGE - ALL OTHER | 11.00 |
| FL CAT FUND EMERGENCY ASSESSMENT SURCHARGE - A. O. | 62.00 |

IL T0 02 11 89      PAGE  2 OF  2

OFFICE: GLENDALE CA            05C
PRODUCER NAME: C M MEIERS COMPANY INC            VC547

AAI - 000003

 **TRAVELERS**

POLICY NUMBER: Y-660-4790A876-TIL-07

EFFECTIVE DATE: 04-01-07

ISSUE DATE: 04-02-07

LISTING OF FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS

THIS LISTING SHOWS THE NUMBER OF FORMS, SCHEDULES AND ENDORSEMENTS
BY LINE OF BUSINESS.

```
IL TO 02 11 89    COMMON POLICY DECLARATIONS
IL T8 01 10 93    FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS
IL TO 01 05 03    COMMON POLICY CONDITIONS
IL TO 03 04 96    LOCATION SCHEDULE
IL T3 02 07 86    CALCULATION OF PREMIUM-COMPOSITE RATE(S)
IL T8 00          GENERAL PURPOSE ENDORSEMENT
```

COMMERCIAL GENERAL LIABILITY

```
CG TO 01 11 03    COML GENERAL LIABILITY COV PART DEC
CG TO 07 09 87    DECLARATIONS PREMIUM SCHEDULE
CG TO 08 11 03    KEY TO DECLARATIONS PREMIUM SCHEDULE
CG TO 34 11 03    TABLE OF CONTENTS
CG 00 01 10 01    COMMERCIAL GENERAL LIABILITY COV FORM
CG D2 55 11 03    AMENDMENT OF COVERAGE - POLLUTION
CG 21 70 11 02    CAP ON LOSSES CERTIFIED ACTS TERRORISM
CG D0 37 04 05    OTHER INSURANCE-ADDITIONAL INSUREDS
CG D1 87 11 03    MANUFACTURERS AND WHOLESALERS XTEND END
CG D2 03 12 97    AMEND-NON CUMULATION OF EACH OCC
CG D2 34 01 05    WEB XTEND - LIABILITY
CG D2 43 01 02    FUNGI OR BACTERIA EXCLUSION
CG D2 56 11 03    AMENDMENT OF COVERAGE
CG D2 88 11 03    EMPLOYMENT-RELATED PRACTICES EXCLUSION
CG D3 26 01 04    EXCLUSION-UNSOLICITED COMMUNICATIONS
CG D3 56 01 05    MOBILE EQUIP/EXCL VEHICLES SUB TO MV LAW
CG 21 41 11 85    EXCLUSION-INTERCOMPANY PRODUCTS SUITS
CG 21 51 09 89    AMEND LIQUOR LIAB EXCL EXCEPT SCHED ACT
CG D1 42 01 99    EXCLUSION-DISCRIMINATION
CG D2 42 01 02    EXCLUSION WAR
CG T3 06 11 03    EXCL-DESIG PRODUCTS AND REL COMP/OPS
CG T3 23 07 02    EXCL-AIRCRAFT PRODUCTS AND GROUNDING
CG T4 78 02 90    EXCLUSION-ASBESTOS
CG F2 38 11 03    POLLUTION EXCLUSION - LOUISIANA
CG F2 58 11 03    WA CHANGES
CG F4 23 05 06    AMENDATORY ENDORSEMENT - VA EBL
CG 01 03 06 06    TEXAS CHANGES
CG 01 54 09 06    VERMONT CHANGES-POLLUTION
CG 01 68 12 04    MICHIGAN CHANGES
CG 26 20 10 93    NJ CHANGES-LOSS INFORMATION
CG 26 21 10 91    NY CHANGES-TRANSFER OF DUTIES
CG 26 73 06 02    MARYLAND CHANGES - PREMIUM AUDIT COND
CG F1 32 09 06    TX CHGS-XTEND END EX AIRCRAFT CHARTERED
CG F1 68 01 99    EXCLUSION - LEAD - NEW JERSEY
CG F2 09 11 00    VIRGINIA CHANGES
CG F2 11 11 03    ILLINOIS CHANGES - INSURED CONTRACT
```

AAI - 000004

 **TRAVELERS**

POLICY NUMBER: Y-660-4790A876-TIL-07
EFFECTIVE DATE: 04-01-07
ISSUE DATE: 04-02-07

EMPLOYEE BENEFITS LIABILITY

```
CG T0 09 09 93    EMPLOYEE BENEFITS LIAB COV PART DEC
CG T0 43 11 88    EMPLOYEE BENEFITS LIAB TABLE OF CONTENTS
CG T1 01 07 86    EMPLOYEE BENEFITS LIABILITY COV FORM
CG T5 30 06 89    AMENDMENT-EBL
CG D0 38 03 95    EXCLUSION-IRC VIOLATIONS
CG T4 84 11 88    EXCL-COBRA-EBL
CG T4 85 11 88    ADDITIONAL EXCLUSION-EBL
CG T5 21 05 90    EXCL-DMGES UNDER CERTAIN EMPL BEN PROG
CG F4 17 12 05    TX CHANGES - DUTIES
CG T7 63 01 89    NC AMENDATORY ENDORSEMENT-EBL
CG T7 66 07 88    NC CHANGES-LOSS INFORMATION-EBL
CG T9 07 07 86    MD-AMENDATORY ENDORSEMENT-EBL
CG T9 18 07 86    MI CHANGES-PREJUDGEMENT INTEREST - EBL
CG T9 26 07 86    RI CHANGES-PREJUDGMENT INTEREST - EBL
CG T9 86 10 87    FL-AMENDATORY ENDORSEMENT - EBL
CG T9 88 10 87    MD-AMENDATORY ENDORSEMENT - EBL
```

MULTIPLE SUBLINE ENDORSEMENTS

```
C = COMMERCIAL GENERAL LIABILITY
E = EMPLOYEE BENEFITS LIABILITY
L = LIQUOR LIABILITY

CG 01 04 12 04    NEW YORK CHANGES-PREMIUM AUDIT   (C, L)
CG 01 18 12 04    LA CHANGES-LEGAL ACTION AGAINST US  (C, L)
CG 02 00 07 05    IL CHANGES -CANCELLATION AND NONRENEWAL  (C, E, L)
CG 02 01 12 04    MD CHANGES  (C, L)
CG 32 34 01 05    CALIFORNIA CHANGES  (C, L)
```

INTERLINE ENDORSEMENTS

```
IL T3 68 01 06    FEDERAL TERRORISM RISK INSURANCE ACT
IL T3 76 11 02    CAP ON LOSSES - CERTIFIED ACTS TERRORISM
IL 00 21 07 02    NUCLEAR ENERGY LIAB EXCL END-BROAD FORM
IL 00 23 07 02    NUCLEAR ENERGY LIABILITY EXCLUSION ENDT
IL 01 26 07 02    VT CHANGES-STATUTORY LIABILITY
IL 01 28 07 01    RI CHANGES-PREJUDGMENT INTEREST
IL 01 38 05 04    VIRGINIA CHANGES-CANCELLATION
IL 01 40 11 05    CONNECTICUT CHANGES - CIVIL UNION
IL 01 62 04 06    ILLINOIS CHANGES - DEFENSE COSTS
IL 01 68 05 02    TEXAS CHANGES-DUTIES
IL 01 97 07 02    RHODE ISLAND CHANGES
IL 01 98 07 02    NUCLEAR ENERGY LIABILITY EXCLUSION
IL 02 08 12 05    NJ CHANGES-CANCELLATION AND NONRENEWAL
IL 02 19 07 02    VT CHANGES - CANCELLATION & NONRENEWAL
IL 02 28 04 06    CO CHANGES-CANCELLATION AND NONRENEWAL
IL 02 44 11 05    OHIO CHANGES-CANCELLATION & NONRENEWAL
```

AAI - 000005

 **TRAVELERS**

POLICY NUMBER:  Y-660-4790A876-TIL-07

EFFECTIVE DATE:  04-01-07

ISSUE DATE:  04-02-07

INTERLINE ENDORSEMENTS (CONTINUED)

```
IL 02 46 07 02   PA CHANGES-CANCELLATION & NONRENEWAL
IL 02 49 07 02   SOUTH CAROLINA CHANGES-CANCELLATION
IL 02 50 07 02   TN CHANGES-CANCELLATION & NONRENEWAL
IL 02 51 02 04   NV CHANGES-CANCELLATION & NONRENEWAL
IL 02 58 07 02   AZ CHANGES-CANCELLATION & NONRENEWAL
IL 02 60 07 05   CT CHANGES-CANCELLATION & NONRENEWAL
IL 02 62 07 02   GA CHANGES-CANCELLATION & NONRENEWAL
IL 02 68 11 05   NY CHANGES-CANCELLATION AND NONRENEWAL
IL 02 69 07 02   NC CHANGES - CANCELLATION AND NONRENEWAL
IL 02 70 11 04   CA CHANGES-CANCELLATION & NON-RENEWAL
IL 02 73 01 06   RI CHANGES-CANCELLATION & NONRENEWAL
IL 02 75 05 03   TX CHANGES-CANCELLATION AND NONRENEWAL
IL 02 77 05 05   LA CHANGES-CANCELLATION AND NONRENEWAL
IL 02 78 07 02   DC CHANGES - CANCELLATION AND NONRENEWAL
IL 02 79 01 06   OR CHANGES-CANCELLATION AND NONRENEWAL
IL 02 86 07 02   MI CHANGES-CANCELLATION AND NONRENEWAL
IL 09 10 07 02   PENNSYLVANIA NOTICE
IL T3 05 12 99   INSURER AMENDMENT END
IL T9 56 04 93   TX CHANGES-NOTICE OF CLAIM OR SETTLEMENT
```

IL T8 01 10 93

AAI - 000006

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions:

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
2. We may cancel this policy or any Coverage Part by mailing or delivering to the first Named Insured written notice of cancellation at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.
3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.
4. Notice of cancellation will state the effective date of cancellation. If the policy is cancelled, that date will become the end of the policy period. If a Coverage Part is cancelled, that date will become the end of the policy period as respects that Coverage Part only.
5. If this policy or any Coverage Part is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us as part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:
1. Make inspections and surveys at any time;
2. Give you reports on the conditions we find; and
3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
1. Are safe or healthful; or
2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## E. PREMIUMS

1. The first Named Insured shown in the Declarations:
   a. Is responsible for the payment of all premiums; and
   b. Will be the payee for any return premiums we pay.
2. We compute all premiums for this policy in accordance with our rules, rates, rating plans, premiums and minimum premiums. The premium shown in the Declarations was computed based on rates and rules in effect at the time the policy was issued. On each renewal continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have rights and duties but only with respect to that property.

IL T0 01 05 03

Includes copyrighted material of Insurance Services Office, with its permission.   Copyright, Insurance Services Office, 1989

Page 1 of 2

AAI - 000007

This policy consists of the Common Policy Declarations and the Coverage Parts and endorsements listed in that declarations form.

In return for payment of the premium, The Travelers agrees with the Named Insured to provide the insurance afforded by a Coverage Part forming part of this policy. That insurance will be provided by the company indicated as insuring company in the Common Policy Declarations by the abbreviation of its name opposite that Coverage Part.

The companies listed below (each a stock company) have executed this policy, but it is valid only if countersigned on the Common Policy Declarations by our authorized representative.

The Travelers Indemnity Company (IND)
The Phoenix Insurance Company (PHX)
The Charter Oak Fire Insurance Company (COF)
Travelers Property Casualty Company of America (TIL)
• The Travelers Indemnity Company of Connecticut (TCT)
The Travelers Indemnity Company of America (TIA)

*Formerly known as the Travelers Indemnity Company of Rhode Island (TRI)

General Counsel & Secretary

Chairman of the Board & Chief Executive Officer

IL T0 01 05 03

AAI - 000008

**LOCATION SCHEDULE**                    **POLICY NUMBER:** Y-660-4790A876-TIL-07

This Schedule of Locations and Buildings applies to the Common Policy Declarations for the period
04-01-07 to 04-01-08 .

| Loc. No. | Bldg. No. | Address | Occupancy |
|---|---|---|---|
| 1 | 1 | 747 WAREHOUSE ST. LOS ANGELES, CA 90021 | FACTORY / OFFICE/WAREHOUSE |
| 2 | 2 | 748 TERMINAL ST. LOS ANGELES, CA 90021 | WAREHOUSE / STORAGE |
| 3 | 3 | 1020 E 59TH STREET LOS ANGELES, CA 90001 | KNITTING OPERATIONS ONLY |
| 4 | 4 | 12537 CERESE AVENUE HAWTHORNE, CA 90250 | DYE HOUSE OPERATIONS ONLY |
| 5 | 5 | 2111-2117 W. SUNSET BLVD. LOS ANGELES, CA 90026 | RETAIL STORE |
| 6 | 6 | 712-714 BROADWAY NEW YORK, NY 10012 | RETAIL STORE |
| 7 | 7 | 373 6TH AVENUE NEW YORK, NY 10014 | RETAIL STORE |
| 8 | 8 | 183-185 E. HOUSTON NEW YORK, NY 10002 | RETAIL STORE |
| 9 | 9 | 121 SPRING STREET NEW YORK, NY 10012 | RETAIL STORE |
| 10 | 10 | 374 E. 2ND STREET LOS ANGELES, CA 90012 | RETAIL STORE |
| 11 | 11 | 104 S. ROBERTSON BLVD. LOS ANGELES, CA 90048 | RETAIL STORE |
| 12 | 12 | 104 N. 6TH STREET BROOKLYN, NY 11211 | RETAIL STORE |
| 13 | 13 | 6922 HOLLYWOOD BLVD. HOLLYWOOD, CA 90028 | RETAIL STORE |

IL T0 03 04 96

AAI - 000009

**LOCATION SCHEDULE**                    **POLICY NUMBER:** Y-660-4790A876-TIL-07

This Schedule of Locations and Buildings applies to the Common Policy Declarations for the period
04-01-07 to 04-01-08 .

| Loc. No. | Bldg. No. | Address | Occupancy |
|---|---|---|---|
| 14 | 14 | 1234 S.W. STARK<br>PORTLAND, OR 97205 | RETAIL STORE |
| 15 | 15 | 3412 S.E. HAWTHORNE BLVD.<br>PORTLAND, OR 97214 | RETAIL STORE |
| 16 | 16 | 112 COURT STREET<br>BROOKLYN, NY 11201 | RETAIL STORE |
| 17 | 17 | 3867 FOURTH AVENUE<br>SAN DIEGO, CA 92103 | RETAIL STORE |
| 18 | 18 | 1090 THIRD AVENUE<br>NEW YORK, NY 10021 | RETAIL STORE |
| 19 | 19 | 7239 W. ALASKA DRIVE<br>LAKEWOOD, CO 80226 | RETAIL STORE |
| 20 | 20 | 718-720 LINCOLN ROAD<br>MIAMI, FL 33139-9999 | RETAIL STORE |
| 21 | 21 | 1615 HAIGHT STREET<br>SAN FRANCISCO, CA 94117 | RETAIL STORE |
| 22 | 22 | 4665 HOLLYWOOD BLVD.<br>LOS ANGELES, CA 90027 | RETAIL STORE |
| 23 | 23 | 6611 HOLLYWOOD BLVD.<br>LOS ANGELES, CA 90028 | RETAIL STORE |
| 24 | 24 | 2174 UNION STREET<br>SAN FRANCISCO, CA 94123 | RETAIL STORE |
| 25 | 25 | 1563 N. MILWAUKEE AVENUE<br>CHICAGO, IL 60622 | RETAIL STORE |
| 26 | 26 | 498 RED APPLE COURT #640<br>CENTRAL VALLEY, NY 10917 | RETAIL STORE |

**IL T0 03 04 96**

AAI - 000010

**LOCATION SCHEDULE**                    **POLICY NUMBER:** Y-660-4790A876-TIL-07

This Schedule of Locations and Buildings applies to the Common Policy Declarations for the period

04-01-07 to 04-01-08 .

| Loc. No. | Bldg. No. | Address | Occupancy |
|----------|-----------|---------|-----------|
| 27 | 27 | 1060 WESTWOOD BLVD. LOS ANGELES, CA 90024 | RETAIL STORE |
| 28 | 28 | 740 E. VENTURA BLVD. #718 CAMARILLO, CA 93010 | RETAIL STORE |
| 29 | 29 | 2301 TELEGRAPH AVENUE BERKELEY, CA 94704 | RETAIL STORE |
| 30 | 30 | 950 CHURCH STREET EVANSTON, IL 60201 | RETAIL STORE |
| 31 | 31 | 138 NEWBURY STREET BOSTON, MA 02116 | RETAIL STORE |
| 32 | 32 | 740 S. RAMPART BLVD., BLDG 7, #6 LAS VEGAS, NV 89145 | RETAIL STORE |
| 33 | 33 | 840 OCEAN DRIVE MIAMI, FL 33139-9999 | RETAIL STORE |
| 34 | 34 | 935 N. RUSH STREET CHICAGO, IL 60611 | RETAIL STORE |
| 35 | 35 | 4345 UNIVERSITY WAY NE SEATTLE, WA 98105 | RETAIL STORE |
| 36 | 36 | 1125-27 LIGHT STREET BALTIMORE CITY, MD 21230 | RETAIL STORE |
| 37 | 37 | 608 DUVAL STREET KEY WEST, FL 33040-9999 | RETAIL STORE |
| 38 | 38 | 802 N. SAN VICENTE BLVD. LOS ANGELES, CA 90069 | RETAIL STORE |
| 39 | 39 | 526 S. MILL AVENUE TEMPE, AZ 85281 | RETAIL STORE |

IL T0 03 04 96                                              Page    3

AAI - 000011

**LOCATION SCHEDULE**                    **POLICY NUMBER:** Y-660-4790A876-TIL-07

This Schedule of Locations and Buildings applies to the Common Policy Declarations for the period
04-01-07  to  04-01-08 .

| Loc. No. | Bldg. No. | Address | Occupancy |
|---|---|---|---|
| 40 | 40 | 7763 MELROSE AVENUE<br>LOS ANGELES, CA 90046 | RETAIL STORE |
| 41 | 41 | 2654 MAIN STREET<br>SANTA MONICA, CA 90405 | RETAIL STORE |
| 42 | 42 | 363 GRANT AVENUE<br>SAN FRANCISCO, CA 94108 | RETAIL STORE |
| 43 | 43 | 555 11TH STREET<br>WASHINGTON, DC 20004 | RETAIL STORE |
| 44 | 44 | 837 W. ARMITAGE<br>CHICAGO, IL 60601 | RETAIL STORE |
| 45 | 45 | 613-619 E. LIBERTY STREET<br>ANN ARBOR, MI 48104 | RETAIL STORE |
| 46 | 46 | 1280 GARNET AVENUE<br>SAN DIEGO, CA 92109 | RETAIL STORE |
| 47 | 47 | 225 MIRACLE MILE<br>CORAL GABLES, FL 33134-9999 | RETAIL STORE |
| 48 | 48 | 3030 GRAND AVENUE<br>MIAMI, FL 33133-9999 | RETAIL STORE |
| 49 | 49 | 159 WEYBOSSET STREET<br>PROVIDENCE, RI 02903 | RETAIL STORE |
| 50 | 50 | 3661 WALNUT STREET<br>PHILADELPHIA, PA 19104 | RETAIL STORE |
| 51 | 51 | 122 S. ROBERTSON BLVD. #204<br>LOS ANGELES, CA 90048 | RETAIL STORE |
| 52 | 52 | 1221 N. HIGH STREET<br>COLUMBUS, OH 43201 | RETAIL STORE |

IL T0 03 04 96

AAI - 000012

**LOCATION SCHEDULE**                    **POLICY NUMBER:** Y-660-4790A876-TIL-07

This Schedule of Locations and Buildings applies to the Common Policy Declarations for the period
04-01-07 to 04-01-08 .

| Loc. No. | Bldg. No. | Address | Occupancy |
|---|---|---|---|
| 53 | 53 | 348 KING STREET<br>CHARLESTON, SC 29401 | RETAIL STORE |
| 54 | 54 | 1611 WALNUT STREET<br>PHILADELPHIA, PA 19102 | RETAIL STORE |
| 55 | 55 | 3126 N. BROADWAY STREET<br>CHICAGO, IL 60657 | RETAIL STORE |
| 56 | 56 | 207 MAIN STREET<br>HUNTINGTON BEACH, CA 92648 | RETAIL STORE |
| 57 | 57 | 1841 BROADWAY<br>NEW YORK, NY 10023 | RETAIL STORE |
| 58 | 58 | 181-189 EIGHT AVENUE<br>NEW YORK, NY 10011 | RETAIL STORE |
| 59 | 59 | 405 S. WASHINGTON AVENUE<br>ROYAL OAK, MI 48067 | RETAIL STORE |
| 60 | 60 | 860 EAST 13TH AVENUE<br>EUGENE, OR 97401 | RETAIL STORE |
| 61 | 61 | 1124-1130 PEARL STREET<br>BOULDER, CO 80302 | RETAIL STORE |
| 62 | 62 | 145 CHERRY STREET<br>BURLINGTON, VT 05401 | RETAIL STORE |
| 63 | 63 | 1531 PACIFIC AVENUE<br>SANTA CRUZ, CA 95060 | RETAIL STORE |
| 64 | 64 | 800 SPRING STREET<br>ATLANTA, GA 30308 | RETAIL STORE |
| 65 | 65 | 119-121 EAST 23RD STREET<br>NEW YORK, NY 10010 | RETAIL STORE |

IL T0 03 04 96

AAI - 000013

**LOCATION SCHEDULE**    **POLICY NUMBER:** Y-660-4790A876-TIL-07

This Schedule of Locations and Buildings applies to the Common Policy Declarations for the period

04-01-07  to  04-01-08 .

| Loc. No. | Bldg. No. | Address | Occupancy |
|---|---|---|---|
| 66 | 66 | 1718 COVENTRY ROAD<br>CLEVELAND, OH 44118 | RETAIL STORE |
| 67 | 67 | 80 HUDSON STREET<br>HOBOKEN, NJ 07030 | RETAIL STORE |
| 68 | 68 | 318 W. BROUGHTON STREET<br>SAVANNAH, GA 31401 | RETAIL STORE |
| 69 | 69 | 59 N. MAIN STREET<br>SOUTH NORWALK, CT 06854 | RETAIL STORE |
| 70 | 70 | 314 FLATBUSH AVENUE<br>BROOKLYN, NY 11238 | RETAIL STORE |
| 71 | 71 | 1512 LARIMER ST. #R28, R21A<br>DENVER, CO 80226 | RETAIL STORE |
| 72 | 72 | 701 LADY STREET #B<br>COLUMBIA, SC 29201 | RETAIL STORE |
| 73 | 73 | 5331 E. MOCKINGBIRD LANE #17<br>DALLAS, TX 75206 | RETAIL STORE |
| 74 | 74 | 1504 CAMDEN ROAD #300<br>CHARLOTTE, NC 28203 | RETAIL STORE |
| 75 | 75 | 5509-11 WALNUT STREET<br>PITTSBURGH, PA 15232 | RETAIL STORE |
| 76 | 76 | 1133 EUCLID AVE., N.E.<br>ATLANTA, GA 30307 | RETAIL STORE |
| 77 | 77 | 3140 A.W. CARY STREET<br>RICHMOND, VA 23221 | RETAIL STORE |
| 78 | 78 | 140 WEST BROADWAY<br>NEW YORK, NY 10005 | RETAIL STORE |

AAI - 000014

**LOCATION SCHEDULE**                    **POLICY NUMBER:** Y-660-4790A876-TIL-07

This Schedule of Locations and Buildings applies to the Common Policy Declarations for the period
04-01-07  to  04-01-08 .

| Loc. No. | Bldg. No. | Address | Occupancy |
|---|---|---|---|
| 79 | 79 | 115 EAST GRAND RIVER AVE.<br>EAST LANSING, MI 48823 | RETAIL STORE |
| 80 | 80 | 7467 MELROSE AVE., #17<br>LOS ANGELES, CA 90046 | RETAIL STORE |
| 81 | 81 | 528 & 530 S. MAIN STREET<br>MEMPHIS, TN 38103 | RETAIL STORE |
| 82 | 82 | 1 INDIAN HILL BLVD. #D100<br>CLAREMONT, CA 91711 | RETAIL STORE |
| 83 | 83 | 237-39 SMITH STREET<br>BROOKLYN, NY 11231 | RETAIL STORE |
| 84 | 84 | 243 WEST MCMILLAN STREET<br>CINCINNATI, OH 45219 | RETAIL STORE |
| 85 | 85 | 15 SW 1ST AVENUE<br>GAINESVILLE, FL 32601-9999 | RETAIL STORE |
| 86 | 86 | 8701 COLESVILLE ROAD<br>SILVER SPRINGS, MD 20233 | RETAIL STORE |
| 87 | 87 | 200 BROADWAY AVENUE EAST<br>SEATTLE, WA 98102 | RETAIL STORE |
| 88 | 88 | 7925 GIRARD AVENUE<br>LA JOLLA, CA 92037 | RETAIL STORE |
| 89 | 89 | 5855 SUNSET DRIVE<br>MIAMI, FL 33143-9999 | RETAIL STORE |
| 90 | 90 | 1686 JEFFERSON AVENUE<br>MIAMI BEACH, FL 33139-9999 | STORAGE FOR LOC. 20 |
| 91 | 91 | 320 BROADWAY<br>NASHVILLE, TN 37201 | RETAIL STORE |

IL T0 03 04 96                                    Page    7

AAI - 000015

**LOCATION SCHEDULE**                    **POLICY NUMBER:** Y-660-4790A876-TIL-07

This Schedule of Locations and Buildings applies to the Common Policy Declarations for the period

04-01-07  to  04-01-08 .

| Loc. No. | Bldg. No. | Address | Occupancy |
|---|---|---|---|
| 92 | 92 | 306 W. 5TH STREET<br>LOS ANGELES, CA 90013 | RETAIL STORE |
| 93 | 93 | 200 N. BROADWAY<br>SANTA ANA, CA 92701 | RETAIL STORE |
| 94 | 94 | 1665 WESTHEIMER ROAD<br>HOUSTON, TX 77006 | RETAIL STORE |
| 95 | 95 | 1019 STATE STREET<br>SANTA BARBARA, CA 93101 | RETAIL STORE |
| 96 | 96 | 3400 AROUND LENNOX ROAD NORTHEAST<br>SUITE 207-212<br>ATLANTA, GA 30332 | RETAIL STORE |
| 97 | 97 | 47 BRATTLE STREET<br>CAMBRIDGE, MA 02138 | RETAIL STORE |
| 98 | 98 | 3310 MAGAZINE STREET<br>NEW ORLEANS, LA 70115 | RETAIL STORE |
| 99 | 99 | 2931 BROADWAY<br>NEW YORK, NY 10025 | RETAIL STORE |
| 100 | 100 | 1784 WEST AVENUE<br>MIAMI BEACH, FL 33139-9999 | STORAGE |
| 101 | 101 | 142 FIFTH AVENUE<br>NEW YORK, NY 10011 | RETAIL STORE |
| 102 | 102 | 920 EAST UNIVERSITY BLVD<br>TUCSON, AZ 85719 | RETAIL STORE |
| 103 | 103 | 1500 6TH AVENUE STE7<br>SEATTLE, WA 98101 | RETAIL STORE |
| 104 | 104 | 3805 FORBES AVE 4TH WARD<br>PITTSBURGH, PA 15213 | RETAIL STORE |

AAI - 000016

**LOCATION SCHEDULE**                    **POLICY NUMBER:** Y-660-4790A876-TIL-07

This Schedule of Locations and Buildings applies to the Common Policy Declarations for the period
04-01-07 to 04-01-08 .

| Loc. No. | Bldg. No. | Address | Occupancy |
|------|------|---------|-----------|
| 105 | 105 | 351 S FULLER #4G<br>LOS ANGELES, CA 90036 | APPARTMENT |
| 106 | 106 | 530 MOLINO ST #309<br>LOS ANGELES, CA 90013 | APPARTMENT |
| 107 | 107 | 1466 MORTON PLACE<br>LOS ANGELES, CA 90026 | APPARTMENT |
| 108 | 108 | 1351 PENNSYLVIANIA AVE<br>LOS ANGELES, CA 90033 | APPARTMENT |
| 109 | 109 | 1301 KEARNEY STREET<br>LOS ANGELES, CA 90033 | APPARTMENT |
| 110 | 110 | 1115 DOUGLAS STREET<br>LOS ANGELES, CA 90026 | APPARTMENT |
| 111 | 111 | 3202 1/2 W SUNSET BL #208, 209, 210<br>LOS ANGELES, CA 90026 | APPARTMENT |
| 112 | 112 | 920 1/2 EUCLID AVE<br>LOS ANGELES, CA 90023 | APPARTMENT |
| 113 | 113 | 711 1/2, 711 E EDGEWARE<br>LOS ANGELES, CA 90026 | APPARTMENT |
| 114 | 114 | 3863 4TH AVENUE<br>SAN DIEGO, CA 92103 | APPARTMENT |
| 115 | 115 | 203 1/2 BOYLSTONE<br>LOS ANGELES, CA 90026 | APPARTMENT |
| 116 | 116 | 2113 W SUNSET BLVD #4<br>LOS ANGELES, CA 90026 | APPARTMENT |
| 117 | 117 | 1113 1/2 DOUGLAS ST<br>LOS ANGELES, CA 90026 | APPARTMENT |

AAI - 000017

**LOCATION SCHEDULE**                    **POLICY NUMBER:** Y-660-4790A876-TIL-07

This Schedule of Locations and Buildings applies to the Common Policy Declarations for the period
04-01-07  to  04-01-08 .

| Loc. No. | Bldg. No. | Address | Occupancy |
|---|---|---|---|
| 118 | 118 | 179 E HOUSTON ST #3B, #6B,<br>NEW YORK, NY 10002 | APPARTMENT |
| 119 | 119 | 1608 MERIDIAN AVE #2<br>MIAMI BEACH, FL 33139-9999 | APPARTMENT |
| 120 | 120 | 199 ORCHARD STREET #3C, #6C<br>NEW YORK, NY 10014 | APPARTMENT |
| 121 | 121 | 156 ORCHARD STREET #3A<br>NEW YORK, NY 10002 | APPARTMENT |
| 122 | 122 | 1201 W COURT STREET<br>LOS ANGELES, CA 90026 | APPARTMENT |
| 123 | 123 | 874 BROADWAY #501<br>NEW YORK, NY 10003 | APPARTMENT |
| 124 | 124 | 818 S GRAND AVE #707<br>LOS ANGELES, CA 90017 | APPARTMENT |
| 125 | 125 | 825 JEFFERSON AVE #2<br>MIAMI BEACH, FL 33139-9999 | APPARTMENT |
| 126 | 126 | 740 10TH STREET #108<br>MIAMI BEACH, FL 33139-9999 | APPARTMENT |
| 127 | 127 | 1115 1/2 DOUGLAS ST<br>LOS ANGELES, CA 90026 | APPARTMENT |
| 128 | 128 | 46 WEST COLORADO BLVD<br>PASADENA, CA 91105 | RETAIL STORE |
| 129 | 129 | 170 UNIVERSITY AVENUE<br>PALO ALTO, CA 94301 | RETAIL STORE |

AAI - 000018

POLICY NUMBER:  Y-660-4790A876-TIL-07                    ISSUE DATE:  04-02-07

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CALCULATION OF PREMIUM - COMPOSITE RATES

## A. SCHEDULE

1. This endorsement modifies insurance provided under the following Coverage Part(s):

   COMMERCIAL GENERAL LIABILITY

2. This endorsement applies to the Declarations from    04-01-07   to  04-01-08    12:01 A.M. Standard Time at your mailing address shown in the Common Policy Declarations.

3. Definition of Premium Base (Bases):

   SEE SCHEDULE

4. Exceptions (if any) to compositing of premium calculation:

5. Premium Schedule

| COVERAGE | PREMIUM BASE |
|----------|--------------|
| SEE SCHEDULE | |

| ESTIMATED EXPOSURE | RATE | ADVANCE PREMIUM |
|--------------------|------|-----------------|
| SEE SCHEDULE | | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

## B. PROVISIONS

1. Referring to the Schedule above, the premium for the Coverage Parts shown in item 1, except with respect to any exceptions shown in item 3, shall be computed in accordance with the premium base (bases) and rate (rates) designated in item 5.

2. The premium for the excepted hazards shall be computed in accordance with the rates and rules filed by us or on our behalf.

3. The advance premium stated above is an estimated premium for the Declarations Period. Upon termination of this period, the earned premium shall be computed in accordance with the policy and this endorsement.  If the earned premium thus computed exceeds the estimated advance premium paid, you shall pay the excess to us; if less, we shall return to you the unearned paid portion.  Rates and premiums for any subsequent Declarations Periods shall be determined at the inception date of those respective periods and shall be specified in endorsements to be added to the policy.  After termination of each period, the earned premium shall be computed in accordance with the policy and this endorsement.

IL T3 02 07 86                                                            Page 1 of 1

AAI - 000019

POLICY NUMBER: Y-660-4790A876-TIL-07                    GENERAL PURPOSE ENDORSEMENT

ITEM 1 NAMED INSURED TO READ:

AMERICAN APPAREL, INC
AMERICAN APPAREL RETAIL, INC.
AMERICAN APPAREL DYEING & FINISHING, INC.
AMERICAN APPAREL 1090, INC.
KCL KNITTING, LLC

AAI - 000020

# GENERAL LIABILITY

AAI - 000021

# GENERAL LIABILITY

AAI - 000022

 **TRAVELERS**

One Tower Square, Hartford, Connecticut 06183

**COMMERCIAL GENERAL LIABILITY
COVERAGE PART DECLARATIONS**

**POLICY NO.:** Y-660-4790A876-TIL-07
**ISSUE DATE:** 04-02-07

**INSURING COMPANY:**
TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

**DECLARATIONS PERIOD:** From 04-01-07 to 04-01-08  12:01 A.M. Standard Time at your mailing address shown in the Common Policy Declarations.

The Commercial General Liability Coverage Part consists of these Declarations and the Coverage Form shown below.

1. **COVERAGE AND LIMITS OF INSURANCE:**

   **COMMERCIAL GENERAL LIABILITY COVERAGE FORM**          **LIMITS OF INSURANCE**

| | |
|---|---|
| General Aggregate Limit (Other than Products-Completed Operations) | $ 2,000,000 |
| Products-Completed Operations Aggregate Limit | $ 2,000,000 |
| Personal & Advertising Injury Limit | $ 1,000,000 |
| Each Occurrence Limit | $ 1,000,000 |
| Damage To Premises Rented To You Limit (any one premises) | $ 100,000 |
| Medical Expense Limit (any one person) | $ 5,000 |

2. **AUDIT PERIOD:** ANNUAL

3. **FORM OF BUSINESS:** CORPORATION

4. **NUMBERS OF FORMS, SCHEDULES AND ENDORSEMENTS FORMING PART OF THIS COVERAGE PART ARE ATTACHED AS A SEPARATE LISTING.**

## COMMERCIAL GENERAL LIABILITY COVERAGE
## IS SUBJECT TO A GENERAL AGGREGATE LIMIT

CG T0 01 11 03

Page 1 of 1

PRODUCER: C M MEIERS COMPANY INC          VC547          OFFICE: GLENDALE CA          05C

AAI - 000023

**DECLARATIONS PREMIUM SCHEDULE**          **POLICY NUMBER:** Y-660-4790A876-TIL-07

This Schedule applies to the Declarations for the period of    04-01-07    to    04-01-08

It shows all of your known rating classes as of the effective date.  Any exceptions will be so noted.  This includes all locations you own, rent or occupy.

| OPN NO. | LOC/ BLDG NO. | CLASS DESCRIPT/ CODE NO. | SUBLINE | PREMIUM BASE/ EXPOSURE | RATES | ADVANCE PREMIUM |
|---|---|---|---|---|---|---|
| MINIMUM PREMIUMS | | | | | | |
| | LOB | | $250 | | | |
| | | GENERAL LIABILITY COMPOSITE-RETAIL | | | | |
| | | 52099    COMBINED | S | 92,550,004 | .973 | 90,052 |
| | | GENERAL LIABILITY COMPOSITE-MANUFACTURING - TEXTILES | | | | |
| | | 22000    COMBINED | S | 172,000,000 | .466 | 80,152 |
| | | GENERAL LIABILITY COMPOSITE-APARTMENT BUILDINGS | | | | |
| | | 65524    COMBINED | U | 24 | 44.958 | 1,079 |
| | | COVERAGE PART TOTAL | | | | 171,283 |

*This class is subject to the prem/ops transition program.

☐ If an "X" is entered in this box, these Declarations are completed on the Premium Schedule Extension CG T0 12.

CG T0 07 09 87                                        PAGE    1  (END)

AAI - 000024

## KEY TO DECLARATIONS PREMIUM SCHEDULE

**ABBREVIATIONS:**

CLASS DESCRIPT – means CLASS DESCRIPTION

LOC/BLDG NO. – means LOCATION/BUILDING NUMBER

OPN NO. – means OPERATION NUMBER

PREM/OPS – means PREMISES/OPERATIONS

PROD/C-OPS – means PRODUCTS/COMPLETED OPERATIONS

**PREMIUM BASE:**

| Key Letter | Premium Base | How Rates Apply |
|---|---|---|
| a | Area | per 1,000 square feet |
| c | Total Cost | per $1,000 of total cost |
| m | Admissions | per 1,000 admissions |
| o | Total Operating Expense | per $1,000 of total operating expenditures |
| p | Payroll | per $1,000 of payroll |
| s | Gross Sales | per $1,000 of gross sales |
| t | (see note* below) | (see note* below) |
| u | Units | per unit |

\* Premium base t applies for a number of rarely used premium bases.
The specific base and how rates apply are shown with the Class Description
on the DECLARATIONS-PREMIUM SCHEDULE.

CG T0 08 11 03          Copyright, The Travelers Indemnity Company, 2003          Page 1 of 1

AAI - 000025

**TABLE OF CONTENTS**

# COMMERCIAL GENERAL LIABILITY
# COVERAGE FORM
# CG 00 01 10 01

SECTION I—COVERAGES

Beginning on Page

Coverage A -
  Bodily Injury and Property    Insuring Agreement ............................................................1
  Damage Liability

    Exclusions ...........................................................................2

Coverage B -
  Personal and Advertising    Insuring Agreement ............................................................5
  Injury Liability

    Exclusions ...........................................................................5

Coverage C -
  Medical Payments    Insuring Agreement ............................................................7

    Exclusions ...........................................................................7

Supplementary Payments ....................................................... 7

SECTION II—WHO IS AN INSURED ...........................................8

SECTION III—LIMITS OF INSURANCE .....................................10

SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS ...........10

  Bankruptcy ................................................................10
  Duties in the Event of Occurrence, Claim or Suit ...............10
  Legal Action Against Us ..............................................11
  Other Insurance .........................................................11
  Premium Audit ..........................................................12
  Representations .........................................................12
  Separation of Insureds ...............................................12
  Transfer of Rights of Recovery Against Others To Us .......12
  When We Do Not Renew ............................................12

SECTION V—DEFINITIONS ...................................................12

CG T0 34 11 03

AAI - 000026

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties Inc., 2000

AAI - 000027

COMMERCIAL GENERAL LIABILITY

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such

© ISO Properties Inc., 2000

AAI - 000028

premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily Injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the

"bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

    © ISO Properties Inc., 2000

AAI - 000029

COMMERCIAL GENERAL LIABILITY

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

          © ISO Properties Inc., 2000

AAI - 000030

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.  Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.  Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.  Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.  Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o.  Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.  Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2.  Exclusions**

This insurance does not apply to:

**a.  Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

AAI - 000031

COMMERCIAL GENERAL LIABILITY

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding

© ISO Properties Inc., 2000

AAI - 000032

COMMERCIAL GENERAL LIABILITY

to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

    **a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

        **(1)** On premises you own or rent;

        **(2)** On ways next to premises you own or rent; or

        **(3)** Because of your operations;

    provided that:

        **(1)** The accident takes place in the "coverage territory" and during the policy period;

        **(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

        **(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

    **b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

        **(1)** First aid administered at the time of an accident;

        **(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

        **(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

    We will not pay expenses for "bodily injury":

    **a. Any Insured**

        To any insured, except "volunteer workers".

    **b. Hired Person**

        To a person hired to do work for or on behalf of any insured or a tenant of any insured.

    **c. Injury On Normally Occupied Premises**

        To a person injured on that part of premises you own or rent that the person normally occupies.

    **d. Workers Compensation And Similar Laws**

        To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

    **e. Athletics Activities**

        To a person injured while taking part in athletics.

    **f. Products-Completed Operations Hazard**

        Included within the "products-completed operations hazard".

    **g. Coverage A Exclusions**

        Excluded under Coverage **A**.

    **h. War**

        Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

    **a.** All expenses we incur.

    **b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

    **c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

    **d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

    **e.** All costs taxed against the insured in the "suit".

    **f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment

AAI - 000033

COMMERCIAL GENERAL LIABILITY

interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

 © ISO Properties Inc., 2000 CG 00 01 10 01

AAI - 000034

2.  Each of the following is also an insured:

a.  Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1)  "Bodily injury" or "personal and advertising injury":

(a)  To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b)  To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

(c)  For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

(d)  Arising out of his or her providing or failing to provide professional health care services.

(2)  "Property damage" to property:

(a)  Owned, occupied or used by,

(b)  Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b.  Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c.  Any person or organization having proper temporary custody of your property if you die, but only:

(1)  With respect to liability arising out of the maintenance or use of that property; and

(2)  Until your legal representative has been appointed.

d.  Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3.  With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a.  "Bodily injury" to a co-"employee" of the person driving the equipment; or

b.  "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4.  Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a.  Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b.  Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c.  Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

AAI - 000035

COMMERCIAL GENERAL LIABILITY

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage **C**;

   b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A**; and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person

© ISO Properties Inc., 2000    CG 00 01 10 01

AAI - 000036

or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability.

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contrib-

© ISO Properties Inc., 2000

AAI - 000037

COMMERCIAL GENERAL LIABILITY

ute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in a. above;

(2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

© ISO Properties Inc., 2000

CG 00 01 10 01

AAI - 000038

COMMERCIAL GENERAL LIABILITY

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5.  "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6.  "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7.  "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8.  "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    **a.**  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.**  You have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by:

    **a.**  The repair, replacement, adjustment or removal of "your product" or "your work"; or

    **b.**  Your fulfilling the terms of the contract or agreement.

9.  "Insured contract" means:

    **a.**  A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    **b.**  A sidetrack agreement;

    **c.**  Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    **d.**  An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **e.**  An elevator maintenance agreement;

    **f.**  That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property

damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

    **a.**  After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    **b.**  While it is in or on an aircraft, watercraft or "auto"; or

    **c.**  While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

    but "loading or unloading" does not include the movement of property by means of a mechanical

© ISO Properties Inc., 2000

AAI - 000039

COMMERCIAL GENERAL LIABILITY

device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

 a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

 b. Vehicles maintained for use solely on or next to premises you own or rent;

 c. Vehicles that travel on crawler treads;

 d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   (1) Power cranes, shovels, loaders, diggers or drills; or

   (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

 e. Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   (2) Cherry pickers and similar devices used to raise or lower workers;

 f. Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   (1) Equipment designed primarily for:

     (a) Snow removal;

     (b) Road maintenance, but not construction or resurfacing; or

     (c) Street cleaning;

   (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

 a. False arrest, detention or imprisonment;

 b. Malicious prosecution;

 c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

 d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

 e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

 f. The use of another's advertising idea in your "advertisement"; or

 g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

 a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   (1) Products that are still in your physical possession; or

   (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

     (a) When all of the work called for in your contract has been completed.

     (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

     (c) When that part of the work done at a job site has been put to its intended

© ISO Properties Inc., 2000

CG 00 01 10 01

AAI - 000040

use by any person or organization other than another contractor or sub-contractor working on the same pro-ject.

Work that may need service, mainte-nance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused ma-terials; or

**(3)** Products or operations for which the clas-sification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occur-rence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and appli-cations software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electroni-cally controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this in-surance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such dam-ages are claimed and to which the insured

must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution pro-ceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose busi-ness or assets you have acquired; and

**(2)** Containers (other than vehicles), materi-als, parts or equipment furnished in con-nection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, qual-ity, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

© ISO Properties Inc., 2000

AAI - 000041

COMMERCIAL GENERAL LIABILITY

**b.** Includes:

(1) Warranties or representations made at any time with respect to the fitness, qual-

ity, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.

© ISO Properties Inc., 2000
CG 00 01 10 01

AAI - 000042

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF COVERAGE – POLLUTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

Paragraph **f.(2) Pollution**, Part **2. Exclusions** of **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is deleted and replaced by the following:

(2) Any loss, cost or expense arising out of any:

   (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   (b) Claim or "suit" by or on behalf of a governmental authority because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

Copyright, The Travelers Indemnity Company, 2003

AAI - 000043

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> UNDERGROUND STORAGE TANK POLICY

With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

CG 21 70 11 02                    © ISO Properties, Inc., 2002                    Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OTHER INSURANCE – ADDITIONAL INSUREDS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## PROVISIONS

COMMERCIAL GENERAL LIABILITY CONDITIONS (Section **IV**), Paragraph **4. (Other Insurance)**, is amended as follows:

1. The following is added to Paragraph **a. Primary Insurance:**

   However, if you specifically agree in a written contract or written agreement that the insurance provided to an additional insured under this Coverage Part must apply on a primary basis, or a primary and non-contributory basis, this insurance is primary to other insurance that is available to such additional insured which covers such additional insured as a named insured, and we will not share with that other insurance, provided that:

   a. The "bodily injury" or "property damage" for which coverage is sought occurs; and

   b. The "personal injury" or "advertising injury" for which coverage is sought arises out of an offense committed

   subsequent to the signing and execution of that contract or agreement by you.

2. The first Subparagraph **(2)** of Paragraph **b. Excess Insurance** regarding any other primary insurance available to you is deleted.

3. The following is added to Paragraph **b. Excess Insurance**, as an additional subparagraph under Subparagraph **(1)**:

   That is available to the insured when the insured is added as an additional insured under any other policy, including any umbrella or excess policy.

CG D0 37 04 05     Copyright 2005 The St. Paul Travelers Companies, Inc. All rights reserved.     Page 1 of 1

AAI - 000045

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MANUFACTURERS AND WHOLESALERS XTEND ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**GENERAL DESCRIPTION OF COVERAGE** – This endorsement broadens coverage. The following listing is a general coverage description only. Limitations and exclusions may apply to these coverages. Read all the **PRO-VISIONS** of this endorsement carefully to determine rights, duties, and what is and is not covered.

**A.** Broadened Named Insured

**B.** Blanket Broad Form Vendors

**C.** Limited Worldwide Liability Coverage – Indemnity Basis

**D.** Damage To Premises Rented To You Extension

- Perils of fire, explosion, lightning, smoke, water
- Limit increased to $300,000

**E.** Blanket Waiver of Subrogation

**F.** Blanket Additional Insured – Managers or Lessors of Premises

**G.** Blanket Additional Insured – Lessor of Leased Equipment

**H.** Incidental Medical Malpractice

**I.** Personal Injury – Assumed by Contract

**J.** Extension of Coverage – Bodily Injury

**K.** Injury to Co-Employees and Co-Volunteer Workers

**L.** Aircraft Chartered with Crew

**M.** Non-Owned Watercraft – Increased from 25 feet to 50 feet

**N.** Increased Supplementary Payments

- Cost for bail bonds increased to $2,500
- Loss of earnings increased to $500 per day

**O.** Medical Payments – Limit increased to $10,000 per person

**P.** Knowledge and Notice of Occurrence or Offense

**Q.** Unintentional Omission

**R.** Reasonable Force – Bodily Injury or Property Damage

## PROVISIONS

**A. BROADENED NAMED INSURED**

1. The Named Insured in Item **1.** of the Declarations is as follows:

   The person or organization named in Item 1. of the Declarations and any organization, other than a partnership or joint venture, over which you maintain ownership or majority interest on the effective date of the policy. However, coverage for any such organization will cease as of the date during the policy period that you no longer maintain ownership of, or majority interest in, such organization.

2. WHO IS AN INSURED (Section II) Item **4.a.** is deleted and replaced by the following:

   **a.** Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier, unless reported in writing to us within 180 days.

3. This Provision **A.** does not apply to any person or organization for which coverage is excluded by endorsement.

**B. BLANKET BROAD FORM VENDORS COVER-AGE**

WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (referred to below as "vendor") with whom you have agreed in a written contract, executed prior to loss, to name as an additional insured, but only with respect to "bodily injury" or "property damage" arising out of "your products" which are dis-

Copyright, The Travelers Indemnity Company, 2003

AAI - 000046

COMMERCIAL GENERAL LIABILITY

tributed or sold in the regular course of the vendor's business, subject to the following additional provisions:

1. **Limits of Insurance.** The limits of insurance afforded to the vendor shall be the limits which you agreed to provide, or the limits shown on the Declarations, whichever is less.

2. The insurance afforded the vendor does not apply to:

   a. "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

   b. Any express warranty unauthorized by you;

   c. Any physical or chemical change in the product made intentionally by the vendor;

   d. Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

   e. Any failure to make such inspections, adjustments, tests or servicing as vendors agree to make or normally undertake to make in the usual course of business, in connection with the distribution or sale of "your products";

   f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

   g. Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor;

3. This Provision **B.** does not apply to:

   a. Any insured person or organization, from whom you have acquired such products, or any ingredient, part or container entering into, accompanying or containing such products;

   b. Any vendor for which coverage as an additional insured specifically is scheduled by endorsement; or

   c. Any of "your products" for which coverage is excluded by endorsement.

C. **LIMITED WORLDWIDE LIABILITY COVERAGE**

1. The definition of "coverage territory" in DEFINITIONS (Section **V**) is deleted and replaced by the following:

   "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

   c. All other parts of the world, excluding any country or jurisdiction which at the time of the "occurrence" or offense is the subject of trade or economic sanctions imposed by the laws or regulation of the United States of America, but not including any country or jurisdiction in which the insured's activities are specifically permitted by any governmental entity of the United States of America, if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in **1.a.** above; or

      (2) The activities of a person whose home is in the territory described in **1.a.** above, but is away for a short time on your business; or

      (3) "Personal injury" or "advertising injury" offenses that take place through the Internet or similar means of communication.

2. With respect to claims or suits caused by an "occurrence" within the "coverage territory" described in **1.c.** above, the following conditions apply:

   a. The coverage afforded hereunder shall be excess over any other valid and collectible insurance available to the insured, whether primary, excess, contingent or on any other basis, except for insurance purchased specifically by you to be excess of this policy.

   b. This insurance is not a substitute for "compulsory admitted insurance" in any jurisdiction described in **1.c.** above,

Copyright, The Travelers Indemnity Company, 2003

CG D1 87 11 03

AAI - 000047

whether or not this insurance would qualify as "compulsory admitted insurance" in a given jurisdiction or is accepted by the appropriate authorities as proof of "compulsory admitted insurance".

You agree to maintain "compulsory admitted insurance" at the limits required by law. Your failure to do so will not invalidate the coverage afforded by this endorsement, but we will only be liable to the same extent we would have been liable had you maintained "compulsory admitted insurance".

"Compulsory admitted insurance" means insurance that is:

(1) Required to be in-force to satisfy the legal requirements of a given jurisdiction; and

(2) Issued by a State Fund or an insurer licensed or permitted by law to do business in the jurisdiction where the property or exposure to loss is located.

**c.** With respect to defending you against, or the investigation or settlement of, any claim or "suit" brought against you, the following will apply:

(1) The provision of the Insuring Agreement reading "We will pay....." in Part **1.** of COVERAGE A. and COVERAGE B. (Section **I** – Coverages) is amended to read "We will indemnify the insured for....";

(2) You must arrange to defend yourself against, and investigate or settle, any claim or "suit";

(3) You will not make any settlement without our consent;

(4) We will pay expenses incurred with our consent;

(5) We may, at our discretion, participate in defending you against, or in the settlement of, any claim or "suit".

**3.** This Provision **C.** does not apply:

**a.** To any of "your products" for which coverage is excluded by endorsement; or

**b.** To "personal injury" or "advertising injury" if COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY is excluded by endorsement.

**D. DAMAGE TO PREMISES RENTED TO YOU EXTENSION**

**1.** The last paragraph of COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** – Coverages) is deleted and replaced by the following:

Exclusions **c.** through **n.** do not apply to damage to premises while rented to you, or temporarily occupied by you with permission of the owner, caused by:

**a.** Fire;

**b.** Explosion;

**c.** Lightning;

**d.** Smoke resulting from such fire, explosion, or lightning; or

**e.** Water.

A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section III).

**2.** This insurance does not apply to damage to premises while rented to you, or temporarily occupied by you with permission of the owner, caused by:

**a.** Rupture, bursting, or operation of pressure relief devices;

**b.** Rupture or bursting due to expansion or swelling of the contents of any building or structure, caused by or resulting from water;

**c.** Explosion of steam boilers, steam pipes, steam engines, or steam turbines.

**3.** Part **6.** of LIMITS OF INSURANCE (Section III) is deleted and replaced by the following:

Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under COVERAGE A. for damages because of "property damage" to any one premises while rented to you, or temporarily occupied by you with permission of the owner, caused by fire, explosion, lightning, smoke resulting from such fire, explosion, or lightning, or water. The Damage To Premises Rented To You Limit will apply to all damage proximately caused by the same "occurrence", whether such damage results from fire, explosion, lightning, smoke resulting from such fire, explosion, or lightning, or water, or any combination of any of these.

   Copyright, The Travelers Indemnity Company, 2003

AAI - 000048

COMMERCIAL GENERAL LIABILITY

The Damage To Premises Rented To You Limit will be the higher of:

a. $300,000; or

b. The amount shown on the Declarations for Damage To Premises Rented To You Limit.

4. Under DEFINITIONS (Section V), Paragraph a. of the definition of "insured contract" is amended so that it does not include that portion of the contract for a lease of premises that indemnifies any person or organization for damage to premises while rented to you, or temporarily occupied by you with permission of the owner, caused by:

a. Fire;

b. Explosion;

c. Lightning;

d. Smoke resulting from such fire, explosion, or lightning; or

e. Water.

5. This Provision D. does not apply if coverage for Damage To Premises Rented To You of COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages) is excluded by endorsement.

E. **BLANKET WAIVER OF SUBROGATION**

We waive any right of recovery we may have against any person or organization because of payments we make for injury or damage arising out of premises owned or occupied by or rented or loaned to you; ongoing operations performed by you or on your behalf, done under a contract with that person or organization; "your work"; or "your products". We waive this right where you have agreed to do so as part of a written contract, executed by you prior to loss.

F. **BLANKET ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES**

WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (referred to below as "additional insured") with whom you have agreed in a written contract, executed prior to loss, to name as an additional insured, but only with respect to liability arising out of the ownership, maintenance or use of that part of any premises leased to you, subject to the following provisions:

1. Limits of Insurance. The limits of insurance afforded to the additional insured shall be the limits which you agreed to provide, or the lim-

its shown on the Declarations, whichever is less.

2. The insurance afforded to the additional insured does not apply to:

a. Any "occurrence" that takes place after you cease to be a tenant in that premises;

b. Any premises for which coverage is excluded by endorsement; or

c. Structural alterations, new construction or demolition operations performed by or on behalf of such additional insured.

3. The insurance afforded to the additional insured is excess over any valid and collectible insurance available to such additional insured, unless you have agreed in a written contract for this insurance to apply on a primary or contributory basis.

G. **BLANKET ADDITIONAL INSURED – LESSOR OF LEASED EQUIPMENT**

WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (referred to below as "additional insured") with whom you have agreed in a written contract, executed prior to loss, to name as an additional insured, but only with respect to their liability arising out of the maintenance, operation or use by you of equipment leased to you by such additional insured, subject to the following provisions:

1. Limits of Insurance. The limits of insurance afforded to the additional insured shall be the limits which you agreed to provide, or the limits shown on the Declarations, whichever is less.

2. The insurance afforded to the additional insured does not apply to:

a. Any "occurrence" that takes place after the equipment lease expires; or

b. "Bodily injury" or "property damage" arising out of the sole negligence of such additional insured.

3. The insurance afforded to the additional insured is excess over any valid and collectible insurance available to such additional insured, unless you have agreed in a written contract for this insurance to apply on a primary or contributory basis.

H. **INCIDENTAL MEDICAL MALPRACTICE**

1. The definition of "bodily injury" in DEFINITIONS (Section V) is amended to include "Incidental Medical Malpractice Injury".

Copyright, The Travelers Indemnity Company, 2003

CG D1 87 11 03

AAI - 000049

COMMERCIAL GENERAL LIABILITY

2. The following definition is added to DEFINITIONS (Section **V**):

"Incidental medical malpractice injury" means bodily injury, mental anguish, sickness or disease sustained by a person, including death resulting from any of these at any time, arising out of the rendering of, or failure to render, the following services:

 a. Medical, surgical, dental, laboratory, x-ray or nursing service or treatment, advice or instruction, or the related furnishing of food or beverages;

 b. The furnishing or dispensing of drugs or medical, dental, or surgical supplies or appliances; or

 c. First aid.

 d. "Good Samaritan services." As used in this Provision **H.**, "Good Samaritan services" are those medical services rendered or provided in an emergency and for which no remuneration is demanded or received.

3. Paragraph **2.a.(1)(d)** of WHO IS AN INSURED (Section **II**) does not apply to any registered nurse, licensed practical nurse, emergency medical technician or paramedic employed by you, but only while performing the services described in paragraph **2.** above and while acting within the scope of their employment by you. Any "employees" rendering "Good Samaritan services" will be deemed to be acting within the scope of their employment by you.

4. The following exclusion is added to paragraph **2.** Exclusions of COVERAGE A. – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** – Coverages):

(This insurance does not apply to:) Liability arising out of the willful violation of a penal statute or ordinance relating to the sale of pharmaceuticals by or with the knowledge or consent of the insured.

5. For the purposes of determining the applicable limits of insurance, any act or omission, together with all related acts or omissions in the furnishing of the services described in paragraph **2.** above to any one person, will be considered one "occurrence".

6. This Provision **H.** does not apply if you are in the business or occupation of providing any of the services described in paragraph **2.** above.

7. The insurance provided by this Provision **H.** shall be excess over any other valid and collectible insurance available to the insured, whether primary, excess, contingent or on any other basis, except for insurance purchased specifically by you to be excess of this policy.

**I.** **PERSONAL INJURY – ASSUMED BY CONTRACT**

1. The **Contractual Liability** Exclusion in Part **2.**, **Exclusions** of COVERAGE **B.** PERSONAL AND ADVERTISING INJURY LIABILITY (Section **I** – Coverages) is deleted and replaced by the following:

(This insurance does not apply to:)

 **Contractual Liability**

 "Advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

2. Subparagraph **f.** of the definition of "insured contract" (DEFINITIONS – Section **V**) is deleted and replaced by the following:

 f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury," "property damage" or "personal injury" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

3. This Provision **I.** does not apply if COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY is excluded by endorsement.

**J.** **EXTENSION OF COVERAGE – BODILY INJURY**

The definition of "bodily injury" (DEFINITIONS – Section **V**) is deleted and replaced by the following:

"Bodily injury" means bodily injury, mental anguish, mental injury, shock, fright, disability, humiliation, sickness or disease sustained by a person, including death resulting from any of these at any time.

Copyright, The Travelers Indemnity Company, 2003

AAI - 000050

COMMERCIAL GENERAL LIABILITY

**K. INJURY TO CO-EMPLOYEES AND CO-VOLUN-TEER WORKERS**

1. Your "employees" are insureds with respect to "bodily injury" to a co-"employee" in the course of the co-"employee's" employment by you, or to your "volunteer workers" while performing duties related to the conduct of your business, provided that this coverage for your "employees" does not apply to acts outside the scope of their employment by you or while performing duties unrelated to the conduct of your business.

2. Your "volunteer workers" are insureds with respect to "bodily injury" to a co-"volunteer worker" while performing duties related to the conduct of your business, or to your "employees" in the course of the "employee's" employment by you, provided that this coverage for your "volunteer workers" does not apply while performing duties unrelated to the conduct of your business.

3. Subparagraphs **2.a.(1)(a)**, **(b)** and **(c)** and **3.a.** of WHO IS AN INSURED (Section II) do not apply to "bodily injury" for which insurance is provided by paragraph **1.** or **2.** above.

**L. AIRCRAFT CHARTERED WITH CREW**

1. The following is added to the exceptions contained in the **Aircraft, Auto Or Watercraft** Exclusion in Part **2.**, **Exclusions** of COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages):

   (This exclusion does not apply to:) Aircraft chartered with crew to any insured.

2. This Provision **L.** does not apply if the chartered aircraft is owned by any insured.

3. The insurance provided by this Provision **L.** shall be excess over any other valid and collectible insurance available to the insured, whether primary, excess, contingent or on any other basis, except for insurance purchased specifically by you to be excess of this policy.

**M. NON-OWNED WATERCRAFT**

1. The exception contained in Subparagraph **(2)** of the **Aircraft, Auto Or Watercraft** Exclusion in Part **2.**, **Exclusions** of COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages) is deleted and replaced by the following:

   **(2)** A watercraft you do not own that is:

   **(a)** Fifty feet long or less; and

   **(b)** Not being used to carry persons or property for a charge.

2. This Provision **M.** applies to any person who, with your expressed or implied consent, either uses or is responsible for the use of a watercraft.

3. The insurance provided by this Provision **M.** shall be excess over any other valid and collectible insurance available to the insured, whether primary, excess, contingent or on any other basis, except for insurance purchased specifically by you to be excess of this policy.

**N. INCREASED SUPPLEMENTARY PAYMENTS**

Parts **b.** and **d.** of SUPPLEMENTARY PAYMENTS – COVERAGES A AND B (Section I – Coverages) are amended as follows:

1. In Part **b.** the amount we will pay for the cost of bail bonds is increased to $2500.

2. In Part **d.** the amount we will pay for loss of earnings is increased to $500 a day.

**O. MEDICAL PAYMENTS – INCREASED LIMITS**

1. Paragraph **7.** of LIMITS OF INSURANCE (Section III) is amended to read as follows:

   **7.** Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C.** for all medical expenses because of "bodily injury" sustained by any one person, and will be the higher of:

   **(a)** $10,000; or

   **(b)** The amount shown on the Declarations for Medical Expense Limit.

2. This Provision **O.** does not apply if COVERAGE **C.** MEDICAL PAYMENTS (Section I – Coverages) is excluded either by the provisions of the Coverage Part or by endorsement.

**P. KNOWLEDGE AND NOTICE OF OCCUR-RENCE OR OFFENSE**

1. The following is added to COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV), paragraph **2.** (Duties In The Event of Occurrence, Offense, Claim or Suit):

   Notice of an "occurrence" or of an offense which may result in a claim under this insurance shall be given as soon as practicable after knowledge of the "occurrence" or offense

Copyright, The Travelers Indemnity Company, 2003

CG D1 87 11 03

AAI - 000051

COMMERCIAL GENERAL LIABILITY

has been reported to any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or an "employee" (such as an insurance, loss control or risk manager or administrator) designated by you to give such notice.

Knowledge by other "employee(s)" of an "occurrence" or of an offense does not imply that you also have such knowledge.

2. Notice shall be deemed prompt if given in good faith as soon as practicable to your workers' compensation insurer. This applies only if you subsequently give notice to us as soon as practicable after any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or an "employee" (such as an insurance, loss control or risk manager or administrator) designated by you to give such notice discovers that the "occurrence", offense or claim may involve this policy.

3. However, this Provision **P.** does not apply as respects the specific number of days within which you are required to notify us in writing of the abrupt commencement of a discharge, release or escape of "pollutants" which causes "bodily injury" or "property damage" which may otherwise be covered under this policy.

**Q. UNINTENTIONAL OMISSION**

The following is added to COMMERCIAL GENERAL LIABILITY CONDITIONS (Section **IV**), paragraph **6.** (Representations):

The unintentional omission of, or unintentional error in, any information provided by you shall not prejudice your rights under this insurance. However, this Provision **Q.** does not affect our right to collect additional premium or to exercise our right of cancellation or nonrenewal in accordance with applicable state insurance laws, codes or regulations.

**R. REASONABLE FORCE – BODILY INJURY OR PROPERTY DAMAGE**

The **Expected Or Intended Injury** Exclusion in Part **2.**, **Exclusions** of COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** – Coverages) is deleted and replaced by the following:

(This insurance does not apply to:)

**Expected or Intended Injury or Damage**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

Copyright, The Travelers Indemnity Company, 2003

AAI - 000052

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT – NON CUMULATION OF EACH OCCURRENCE LIMIT OF LIABILITY and NON CUMULATION OF PERSONAL and ADVERTISING INJURY LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1. Paragraph 5 of SECTION III – LIMITS OF INSUR-ANCE, is amended to include the following:

   Non cumulation of Each Occurrence Limit – If one "occurrence" causes "bodily injury" and/or "property damage" during the policy period and during the policy period of one or more prior and/or future policies that include a commercial general liability coverage part for the insured issued by us or any affiliated insurance company, the amount we will pay is limited. This policy's Each Occurrence Limit will be reduced by the amount of each payment made by us and any affiliated insurance company under the other policies because of such "occurrence".

2. Paragraph 4 of SECTION III – LIMITS OF INSUR-ANCE, is amended to include the following:

   Non cumulation of Personal and Advertising Limit – If "personal injury" and/or "advertising injury" is sustained by any one person or organization during the policy period and during the policy period of one or more prior and/or future policies that include a commercial general liability coverage part for the insured issued by us or any affiliated insurance company, the amount we will pay is limited. This policy's Personal Injury and Advertising Injury Limit will be reduced by the amount of each payment made by us and any affiliated insurance company under the other policies because of such "personal injury" and/or "advertising injury".

AAI - 000053

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WEB XTEND LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

Paragraph **o. Personal And Advertising Injury**, Part **2. Exclusions** of SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY is deleted and replaced by the following:

**o. Personal Injury, Advertising Injury and Web Site Injury**

"Bodily injury" arising out of "personal injury", "advertising injury" or "web site injury".

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY (SECTION I – COVERAGES)** is deleted in its entirety and replaced by the following:

**COVERAGE B. PERSONAL INJURY, ADVERTISING INJURY AND WEB SITE INJURY LIABILITY**

**1. Insuring Agreement.**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury", "advertising injury" or "web site injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury", "advertising injury", or "web site injury" to which this insurance does not apply. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly

provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to:

**(1)** "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

**(2)** "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services; or

**(3)** "Web site injury" caused by an offense committed in the course of the visual or audio presentation of material on "your web site" or in the numerical expression of computer code used to enable "your web site";

but only if the offense was committed in the "coverage territory" during the policy period.

With respect to subparagraph **b. (1)** above, bulletins, financial or annual reports, or newsletters that are not published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters will not be considered publishing.

**2. Exclusions.**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal injury", "advertising injury" or "web site injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal injury", "advertising injury" or "web site injury".

**b. Material Published With Knowledge Of Falsity**

"Personal injury", "advertising injury" or "web site injury" arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity.

AAI - 000054

COMMERCIAL GENERAL LIABILITY

**c. Material Published Prior To Policy Period**

"Personal injury", "advertising injury" or "web site injury" arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal injury", "advertising injury" or "web site injury" arising out of a criminal act committed by or with the consent of the insured.

**e. Contractual Liability**

"Personal injury", "advertising injury" or "web site injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to:

(1) "Personal injury" liability assumed in a contract or agreement that is an "insured contract", provided the "personal injury" arises out of an offense committed subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "personal injury" provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged; or

(2) "Personal injury", "advertising injury" or "web site injury" that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Advertising injury" or "web site injury" arising out of a breach of contract.

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Advertising injury" or "web site injury" arising out of the failure of goods, products or services to conform with any statement of quality

or performance made in the course of advertising your goods, products or services.

**h. Wrong Description Of Prices**

"Advertising injury" or "web site injury" arising out of the wrong description of the price of goods, products or services.

**i. Insureds In Media And Internet Type Businesses**

"Personal injury", "advertising injury" or "web site injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **a.**, **b.** and **c.** of the "personal injury" definition under **SECTION V – DEFINITIONS** of this endorsement.

For the purposes of this exclusion, bulletins, financial or annual reports, or newsletters that are not published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters will not be considered publishing.

**j. Electronic Chatrooms Or Bulletin Boards**

"Personal injury", "advertising injury" or "web site injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**k. Unauthorized Use Of Another's Name Or Product**

"Personal injury", "advertising injury" or "web site injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar activities that mislead another's potential customers.

**l. Pollution**

"Personal injury", "advertising injury" or "web site injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

     Copyright 2005 The St. Paul Travelers Companies, Inc. All rights reserved.     **CG D2 34 01 05**

AAI - 000055

COMMERCIAL GENERAL LIABILITY

**m. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or "suit" by or on behalf of a governmental authority because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of, "pollutants".

**n. Dishonest, Fraudulent Or Malicious Acts**

"Web site injury" arising out of dishonest, fraudulent, criminal or malicious acts, errors or omissions committed by any insured, or by anyone for whom the insured is legally responsible, whether acting alone or with others.

**o. Web Site Intellectual Property**

"Web site injury" committed by any insured whose business is providing access to intellectual property of others via "your web site".

**p. Employment-Related Practices**

"Web site injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraphs **p.(1)(a)(b)** or **(c)** above is directed.

This exclusion applies:

**(i)** Whether the insured may be held liable as an employer or in any other capacity; and

**(ii)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B** (Section I – Coverages) is amended as follows:

**1.** Paragraph **2.d.** is deleted and replaced by the following:

**d.** The allegations in the "suit" and the information we know about the "occurrence" or offense are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**2.** The third sentence of Paragraph **2.** is deleted and replaced by the following:

Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability and Paragraph **2.e.(1)** of Section I – Coverage **B** – Personal Injury, Advertising Injury And Web Site Injury Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage", or damages for "personal injury", and will not reduce the limits of insurance.

**SECTION II – WHO IS AN INSURED**

The introductory sentence of paragraph **2. a. (1)** Section II – Who Is An Insured is deleted and replaced by the following:

**2. a. (1)** "Bodily injury", "personal injury" or "web site injury":

Section II – Who Is An Insured, paragraph **4. c.**, is deleted and replaced by the following:

**4. c.** Coverage B does not apply to "personal injury", "advertising injury" or "web site injury" arising out of an offense committed before you acquired or formed the organization.

**SECTION III – LIMITS OF INSURANCE**

**SECTION III – Limits Of Insurance, paragraph 4,** is deleted and replaced by the following:

**4.** Subject to **2.** above, the Personal, Advertising and Web Site Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury", "advertising injury" and all "web site injury" sustained by any one person or organization.

**CG D2 34 01 05**    Copyright 2005 The St. Paul Travelers Companies, Inc. All rights reserved.    Page 3 of 5

AAI - 000056

COMMERCIAL GENERAL LIABILITY

### SECTION V – DEFINITIONS

#### ADVERTISEMENT

The definition of **"Advertisement" (SECTION V – DEFINITIONS)** is deleted in its entirety.

#### COVERAGE TERRITORY

The definition of **"Coverage Territory" (SECTION V – DEFINITIONS)** is deleted in its entirety and replaced by the following:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

**c.** All parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in **a.** above;

**(2)** The activities of a person whose home is in the territory described in **a.** above, but who is away for a short time on your business; or

**(3)** "Personal injury", "advertising injury", and "web site injury" offenses that take place through the Internet or similar electronic means of communication; and

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

#### INSURED CONTRACT

The first paragraph of part **f.** of the definition of **"Insured Contract" (SECTION V – DEFINITIONS)** is deleted and replaced by the following:

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury", "property damage" or "personal injury" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

#### PERSONAL AND ADVERTISING INJURY

The definition of **"Personal and advertising injury" (SECTION V – DEFINITIONS)** is deleted in its entirety and replaced by the following definitions of "advertising injury" and "personal injury":

"Advertising injury" means injury, arising out of one or more of the following offenses:

**a.** Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that claim is made or "suit" is brought by a person or organization that claims to have been slandered or libeled, or whose goods, products or services have allegedly been disparaged;

**b.** Oral, written or electronic publication of material that appropriates a person's likeness, unreasonably places a person in a false light or gives unreasonable publicity to a person's private life; or

**c.** Infringement of copyright, title or slogan, provided that claim is made or "suit" is brought by a person or organization claiming ownership of such copyright, title or slogan.

"Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is performed by or on behalf of the owner, landlord or lessor of that room, dwelling or premises;

**d.** Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that claim is made or "suit" is brought by a person or organization that claims to have been slandered or libeled, or whose goods, products or services have allegedly been disparaged; or

**e.** Oral, written or electronic publication of material that appropriates a person's likeness, unreasonably places a person in a false light or gives unreasonable publicity to a person's private life.

#### SUIT

The definition of **"Suit" (SECTION V – DEFINITIONS)** is deleted in its entirety and replaced by the following:

"Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury", "advertising injury" or "web site injury" to

    Copyright 2005 The St. Paul Travelers Companies, Inc. All rights reserved.    **CG D2 34 01 05**

AAI - 000057

which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

The following definitions are added to **SECTION V – DEFINITIONS**

**WEB SITE INJURY**

"Web site injury" means injury, other than "personal injury" or "advertising injury", arising out of one or more of the following offenses:

**a.** Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that claim is made or "suit" is brought by a person or organization that claims to have been slandered or libeled, or whose goods, products or services have allegedly been disparaged;

**b.** Oral, written or electronic publication of material that appropriates a person's likeness, unreasonably places a person in a false light or gives unreasonable publicity to a person's private life;

**c.** Oral, written or electronic publication of material that violates a person's right of publicity, provided that claim is made or "suit" is brought by the person claiming rights of publicity; or

**d.** Infringement of copyright, title or slogan, provided that claim is made or "suit" is brought by a person or organization claiming ownership of such copyright, title or slogan.

**YOUR WEB SITE**

"Your web site" means all computer files and data which may be accessed via the Internet using a Universal Resource Locator that includes any domain name owned by or assigned to you.

**CG D2 34 01 05**     Copyright 2005 The St. Paul Travelers Companies, Inc. All rights reserved.     Page 5 of 5

AAI - 000058

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.**, Exclusions **of Section I – Coverage A – Bodily Injury And Property Damage**:

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

a. "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

**B.** The following exclusion is added to Paragraph **2.**, Exclusions of **Section I – Coverage B – Personal And Advertising Injury Liability**:

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

a. "Personal injury" or "advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

Copyright, The Travelers Indemnity Company, 2002
Includes copyrighted material of Insurance Services Office

AAI - 000059

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF COVERAGE – PROPERTY DAMAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART

**PROVISIONS**

The definition of "property damage" in **SECTION V – DEFINITIONS** is deleted in its entirety and replaced by the following:

"Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

"Property damage" does not include loss of or damage to "electronic media and records".

As used in this definition, "electronic media and records" means:

**a.** Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

**b.** Data stored on such media; or

**c.** Programming records for electronic data processing or electronically controlled equipment.

Copyright, The Travelers Indemnity Company, 2003

AAI - 000060

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability**:

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to:

"Personal injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, The Travelers Indemnity Company, 2003
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AAI - 000061

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – UNSOLICITED COMMUNICATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury", "property damage", "personal injury", "advertising injury" or "website injury" arising out of unsolicited communications by or on behalf of any insured. Unsolicited communications means any form of communication, including but not limited to facsimile, electronic mail, posted mail or telephone, in which the recipient has not specifically requested the communication. Unsolicited communications also include but are not limited to communications which are made or allegedly made in violation of the Telephone Consumer Protection Act and any amendments, and/or local or state statutes that bar, prohibit or penalize such communications.

Copyright, The Travelers Indemnity Company, 2004
Includes copyrighted material of Insurance Services Office, Inc., with its permission

AAI - 000062

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MOBILE EQUIPMENT REDEFINED
# EXCLUSION OF VEHICLES SUBJECT TO MOTOR VEHICLE LAWS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

A. Exclusion **g.** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** (Section **I** – Coverages) is deleted and replaced by the following:

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

(a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

(b) The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

B. **SECTION V – DEFINITIONS**

The definition of "auto" (paragraph 2.) is deleted and replaced by the following:

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

The definition of "mobile equipment" is deleted and replaced by the following:

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

CG D3 56 01 05     Copyright, 2005 The St. Paul Travelers Companies, Inc. All rights reserved.     Page 1 of 2

COMMERCIAL GENERAL LIABILITY

   **b.** Vehicles maintained for use solely on or next to premises you own or rent;

   **c.** Vehicles that travel on crawler treads;

   **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      **(1)** Power cranes, shovels, loaders, diggers or drills; or

      **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

   **e.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      **(2)** Cherry pickers and similar devices used to raise or lower workers;

   **f.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   **(1)** Equipment designed primarily for:

      **(a)** Snow removal;

      **(b)** Road maintenance, but not construction or resurfacing; or

      **(c)** Street cleaning;

   **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**C. WHO IS AN INSURED**

Paragraph 3. of SECTION II – Who Is An Insured is deleted.

    Copyright, 2005 The St. Paul Travelers Companies, Inc. All rights reserved.    **CG D3 56 01 05**

AAI - 000064

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION--INTERCOMPANY PRODUCTS SUITS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This insurance does not apply to any claim for damages by any Named Insured against another Named Insured because of "bodily injury" or "property damage" arising out of "your products" and included within the "products-completed operations hazard."

AAI - 000065

POLICY NUMBER: Y-660-4790A876-TIL-07

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 04-02-07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF LIQUOR LIABILITY EXCLUSION-- EXCEPTION FOR SCHEDULED ACTIVITIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Description of Activity(ies):**    ALL ACTIVITIES WHICH DO NOT GENERATE REVENUE TO ANY INSURED.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

Exclusion c. of COVERAGE A (Section I) is replaced by the following:

c. "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

  (1) Causing or contributing to the intoxication of any person;

  (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

  (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

  This exclusion applies only if you:

(1) Manufacture, sell or distribute alcoholic beverages;

(2) Serve or furnish alcoholic beverages for a charge whether or not such activity:

  (a) Requires a license;

  (b) Is for the purpose of financial gain or livelihood; or

(3) Serve or furnish alcoholic beverages without a charge, if a license is required for such activity.

However, this exclusion does not apply to "bodily injury" or "property damage" arising out of the selling, serving or furnishing of alcoholic beverages at the specific activity(ies) described above.

CG 21 51 09 89          Copyright, Insurance Services Office, Inc., 1988          Page 1 of 1

AAI - 000066

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION—DISCRIMINATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

1. **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY –** is amended by adding the following additional exclusion:

   (This Insurance does not apply to:)

   "Bodily injury" resulting from or as a consequence of discrimination, whether intentional or unintentional, based upon a person's sex, sexual preference, marital status, race, creed, religion, national origin, age, physical capabilities, characteristics or condition, or mental capabilities or condition.

2. **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY –** is amended by adding the following additional exclusion:

   (This insurance does not apply to:)

   "Personal injury" resulting from or as a consequence of discrimination, whether intentional or unintentional, based upon a person's sex, sexual preference, marital status, race, creed, religion, national origin, age, physical capabilities, characteristics or condition, or mental capabilities or condition.

AAI - 000067

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – WAR

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **i.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions:**

This insurance does not apply to:

**i. War**

"Bodily injury" or "property damage" arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

**B.** The following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability**:

**2. Exclusions:**

This insurance does not apply to:

**War**

"Personal injury" or "advertising injury" arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these

regardless of any other cause or event that contributes concurrently or in any sequence to the injury.

CG D2 42 01 02          Copyright, The Travelers Indemnity Company, 2002          Page 1 of 1

AAI - 000068

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 04-02-07

POLICY NUMBER:  Y-660-4790A876-TIL-07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED PRODUCTS AND RELATED COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

   COMMERCIAL GENERAL LIABILITY COVERAGE PART
   PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.  SCHEDULE**

   **Designated Product(s):**

   TEXTILES DYEING

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**B.  PROVISIONS**

   1.  With respect to any of "your products" shown in the Schedule above or "your services provided" on such products", the definition of "products-completed operations hazard" is amended by:

      **(a)** Deleting item **16.b.(3)**; and

      **(b)** Adding the following new item:

         ("Products-completed operations hazard")

         **c.**  Includes "bodily injury" and "property damage" arising out of products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

   2.  This insurance does not apply to "bodily injury" or "property damage" arising out of any of "your products" shown in the Schedule above or "your services provided" on such products which:

      **(a)** is included within the "products-completed operations hazard"; or

      **(b)** Arises out of or is caused by any supervision, recommendations or advice given or which should have been given in connection therewith; or

      **(c)** Arises out of or is caused by selling, shipping, delivering or installing an incor-

AAI - 000069

COMMERCIAL GENERAL LIABILITY

rect or inappropriate type of "your product".

Paragraph **(c)** of this exclusion applies only to "bodily injury" or "property damage" which occurs both away from premises you own or rent and either after you relinquish physical possession of "your product" or after "your work" has been completed or abandoned.

3. Only as respects the **PROVISIONS** of this endorsement, the following is added to **SECTION V – DEFINITIONS**:

"Your services provided" means any of "your work" which has been completed or abandoned and pertained to the installation, servicing, maintenance, correction, repair or replacement of "your product".

                    Copyright, The Travelers Indemnity Company, 2003                    **CG T3 06 11 03**

AAI - 000070

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – AIRCRAFT PRODUCTS AND GROUNDING

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**PROVISIONS**

This insurance does not apply to "bodily injury" or "property damage" included within the "products-completed operations hazard" and arising out of any "aircraft product" or the "grounding" of any aircraft.

"Aircraft product" means:

1. Aircraft (including missile or spacecraft, and any ground support or control equipment used therewith); and

2. Any of "your products" manufactured for, used in connection with, or incorporated into aircraft, aircraft parts, aircraft equipment or aircraft accessories including, but not limited to, ground handling tools and equipment; and

3. Any of "your products" used at an airport for the purpose of guidance, navigation or direction of aircraft; and

4. Training aids, manuals, blueprints, engineering or other data or advice, and services and labor relating to such aircraft, articles or products.

"Grounding" means the withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft, by reason of the existence of or alleged or suspected existence of any defect, fault or condition in such aircraft or any part therefore sold, handled or distributed by the insured or manufactured, assembled or processed by any other person or organization according to specifications, plans, suggestions, orders, or drawings of the insured or with tools, machinery or other equipment furnished to such persons or organizations by the insured, whether such aircraft so withdrawn are owned or operated by the same or different persons, organizations or corporations.

AAI - 000071

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION — ASBESTOS

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    CATASTROPHE UMBRELLA POLICY

This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of the actual or alleged presence or actual, alleged or threatened dispersal of asbestos, asbestos fibers or products containing asbestos, provided that the injury or damage is caused or contributed to by the hazardous properties of asbestos. This includes:

a. Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above; and

b. Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage.

CG T4 78 02 90          Copyright, The Travelers Indemnity Company.          Page 1 of 1

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# POLLUTION EXCLUSION – LOUISIANA

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Paragraph **f.** under Paragraph **2.** Exclusions is replaced by the following:

**f. Pollution**

  (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

    (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

      (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

      (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

      (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

    (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

      (i) Any insured; or

      (ii) Any person or organization for whom you may be legally responsible; or

    (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

      (I) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

Copyright, The Travelers Indemnity Company, 2003
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AAI - 000073

COMMERCIAL GENERAL LIABILITY

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) (This insurance also does not apply to) "Pollution costs".

**B. COVERAGE D. LIMITED COVERAGE FOR POLLUTION COSTS**

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as "limited covered pollution costs" to which this insurance applies. We will have the right and duty to defend any "suit" seeking "limited covered pollution costs". We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for "limited covered pollution costs" shall be included within, and not in addition to, the Each Occurrence Limit because of all "bodily injury" and "property damage" arising out of any one "occurrence". The total amount we will pay for "limited covered pollution costs" shall be included within, and not in addition to, the limits set forth in LIMITS OF INSURANCE (Section III), paragraphs **2.** and **3.**, whichever is applicable; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under **COVERAGES A** or **B**, or "limited covered pollution costs" under **COVERAGE D**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SUPPLEMENTARY PAYMENTS – COVERAGES A, B AND D**.

b. This insurance applies to "limited covered pollution costs" only if:

(1) The "limited covered pollution costs" result from an "occurrence" that takes place in the "coverage territory"; and

(2) The same "occurrence" which results in "limited covered pollution costs" also causes "bodily injury" or "property damage" to which **COVERAGE A** applies.

2. Exclusions

This insurance does not apply to:

a. "Limited covered pollution costs" incurred by any person or organization other than the Named Insured shown in the Declarations.

b. "Limited covered pollution costs" which the insured is obligated to pay by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability that the insured would have to pay "limited covered pollution costs" in the absence of the contract or agreement.

c. "Limited covered pollution costs" if the "bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" is not covered under **COVERAGE A**.

3. **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B** is amended to read:

**SUPPLEMENTARY PAYMENTS – COVERAGES A, B, AND D**.

C. The following are added to the **Definitions** Section:

1. "Limited covered pollution costs" means any cost or expense arising out of:

Copyright, The Travelers Indemnity Company, 2003
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CG F2 38 11 03

AAI - 000074

a. Any request, demand or order that the insured test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or assess the effects of "pollutants"; or

b. Any claim or "suit" by or on behalf of a governmental authority demanding that the insured test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or assess the effects of "pollutants".

"Limited covered pollution costs" shall not include:

i. Punitive or exemplary damages, or statutory or administrative fines or penalties; or

ii. Salaries or benefits paid to your employees; or

iii. Any cost or expense arising out of any request, demand or order that the insured test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or assess the effects of "pollutants" situated on any premises, site or location which is or was at any time owned, occupied or managed by, or rented or loaned to you; or

iv. Any cost or expense arising out of any claim or "suit" by or on behalf of a governmental authority demanding that the insured test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or assess the effects of "pollutants" situated on any premises, site or location which is or was at any time owned, occupied or managed by, rented or loaned to you.

2. "Pollution costs" means any cost or expense arising out of any:

a. Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants"; or

b. Claim or "suit" by or on behalf of a governmental authority because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

Copyright, The Travelers Indemnity Company, 2003
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AAI - 000075

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WASHINGTON CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **e.** of Coverage **A** – Bodily Injury And Property Damage Liability (Section **I** – Coverages) applies only to "bodily injury" to any "employee" of the insured whose employment is not subject to the Industrial Insurance Act of Washington (Washington Revised Code Title 51).

With respect to "bodily injury" to "employees" of the insured whose employment is subject to the Industrial Insurance Act of Washington, Exclusion **e.** is replaced with the following:

This insurance does not apply to:

1. "Bodily injury" to an "employee" of the insured arising out of and in the course of:

    **a.** Employment by the insured; or

    **b.** Performing duties related to the conduct of the insured's business; or

2. Any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**B.** Paragraphs **2.a.(1)(a)**, **(b)** and **(c)** of Section **II** – Who Is An Insured apply only to "employees" of the insured whose employment is not subject to the Industrial Insurance Act of Washington (Washington Revised Code Title 51).

With respect to "employees" of the insured whose employment is subject to the Industrial Insurance Act of Washington, Paragraph **2.a.(1)** of **Section II – Who Is An Insured** is replaced with the following:

2. Each of the following is also an insured:

    **a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

    **(1)** "Bodily injury" or "personal injury" or "advertising injury":

        **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

        **(b)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** above; or

        **(c)** Arising out of his or her providing or failing to provide professional health care services.

Copyright, The Travelers Indemnity Company, 2003
Includes copyrighted material of Insurance Services Office Inc., with its permission.

AAI - 000076

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDATORY ENDORSEMENT – VIRGINIA EBL

This endorsement modifies insurance provided under the following:

EMPLOYEE BENEFITS LIABILITY COVERAGE PART

## PROVISIONS

Paragraphs **1.**, **2.** and **4.** of **SECTION VI – EXTENDED REPORTING PERIODS** are deleted and replaced by the following:

**1.** We will provide an automatic Extended Reporting Period as described in paragraph **3.** or, if you purchase it, an Extended Reporting Period Endorsement as described in paragraph **4**, only if:

   **a.** The policy to which this Coverage Part is attached is cancelled or not renewed by either you or us for any reason other than non-payment of premium or failure to comply with policy terms or conditions;

   **b.** We renew or replace this Coverage Part with other insurance that:

      **(1)** Has a Retroactive Date later than the date shown in this Coverage Part's Declarations; or

      **(2)** Does not apply to an act, error or omission on a claims-made basis;

   **c.** The coverage provided by this Coverage Part is terminated; or

   **d.** An exclusionary endorsement is attached at other than the first effective date of this Coverage Part. However, with respect to this provision **d.** only, any Extended Reporting Period applies only to the coverage which is newly excluded.

**2.** If we provide an Extended Reporting Period, the following is added to paragraph **1.b.** of **Insuring Agreement – SECTION I:**

   **(3)** A claim first made during the Extended Reporting Period will be deemed to have been made on the last day of the policy period provided that the claim is for damages because of an act, error or omission that occurred before the end of the policy period of this policy (but not before any applicable Retroactive Date).

The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Declarations.

Extended Reporting Periods do not reinstate or increase the Limits of Insurance applicable to any claim to which this Coverage Part applies, except to the extent described as follows:

If the optional Extended Reporting Period is in effect, we will provide the separate aggregate limits of insurance described below, but only for claims first received and recorded during the optional Extended Reporting Period.

The separate aggregate limits of insurance will be equal to the dollar amount shown in the Declarations in effect at the end of the policy period.

Paragraphs **2.** and **3.** of **SECTION III – LIMITS OF INSURANCE** will be amended accordingly.

**4.** If you purchase the optional Extended Reporting Period Endorsement, the Extended Reporting Period will be for three years, starting with the end of the policy period of this policy. We will issue that Endorsement if the first Named Insured shown in the Declarations:

   **a.** Makes a written request for it which we receive within 60 days after the end of the policy period; and

   **b.** Promptly pays the additional premium when due.

The Extended Reporting Period Endorsement will not take effect unless the additional premium is paid when due. If that premium is paid when due, the endorsement may not be cancelled.

The Extended Reporting Period Endorsement will also amend paragraph **4.a.** of **SECTION V – EMPLOYEE BENEFITS LIABILITY CONDITIONS** (Other Insurance) so that the insurance provided will be excess over any other valid and collectible insurance available to the insured, whether primary, excess, contingent or on any other basis, whose policy period begins or continues after the Endorsement takes effect.

© 2006 The St. Paul Travelers Companies, Inc.
Includes the copyrighted material of Insurance Services Office, Inc., with its permission.

AAI - 000077

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** With regard to liability for Bodily Injury, Property Damage and Personal And Advertising Injury, unless we are prejudiced by the insured's or your failure to comply with the requirement, no provision of this Coverage Part requiring you or any insured to give notice of "occurrence", claim or "suit", or forward demands, notices, summonses or legal papers in connection with a claim or "suit" will bar coverage under this Coverage Part.

© ISO Properties, Inc., 2005

AAI - 000078

POLICY NUMBER: Y-660-4790A876-TIL-07

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 04-02-07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VERMONT CHANGES – POLLUTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM (OCCURRENCE VERSION)

**SCHEDULE**

Pollution Liability Aggregate Limit: $1,000,000

**A.** The following is added to **Section I – Coverages**:

**COVERAGE D POLLUTION BODILY INJURY AND PROPERTY DAMAGE**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" included within the "pollution liability hazard" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the Pollution Liability Aggregate Limit in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A, B** and **D.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph **c.** below, during the policy period.

**c.** A claim by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

**(1)** When notice of such claim is received and recorded by any insured or by us, whichever comes first; or

**(2)** When we make a settlement in accordance with Paragraph **1.a.** above.

All claims for damages because of "bodily injury" to the same person, including damages claimed by any person or organization for care, loss of services, or death resulting at any time from the "bodily injury" will be deemed to have been made at the time the first of those claims is made against any insured.

All claims for damages because of "property damage" causing loss to the same person or organization as a result of an "occurrence" will be deemed to have been made at the time the first of those claims is made against any insured.

All claims for injury or damage arising out of a discharge, release or escape of "pollutants", including all injury or damage arising out of all subsequent exposure of persons and property to such "pollutants", shall be deemed to have been made at the time the first of those claims is made against any insured.

**CG 01 54 09 06**    © ISO Properties, Inc., 2006    Page 1 of 4

COMMERCIAL GENERAL LIABILITY

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**(2)** That the insured would have in the absence of the contract or agreement.

### c. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### d. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

### e. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies to claims against any insured that allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which resulted in the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

© ISO Properties, Inc., 2006

CG 01 54 09 06

AAI - 000080

COMMERCIAL GENERAL LIABILITY

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**f.   Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

**g.   War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**h.   Damage To Property**

"Property damage" to:

**(1)** Property you own, rent or occupy including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you; or

**(4)** Personal property in the care, custody or control of the insured.

Paragraphs **(3)** and **(4)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

**I.   Products-Completed Operations Hazard**

"Bodily injury" or "property damage" included within the "products-completed operations hazard".

**j.   Statutory Or Regulatory Clean-Up Costs**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**B.** **Supplementary Payments – Coverages A And B** is replaced by the following:

**SUPPLEMENTARY PAYMENTS – COVERAGES A, B AND D**

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**1.** All expenses we incur.

**2.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**3.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

 © ISO Properties, Inc., 2006

AAI - 000081

COMMERCIAL GENERAL LIABILITY

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

C. The following is added to **Section III – Limits Of Insurance:**

The Pollution Liability Aggregate Limit is the most we will pay under Coverage **D** for all damages because of injury and damage for which claim is first made during the policy period.

D. Paragraph **4. Other Insurance** of **Section IV – Conditions** is amended as follows:

All references to Coverage **A** or **B** are amended to read Coverage **A, B** or **D.**

E. The following additional definition applies:

"Pollution Liability hazard" means all "bodily injury" and "property damage" arising out of the discharge, release or escape of "pollutants" at or from:

a. Premises you own, rent or occupy; or

b. Any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations.

© ISO Properties, Inc., 2006

**CG 01 54 09 06**

AAI - 000082

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MICHIGAN CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The paragraph relating to prejudgment interest in **Supplementary Payments** Section **I** is replaced by the following:

Prejudgment interest awarded against the insured on that part of the judgment we pay.

**B.** With respect to the Duties Condition Section **IV**:

**1.** Notice given by or on behalf of the insured to our authorized agent, with particulars sufficient to identify the insured, shall be considered notice to us.

**2.** The last sentence of Paragraph **2.b.** is deleted.

**3.** The reference to Paragraph **d.** is amended to read Paragraph **e.**

**4.** The following is added:

**d.** Failure to give any notice required by this Condition within the time period specified shall not invalidate any claim made by you if it shall be shown not to have been reasonably possible to give notice within the prescribed time period and that notice was given as soon as was reasonably possible.

AAI - 000083

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW JERSEY CHANGES — LOSS INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART ("OCCURRENCE" VERSION)

The following Condition is added to COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV):

**10. Your Right to Loss Information**

We will provide the first Named Insured shown in the Declarations the following loss information relating to this and any preceding general liability Coverage Part we have issued to you during the previous three years:

**a.** A list or other record of each "occurrence" of which we were notified in accordance with paragraph **2.a.** of the Duties in the Event of Occurrence, Offense, Claim or Suit Condition in this Section. We will include a brief description of the "occurrence" and information on whether any claim arising out of the "occurrence" is open or closed.

**b.** A summary by policy year, of payments made and amounts reserved, stated separately under any applicable General Aggre-

gate Limit and Products–Completed Operations Aggregate Limit.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

You must not disclose this information to any claimant or any claimant's representative without our consent.

We will provide this information only if we receive a written request from the first Named Insured during the policy period. We will provide this information within 45 days of receipt of the request.

We compile claim and "occurrence" information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured, we make no representations or warranties to insureds, insurers or others to whom this information is furnished by or on behalf of any insured.

    Copyright, Insurance Services Office, Inc., 1992

AAI - 000084

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES—TRANSFER OF DUTIES WHEN A LIMIT OF INSURANCE IS USED UP

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following Condition is added to COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV):

**Transfer of Duties When a Limit of Insurance is Used Up.**

a.  If we conclude that, based on "occurrences," offenses, claims or "suits" which have been reported to us and to which this insurance may apply, the:

    (1)  General Aggregate Limit (other than the Products–Completed Operations Aggregate Limit);

    (2)  Products–Completed Operations Aggregate Limit;

    (3)  Personal and Advertising Injury Limit;

    (4)  Each Occurrence Limit; or

    (5)  Fire Damage Limit

is likely to be used up in the payment of judgments or settlements, we will notify the first Named Insured, in writing, to that effect.

b.  When a limit of insurance described in paragraph a. above has actually been used up in the payment of judgments or settlements:

    (1)  We will notify the first Named Insured, in writing, as soon as practicable, that:

        (a)  Such a limit has actually been used up; and

        (b)  Our duty to defend "suits" seeking damages subject to that limit has also ended.

    (2)  We will initiate, and cooperate in, the transfer of control, to any appropriate insured, of all claims and "suits" seeking damages which are subject to that limit and which are reported to us before that limit is used up. That insured must cooperate in the transfer of control of said claims and "suits".

We agree to take such steps, as we deem appropriate, to avoid a default in, or continue the defense of, such "suits" until such transfer is completed, provided the appropriate insured is cooperating in completing such transfer.

We will take no action whatsoever with respect to any claim or "suit" seeking damages that would have been subject to that limit, had it not been used up, if the claim or "suit" is reported to us after that limit of insurance has been used up.

    (3)  The first Named Insured, and any other insured involved in a "suit" seeking damages subject to that limit, must arrange for the defense of such "suit" within such time period as agreed to between the appropriate insured and us. Absent any such agreement, arrangements for the defense of such "suit" must be made as soon as practicable.

c.  The first Named Insured will reimburse us for expenses we incur in taking those steps we deem appropriate in accordance with paragraph b.(2) above.

The duty of the first Named Insured to reimburse us will begin on:

    (1)  The date on which the applicable limit of insurance is used up, if we sent notice in accordance with paragraph a. above; or

    (2)  The date on which we sent notice in accordance with paragraph b.(1) above, if we did not send notice in accordance with paragraph a. above.

d.  The exhaustion of any limit of insurance by the payments of judgments or settlements, and the resulting end of our duty to defend, will not be affected by our failure to comply with any of the provisions of this Condition.

 Copyright, Insurance Services Office, Inc., 1991

AAI - 000085

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MARYLAND CHANGES – PREMIUM AUDIT CONDITION

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    UNDERGROUND STORAGE TANK POLICY

Paragraph **5.b.** of **Section IV – Conditions** is replaced by the following:

**5. Premium Audit**

    **b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is 30 days from the date of the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

 © ISO Properties, Inc., 2001

AAI - 000086

COMMERCIAL GENERAL LIABILITY

**THE ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## TEXAS CHANGES – XTEND ENDORSEMENTS
## EXCLUSION OF COVERAGE FOR AIRCRAFT
## CHARTERED WITH CREW

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### PROVISIONS

This endorsement describes a change to one of the following XTEND Endorsements which is included on your policy:

XTEND Endorsement (CG D1 86)

Manufacturers and Wholesalers XTEND Endorsement (CG D1 87)

Colleges and Schools XTEND Endorsement (CG D1 86)

Girl Scouts XTEND Endorsement (CG D3 66)

Golf or Country Club Facilities XTEND Endorsement (CG D3 67)

Architects, Engineers and Surveyors XTEND Endorsement (CG D3 79)

If XTEND Endorsement (CG D1 86) is included on your policy, the change is that Provision **J.** (Aircraft Chartered With Crew) is deleted from, and no coverage for aircraft chartered with crew is provided under, CG D1 86.

If Manufacturers and Wholesalers XTEND Endorsement (CG D1 87) is included on your policy, the change is that Provision **L.** (Aircraft Chartered With Crew) is deleted from, and no coverage for aircraft chartered with crew is provided under, CG D1 87.

If Colleges and Schools XTEND Endorsement (CG D1 88) is included on your policy, the change is that Provision **I.** (Aircraft Chartered With Crew) is deleted from, and no coverage for aircraft chartered with crew is provided under, CG D1 88.

If Girl Scouts XTEND Endorsement (CG D3 66) is included on your policy, the change is that Provision **K.** (Aircraft Chartered With Crew) is deleted from, and no coverage for aircraft chartered with crew is provided under, CG D3 66.

If Golf or Country Club Facilities XTEND Endorsement (CG D3 67) is included on your policy, the change is that Provision **K.** (Aircraft Chartered With Crew) is deleted from, and no coverage for aircraft chartered with crew is provided under, CG D3 67.

If Architects, Engineers and Surveyors XTEND Endorsement (CG D3 79) is included on your policy, the change is that Provision **E.** (Aircraft Chartered With Crew) is deleted from, and no coverage for aircraft chartered with crew is provided under, CG D3 79.

Copyright 2006 The St. Paul Travelers Companies, Inc.

AAI - 000087

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – LEAD – NEW JERSEY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## PROVISIONS

This insurance does not apply to any injury, damage, loss, cost, payment or expense, including, but not limited to, defense and investigation, of any kind arising out of, resulting from, caused by or contributed to by the actual or alleged presence or actual, alleged or threatened dispersal, release, ingestion, inhalation or absorption of lead, lead compounds or lead which is or was contained or incorporated into any material or substance. This exclusion applies, but is not limited to:

1. Any supervision, instructions, recommendations, warnings or advice given in connection with the above;

2. Any obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such injury or damage, loss, cost, payment or expense; or

3. Any request, order or requirement to abate, mitigate, remediate, contain, remove or dispose of lead, lead compounds or materials or substances containing lead.

This exclusion does not apply to injury or damage arising out of any building or premises which is:

a. Constructed in 1978 or subsequent; or

b. Which has been certified as being free of existing lead hazards pursuant to standards established by the Department of Community Affairs.

Copyright, The Travelers Indemnity Company, 1999

AAI - 000088

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VIRGINIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph 4. of Section II – Who Is An Insured is replaced by the following:

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as an insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

Copyright, The Travelers Indemnity Company, 2000
Includes Copyrighted Material of Insurance Services Office, Inc.

AAI - 000089

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – INSURED CONTRACT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to COMMERCIAL GENERAL LIABILITY DEFINITIONS (Section V):

The definition of "Insured contract" is amended to add the following:

"Insured contract" does not include your liability to a third party by reason of a Claim or suit against you by that third party for contribution under the Illinois Joint Tortfeasor Contribution Act for damages claimed against such third party as a result of injury to your employee if you have that liability because you have waived, in a contract, your right to limit such liability to the amount of the workers compensation benefits paid for that injured employee under the Illinois Workers Compensation Act.

CG F2 11 11 03                    Copyright, The Travelers Indemnity Company, 2003                    Page 1 of 1

AAI - 000090

# EMPLOYEE BENEFITS LIABILITY

AAI - 000091

# EMPLOYEE BENEFITS LIABILITY

AAI - 000092

 **TRAVELERS**

One Tower Square, Hartford, Connecticut 06183

**EMPLOYEE BENEFITS LIABILITY
COVERAGE PART DECLARATIONS**

**POLICY NO.:** Y-660-4790A876-TIL-07
**ISSUE DATE:** 04-02-07

**INSURING COMPANY:**
TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

**DECLARATIONS PERIOD:** From 04-01-07 to 04-01-08    12:01 A.M. Standard Time at your mailing address shown in the Common Policy Declarations.

The Employee Benefits Liability Coverage Part consists of these Declarations and the Coverage Form shown below.

**1. COVERAGE AND LIMITS OF INSURANCE**

| Employee Benefits Liability Coverage Form | Limits of Insurance |
|---|---|
| Aggregate Limit | $ 2,000,000 |
| Each Employee Limit | $ 1,000,000 |

**2. AUDIT PERIOD:** ANNUAL

**3. FORM OF BUSINESS:** CORPORATION

**4. RETROACTIVE DATE:**

This insurance does not apply to negligent acts, errors or omissions which occurred before the Retroactive Date, if any shown below.

Retroactive Date: 03-05-2005

**5. EMPLOYEE BENEFIT PROGRAMS OTHER THAN THOSE LISTED IN SECTION VII — DEFINITIONS:**

**6. DEDUCTIBLE:**

$ NONE    EACH EMPLOYEE

**7. PREMIUM COMPUTATION:**

| Estimated No. of Employees | Rate Per Employee | Estimated Premium | Minimum Premium |
|---|---|---|---|
| 3,000 | .320 | $ 865 | $ 300 |

**8. NUMBERS OF FORMS, SCHEDULES AND ENDORSEMENTS FORMING PART OF THIS COVERAGE PART ARE ATTACHED AS A SEPARATE LISTING.**

CG T0 09 09 93

Page 1 of 1

PRODUCER: C M MEIERS COMPANY INC          VC547          OFFICE: GLENDALE CA          05C

AAI - 000093

## TABLE OF CONTENTS

# EMPLOYEE BENEFITS LIABILITY COVERAGE FORM  CG T1 01
# CLAIMS MADE

SECTION I--COVERAGES

| | | Beginning on Page |
|---|---|---|
| Employee Benefits Liability Coverage | Insuring Agreement | 1 |
| | Exclusions | 1 |
| Supplementary Payments | | 2 |

SECTION II--WHO IS AN INSURED .......................................... 2

SECTION III--LIMITS OF INSURANCE ...................................... 2

SECTION IV--DEDUCTIBLE ..................................................... 3

SECTION V--EMPLOYEE BENEFITS LIABILITY CONDITIONS .......... 3

Bankruptcy ............................................................................. 3
Cancellation, Non-renewal, Renewal and Reduction or Deletion of Coverage ........... 4
Duties in The Event of Act, Error or Omission ............................ 3
Legal Action Against Us .......................................................... 4
Other Insurance ..................................................................... 4
Premium Audit ....................................................................... 4
Representations ..................................................................... 4
Separation of Insureds ........................................................... 4
Transfer of Rights of Recovery Against Others To Us .................. 4

SECTION VI--EXTENDED REPORTING  PERIODS ....................... 4

SECTION VII--DEFINITIONS ................................................... 5

CG T0 43 11 88

AAI - 000094

# EMPLOYEE BENEFITS LIABILITY COVERAGE FORM

## THIS FORM PROVIDES CLAIMS MADE COVERAGE. PLEASE READ THE ENTIRE FORM CAREFULLY.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION II – WHO IS AN INSURED.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION VII – DEFINITIONS.

## SECTION I – EMPLOYEE BENEFITS LIABILITY COVERAGE

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of any negligent act, error, or omission of the insured, or of any other person for whose acts the insured is legally liable. The negligent act, error, or omission must be committed in the "administration" of your "employee benefit program." No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS. This insurance does not apply to any negligent act, error, or omission which occurred before the Retroactive Date, if any, shown in the Declarations or which occurs after the policy expires. The negligent act, error or omission must take place in the "coverage territory." We will have the right and duty to defend any "suit" seeking those damages. But:

      (1) The amount we will pay for damages is limited as described in SECTION III – LIMITS OF INSURANCE;

      (2) We may at our discretion, investigate any report of a negligent act, error or omission and settle any claim or "suit" that may result: and

      (3) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.

   b. This insurance applies to any negligent act, error or omission of the insured, but only if a claim for damages because of the negligent act, error or omission is first made against any insured during the policy period.

      (1) A claim by a person or organization seeking damages will be deemed to have been made when notice of such claim is received and recorded by any insured or by us, whichever comes first.

      (2) All claims for damages sustained by any one employee, including the employee's dependents and beneficiaries, will be deemed to have been made at the time the first of those claims is made against any insured.

2. **Exclusions**

   This insurance does not apply to:

   a. Loss arising out of any dishonest, fraudulent, criminal or malicious act or omission, committed by any insured;

   b. "Bodily injury" or "property damage" or "personal injury";

   c. Loss arising out of failure of performance of contract by any insured;

   d. Loss arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program";

   e. Any claim or suit based upon:

      (1) failure of any investment to perform as represented by any insured, or

CG T1 01 07 86

AAI - 000095

COMMERCIAL GENERAL LIABILITY

(2) advice given to any person to participate or not to participate in any plan included in the "employee benefit program";

f. Loss arising out of your failure to comply with the mandatory provisions of any law concerning workers' compensation, unemployment insurance, social security or disability benefits;

g. Loss for which the insured is liable because of liability imposed on a fiduciary by the Employee Retirement Security Act of 1974, as now or hereafter amended; or

h. Loss or damage for which benefits have accrued under the terms of an employee benefit plan to the extent that such benefits are available from funds accrued by the insured for such benefits or from collectible insurance, notwithstanding the insured's act, error or omission in administering the plan which precluded the claimant from receiving such benefits.

3. **Supplementary Payments**

We will pay, with respect to any claim or "suit" we defend:

a. All expenses we incur.

b. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

c. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $100 a day because of time off from work.

d. All costs taxed against the insured in the "suit."

e. Pre-judgment interest awarded against the insured on that part of the judgment we pay. If we made an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

f. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured.

   c. An organization other than a partnership or joint venture, you are an insured. Your directors and stockholders are also insureds, but only with respect to their liability as your directors or stockholders.

2. Each of the following is also an insured:

   a. Each of your partners, executive officers and employees who is authorized to administer your "employee benefit program."

   b. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will be deemed to be a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire, or form the organization or the end of the policy period, whichever is earlier:

   b. Coverage under this provision does not apply to any negligent act, error or omission that occurred before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought;

   c. Persons or organizations making claims or bringing "suits."

   d. Acts, errors or omissions which result in loss; or

CG T1 01 07 86

AAI - 000096

e. Plans included in your "employee benefit program";

2. The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions committed in the "administration" of your "employee benefit program."

3. Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one employee, including the employee's dependents and beneficiaries, because of acts, errors or omissions committed in the "administration" of your "employee benefit program."

The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – DEDUCTIBLE

1. Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in Item 6 of the Declarations as applicable to "Each Employee." The limits of insurance applicable to "Each Employee" will be reduced by the amount of this deductible. The Aggregate limit shall not be reduced by the application of such deductible amount.

2. The deductible amount stated in the Declarations applies to all damages sustained by an employee because of an act, error or omission covered by this insurance.

3. The terms of this insurance, including those with respect to:

   a. Our right and duty to defend any "suits" seeking those damages; and

   b. Your duties in the event of an act, error or omission claim, or suit apply irrespective of the application of the deductible amount.

4. We may pay any part or all of the deductible amount to effect settlement of any claim or suit and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

## SECTION V – EMPLOYEE BENEFITS LIABILITY CONDITIONS

1. **Bankruptcy.**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In the Event Of Act, Error or Omission, Claim or Suit.**

   a. You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a claim. Notice should include:

      (1) What the act, error or omission was and when it occurred.

      (2) The names and addresses of any employees who may suffer damages as a result of the act, error or omission.

      Notice of an act, error or omission is not notice of a claim.

   b. If a claim is received by any insured you must:

      (1) Immediately record the specifics of the claim and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or a "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of damage to which this insurance may also apply.

   d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

3. **Legal Action Against Us.**

   No person or organization has a right under this Coverage Part:

**CG T1 01 07 86**

AAI - 000097

COMMERCIAL GENERAL LIABILITY

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance.**

If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

**a.** Primary Insurance.

This insurance is primary except when paragraph 4. of Section VI – Extended Reporting Periods applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in b. below.

**b.** Method of Sharing.

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit.**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period.

Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations.**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against who claim is made or "suit" is brought.

**8. Transfer of Rights of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. Cancellation, Non-renewal, Renewal and Reduction or Deletion of Coverage:**

The following conditions also apply to this Coverage Part:

All conditions relating to cancellation, non-renewal, renewal, and reduction or deletion of coverage which would apply to a Commercial General Liability Coverage Part attached to this policy.

**SECTION VI – EXTENDED REPORTING PERIODS**

**1.** We will provide an automatic Extended Reporting Period as described in paragraph 3. or, if you

CG T1 01 07 86

AAI - 000098

COMMERCIAL GENERAL LIABILITY

purchase it, an Extended Reporting Period Endorsement as described in paragraph 4, only if:

**a.** This Coverage Part is cancelled or not renewed for any reason; or

**b.** We renew or replace this Coverage Part with other insurance that has a Retroactive Date later than the one shown in this Coverage Part's Declarations.

**2.** If we provide an Extended Reporting Period, the following is added to paragraph 1.b. of INSURING AGREEMENT – SECTION I:

**(3)** A claim first made during the Extended Reporting Period will be deemed to have been made on the last day of the policy period provided that the claim is for damages because of an act, error or omission that occurred before the end of the policy period of this policy (but not before any applicable Retroactive Date).

The Extended Reporting Period will not reinstate or increase the Limits of Insurance or extend the policy period.

**3.** The automatic Extended Reporting Period will be for 60 days, starting with the end of the policy period of this policy.

This automatic Extended Reporting Period applies only if no subsequent insurance you purchase applies to the claim, or would apply but for the exhaustion of its applicable limit of insurance.

This automatic Extended Reporting Period may not be cancelled.

**4.** If you purchase the optional Extended Reporting Period Endorsement, the Extended Reporting Period will be for one year, starting with the end of the policy period of this policy. We will issue that Endorsement if the first Named Insured shown in the Declarations:

**a.** Makes a written request for it which we receive within 60 days after the end of the policy period; and

**b.** Promptly pays the additional premium when due.

The Extended Reporting Period Endorsement will not take effect unless the additional premium is paid when due. If that premium is paid when due, the endorsement may not be canceled.

The Extended Reporting Period Endorsement will also amend paragraph 4.a. of SECTION V – EMPLOYEE BENEFITS LIABILITY CONDITIONS

(Other Insurance) so that the insurance provided will be excess over any other valid and collectible insurance available to the insured, whether primary, excess, contingent or on any other basis, whose policy period begins or continues after the Endorsement takes effect.

**5.** We will determine the actual premium for the Extended Reporting Period Endorsement in accordance with our rules and rates. In doing so, we may take into account the following:

**a.** The exposures insured;

**b.** Previous types and amounts of insurance;

**c.** Limits of Insurance available under this Coverage Part for future payment of damages; and

**d.** Other related factors.

The premium for the Extended Reporting Period Endorsement will not exceed 200% of the annual premium for the Coverage Part to which the endorsement would be attached and will be fully earned when the Endorsement takes effect.

**SECTION VII – DEFINITIONS**

**1.** "Administration" means:

**a.** Counseling employees, including their dependents and beneficiaries, with respect to the "employee benefit program";

**b.** Handling records in connection with the "employee benefit program"; or

**c.** Effecting or terminating any employee's participation in a plan included in the "employee benefit program."

**2.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**3.** "Coverage territory" means the United States of America (including its territories and possessions), Puerto Rico and Canada.

**4.** "Employee" means your officers, partners and employees whether actively employed, disabled or retired.

**5.** "Employee benefit program" means the following plans:

**a.** Group life insurance, group accident or health insurance, "profit sharing plans," pension plans and "stock subscription plans," provided that no one other than an employee may subscribe to such insurance or plans;

AAI - 000099

COMMERCIAL GENERAL LIABILITY

**b.** Unemployment insurance, social security benefits, workers' compensation and disability benefits;

**c.** Any other similar plan designated in the Declaration or added thereto by endorsement.

**6.** "Personal injury" means injury other than "bodily injury," arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies;

**d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

**e.** Oral or written publication of material that violates a person's right of privacy.

**7.** "Profit sharing plans" mean only such plans that are equally available to all full time employees.

**8.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property; or

**b.** Loss of use of tangible property that is not physically injured.

**9.** "Stock subscription plans" mean only such plans that are equally available to all full time employees.

**10.** "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes an arbitration proceeding alleging such damages to which you must submit or submit with our consent.

CG T1 01 07 86

AAI - 000100

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT — EBL

This endorsement modifies insurance provided under the following:

EMPLOYEE BENEFITS LIABILITY COVERAGE PART

## PROVISIONS

This coverage part is amended as follows:

1. Under Section I — EMPLOYEE BENEFITS LIA-BILITY COVERAGE–Exclusion 2.c. is amended to read as follows:

   c. Loss arising out of failure of performance of contract by any insurer;

2. Under Section II — WHO IS AN INSURED–Item 1.b. is replaced by the following:

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to their duties as partners or members of a joint venture.

**CG T5 30 06 89**

Page 1 of 1

AAI - 000101

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION — IRC VIOLATIONS

This endorsement modifies insurance provided under the following:

    EMPLOYEE BENEFITS LIABILITY COVERAGE PART

**PROVISIONS**

This insurance does not apply to:

**a.** Any taxes, fines, interest, penalties or other cost imposed under, or resulting from, any provision of the Internal Revenue Code of 1986, as amended, or any similar state or local law; or

**b.** Any expense, loss or damages (i) arising out of the imposition of such taxes, fines, interest, penalties or other charges or (ii) resulting from any provision of the Internal Revenue Code of 1986, as amended.

Copyright, The Travelers Indemnity Company, 1995

AAI - 000102

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION--C.O.B.R.A.

This endorsement modifies insurance provided under the following:

EMPLOYEE BENEFITS LIABILITY COVERAGE PART

**PROVISIONS:**

This insurance does not apply to damages arising out of an insured's failure to comply with Section 162 (k) of the Internal Revenue Code of 1954, as amended, that results in:

**a)** Pursuant to Section 162 (i) (2) of the Internal Revenue Code of 1954, as amended, the denial of tax deductions for employer contributions to any group health plan maintained by such employer; or

**b)** Pursuant to Section 106 (b) of the Internal Revenue Code of 1954, as amended, the inclusion in the gross income of an employee of the amount contributed by an employer on the employee's behalf to a group health plan maintained by such employer.

**CG T4 84 11 88**

Page 1 of 1

AAI - 000103

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL EXCLUSION--
# EMPLOYEE BENEFITS LIABILITY

This endorsement modifies insurance provided under the following:

EMPLOYEE BENEFITS LIABILITY COVERAGE PART

**PROVISIONS**

This insurance does not apply to loss arising out of:

1. The wrongful termination of an employee;
2. The coercion, demotion, reassignment, discipline, or harassment of an employee;
3. Discrimination against an employee.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION–DAMAGES UNDER CERTAIN EMPLOYEE BENEFIT PROGRAMS

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    EMPLOYEE BENEFITS LIABILITY COVERAGE PART

**PROVISIONS**

1. This insurance does not apply to damages arising out of the providing of employee benefits to a "highly compensated employee," "key employee," "principal shareholder or owner," or other employee for whom benefits are limited which cause an "employee benefit program" to fail any applicable discrimination requirement set forth in the Internal Revenue Code of 1986, as amended, which failure results in:

   a. The denial of tax deductions for employer contributions to any discriminatory "employee benefit program" maintained by such employer; or

   b. The inclusion in the gross income of a "highly compensated employee" or "key employee" of an amount contributed by an employer on that employee's behalf to an "employee benefit program" maintained by that employer.

2. This insurance does not apply to damages arising out of the disqualification of an "employee benefit program" or any other employer provided benefit plan or arrangement for favorable treatment under the Internal Revenue Code of 1986, as amended, or the regulations thereunder.

As used in this endorsement:

"Highly compensated employee" has the meaning given such term by Sections 105(h)(5), 125(e)(1) or 414(q) of the Internal Revenue Code of 1986, as amended, as applicable.

"Key employee" has the meaning given such term by Section 416(i)(1) of the Internal Revenue Code of 1986, as amended.

"Principal shareholder or owner" has the meaning given such term by Section 129(d)(4) of the Internal Revenue Code of 1986, as amended.

AAI - 000105

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES – DUTIES

This endorsement modifies insurance provided under the following:

    EMPLOYEE BENEFITS LIABILITY COVERAGE PART

The following is added to the **Duties** Condition.

We will notify the first Named Insured in writing of:

1. An initial offer to compromise or settle a claim made or "suit" brought against any insured under this coverage. The notice will be given not later than the 10th day after the date on which the offer is made.

2. Any settlement of a claim made or "suit" brought against the insured under this coverage. The notice will be given not later than the 30th day after the date of the settlement.

AAI - 000106

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFITS LIABILITY AMENDATORY ENDORSEMENT — NORTH CAROLINA

This endorsement modifies insurance provided under the following:

EMPLOYEE BENEFITS LIABILITY COVERAGE PART

**PROVISIONS:**

1. We will also consider a claim to have been first made when we receive first notice during the policy period of a negligent act, error or omission in the "administration" of your "employee benefits program."

   This only applies if:

   **(a)** We receive the notice from an insured or from the party seeking damages;

   **(b)** The insured has reasonable knowledge that a negligent act, error or omission has occurred; and

   **(c)** The information we receive includes the name and address of the party who may suffer damages and a specific description of the loss or damage which may result.

2. SECTION IV — DEDUCTIBLE — is amended by replacing provision 1. with the following:

   **1.** Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in item 5 of the Declarations as applicable to "Each Employee." The "Aggregate Limit" and the "Each Employee Limit" shall not be reduced by the application of such deductible amount.

CG T7 63 01 89

Page 1 of 1

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NORTH CAROLINA CHANGES – LOSS INFORMATION

This endorsement modifies insurance provided under the following:

EMPLOYEE BENEFITS LIABILITY COVERAGE PART

The following additional conditions applies:

**10. Your Right to Claim and Act, Error or Omission Information.**

We will provide the first Named Insured shown in the Declarations the following information relating to this and any other preceding employee benefits liability claims–made coverage part we have issued to you during the previous three years:

**a.** A list or other record of each act, error or omission not previously reported to any other insurer, of which we were notified in accordance with paragraph 2.a. of this Section. We will include the date and brief description of the act, error or omission if that information was in the notice we received.

**b.** A summary by policy year, of payments made and amounts reserved, stated separately, under any applicable Aggregate Limit.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values. We will provide this information within 45 days of receipt of the request.

We compile claim and act, error or omission information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured, we make no representations or warranties to insureds, insurers, or others to whom this information is furnished by or on behalf of any insured. Cancellation or nonrenewal will be effective even if we inadvertently provide inaccurate information.

AAI - 000108

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFITS LIABILITY AMENDATORY ENDORSEMENT--MARYLAND (CONFORMITY TO STATUTE)

This endorsement modifies insurance provided under the following:

EMPLOYEE BENEFITS LIABILITY COVERAGE PART

**PROVISIONS**

The terms of the Employee Benefits Liability Coverage Part which are in conflict with the statutes of the State of Maryland are hereby amended to conform to such statutes.

CG T9 07 07 86

Page 1 of 1

AAI - 000109

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MICHIGAN CHANGES--PREJUDGMENT INTEREST--EBL

This endorsement modifies insurance provided under the following:

    EMPLOYEE BENEFITS LIABILITY COVERAGE PART

**PROVISIONS**

The paragraph relating to prejudgment interest in SUPPLEMENTARY PAYMENTS (Section I) is replaced by the following:

    Prejudgment interest awarded against the insured on that part of the judgment we pay.

AAI - 000110

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RHODE ISLAND CHANGES--PREJUDGMENT INTEREST

This endorsement modifies insurance provided under the following:

EMPLOYEE BENEFITS LIABILITY COVERAGE PART

**PROVISIONS**

The paragraph in the SUPPLEMENTARY PAYMENTS section relating to prejudgment interest is replaced by the following:

**(1)** Prejudgment interest awarded against you on the entire judgment if we reject a written settlement offer by the plaintiff that is equal to or less than the applicable limit of insurance in this policy; or

**(2)** If paragraph (1) above does not apply, prejudgment interest awarded against you on that part of the judgment we pay.

CG T9 26 07 86

AAI - 000111

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDATORY ENDORSEMENT–FLORIDA EBL

This endorsement modifies insurance provided under the following:

> EMPLOYEE BENEFITS LIABILITY COVERAGE PART

**PROVISIONS**

1. The following additional provision applies to SECTION VI–EXTENDED REPORTING PERI-ODS:

   6. Extended Reporting Periods do not reinstate or increase the Limits of Insurance applicable to any claim to which this Coverage Part applies, except to the extent described as follows:

      If the optional Extended Reporting Period is in effect, we will provide the separate aggregate limits of insurance described below, but only for claims first received and recorded during the optional Extended Reporting Period.

   The separate aggregate limits of insurance will be equal to the dollar amount shown in the Declarations in effect at the end of the policy period.

   Paragraphs 2. and 3. of SECTION III–LIMITS OF INSURANCE will be amended accordingly.

2. Under SECTION VI–EXTENDED REPORTING PERIODS–the first sentence of item 4 is amended to read as follows:

   If you purchase the Extended Reporting Period Endorsement, the Extended Reporting period will be for three years, starting with the end of the policy period of this policy.

AAI - 000112

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFITS LIABILITY
# AMENDATORY ENDORSEMENT — MARYLAND

This endorsement modifies insurance provided under the following:

EMPLOYEE BENEFITS LIABILITY COVERAGE PART

## PROVISIONS

The following additional items apply to SECTION VI — EXTENDED REPORTING PERIODS:

**6.** The Optional Extended Reporting Period endorse- ment in items 4 and 5 above is for a term of one year. The first Named Insured may also request the Special Optional Extended Reporting Period Endorsement which is of unlimited duration. We will issue that Endorsement if the first Named Insured shown in the Declarations:

**a.** Makes a written request for it which we receive within 60 days after the end of the policy period;

**b.** Promptly pays the additional premium when due; and

**c.** The account meets our underwriting require- ments.

The Special Optional Extended Reporting Period Endorsement will not take effect unless the additional premium is paid when due. If that premium is paid when due, the endorsement may not be cancelled.

If the Special Optional Extended Reporting Per- iod Endorsement is issued paragraph 4.a. of

SECTION V — EMPLOYEE BENEFITS LIABILITY CONDITIONS (Other Insurance) is amended so that the insurance provided will be excess over any other valid and collectible insurance avail- able to the insured, whether primary, excess, contingent or on any other basis, whose policy period begins or continues after the Endorsement takes effect.

We will determine the actual premium for the Special Optional Extended Reporting Period Endorsement in accordance with our rules and rates. In doing so, we may take into account the following:

**a.** The exposures insured:

**b.** Previous types and amounts of insurance;

**c.** Limits of Insurance available under this Coverage Part for future payment of damages; and

**d.** Other related factors.

The premium for the Special Optional Extended Reporting Period Endorsement will be fully earned when the Endorsement takes effect.

CG T9 88 10 87

Page 1 of 1

AAI - 000113

# MULTIPLE SUBLINE
# ENDORSEMENTS

AAI - 000114

# MULTIPLE SUBLINE
# ENDORSEMENTS

AAI - 000115

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – PREMIUM AUDIT

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> PRODUCT WITHDRAWAL COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **b.** of the **Premium Audit** Condition **Section IV** is replaced by the following:

**PREMIUM AUDIT**

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. An audit to determine the final premium due or to be refunded will be completed within 180 days after the expiration date of the policy. But the audit may be waived if the total annual premium attributable to the auditable exposure base is not reasonably expected to exceed $1500. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

**B.** Except as provided in Paragraph **A.** above, the **Examination Of Your Books And Records** Common Policy Condition continues to apply.

© ISO Properties, Inc., 2003

AAI - 000116

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOUISIANA CHANGES – LEGAL ACTION AGAINST US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The **Legal Action Against Us** Condition (Section **IV** – Conditions) is replaced by the following:

**Legal Action Against Us**

A person or organization may bring a "suit" against us including, but not limited to, a "suit" to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

© ISO Properties, Inc., 2003

AAI - 000117

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART

**A. Cancellation** (Common Policy Conditions) is replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. We may cancel this policy by mailing to you written notice stating the reason for cancellation. If we cancel:

   **a.** For nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

   **b.** For a reason other than nonpayment of premium, we will mail the notice at least:

      **(1)** 30 days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.

      **(2)** 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

3. If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

   **a.** Nonpayment of premium;

   **b.** The policy was obtained through a material misrepresentation;

   **c.** Any insured has violated any of the terms and conditions of the policy;

   **d.** The risk originally accepted has measurably increased;

   **e.** Certification of the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

   **f.** A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

**B.** The following is added and supersedes any provision to the contrary:

**NONRENEWAL**

If we decide not to renew or continue this policy, we will mail you and your agent or broker written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

**C. Mailing Of Notices**

We will mail cancellation and nonrenewal notices to you, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

AAI - 000118

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MARYLAND CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **2.** and **3.** of the **Cancellation** Common Policy Condition are replaced by the following:

**2.** We may cancel this Coverage Part by mailing to the first Named Insured written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium;

**b.** 45 days before the effective date of cancellation if we cancel for any other reason.

**B.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be calculated as follows:

**a. Policies Written For One Year Or Less**

We will refund 90% of the pro rata unearned premium.

**b. Policies Written For More Than One Year**

**(1)** If the policy is cancelled in the first year, we will refund 90% of the pro rata unearned premium for the first year, plus the full annual premium for subsequent years.

**(2)** If the policy is cancelled after the first year, we will refund the pro rata unearned premium.

**c. Continuous And Annual Premium Payment Policies**

We will refund 90% of the pro rata unearned premium for the year in which the policy is cancelled.

We will retain the minimum premium, except if the policy is cancelled as of the inception date.

However, if this policy is financed by a premium finance company and we or the premium finance company or the first Named Insured cancels the policy, the refund will be pro rata excluding any expense constant, administrative fee or nonrefundable charge filed with and approved by the insurance commissioner.

The cancellation will be effective even if we have not made or offered a refund.

**C.** Paragraph **6.** of the **Cancellation** Common Policy Condition is replaced by the following:

A certificate of mailing will be proof of mailing and sufficient proof of notice.

**D.** The following condition is added and supersedes any provisions to the contrary:

**WHEN WE DO NOT RENEW**

If we decide not to renew this Coverage Part, we will mail to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 45 days before the expiration date. Even if we do not comply with these terms, this Coverage Part will terminate:

**1.** On the expiration date, if:

**a.** You fail to perform any of your obligations in connection with the payment of premium for the Coverage Part or the renewal of the Coverage Part, or any installment payment, whether payable directly to us or our agents or indirectly under any premium finance plan or extension of credit;

© ISO Properties, Inc., 2003

AAI - 000119

COMMERCIAL GENERAL LIABILITY

**b.** We have indicated our willingness to renew this Coverage Part to you or your representative;

**c.** You have notified us or our agent that you do not want to renew this Coverage Part; or

**2.** On the effective date of any other insurance policy issued as a replacement for any insurance afforded by this Coverage Part, with respect to insurance to which both policies apply.

A certificate of mailing will be proof of mailing and sufficient proof of notice.

© ISO Properties, Inc., 2003

CG 02 01 12 04

AAI - 000120

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES

This endorsement modifies insurance provided under the following:

      COMMERCIAL GENERAL LIABILITY COVERAGE PART
      ELECTRONIC DATA LIABILITY COVERAGE PART
      LIQUOR LIABILITY COVERAGE PART
      OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
      POLLUTION LIABILITY COVERAGE PART
      PRODUCT WITHDRAWAL COVERAGE PART
      PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
      UNDERGROUND STORAGE TANK POLICY

The term "spouse" is replaced by the following:

Spouse or registered domestic partner under California law.

 © ISO Properties, Inc., 2004

AAI - 000121

# INTERLINE ENDORSEMENTS

AAI - 000122

# INTERLINE
# ENDORSEMENTS

AAI - 000123

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FEDERAL TERRORISM RISK INSURANCE ACT DISCLOSURE

This endorsement applies to the insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY - NEW YORK DEPARTMENT OF
       TRANSPORTATION
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    LIMITED ABOVE GROUND POLLUTION LIABILITY COVERAGE PART
    ENVIRONMENTAL HAZARD POLICY
    EMPLOYEE BENEFITS LIABILITY COVERAGE PART
    ELECTRONIC MANUFACTURERS AND COMPUTER SERVICES ERRORS AND OMISSIONS
       LIABILITY COVERAGE FORM
    SELF-INSURED EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE FORM
    SELF-INSURED EXCESS LIQUOR LIABILITY COVERAGE FORM
    SELF-INSURED EXCESS EMPLOYEE BENEFITS LIABILITY COVERAGE FORM
    SELF-INSURED EXCESS PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
    COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE
    EXCESS (FOLLOWING FORM) LIABILITY INSURANCE

**PROVISIONS**

On November 26, 2002, the President of the United States signed into law the Terrorism Risk Insurance Act of 2002 (the "Act"). The Act establishes a program under which the Federal Government will partially reimburse *"Insured Losses"* caused by certain *"Acts of Terrorism"* (each as defined in the Act).

The Federal Government's share of compensation for *Insured Losses* in each year up to and including calendar year 2006 is 90% of the amount of *Insured Losses* in excess of each *Insurer's* statutorily established deductible for that year, subject to the *"Program Trigger"* (as defined in the Act). For calendar year 2007 the Federal Government's share is 85% of the amount of Insured Losses in excess of each

*Insurer's* deductible, subject to the *Program Trigger*. In no event, however, will the Federal Government or any *Insurer* be required to pay any portion of the amount of aggregate *Insured Losses* occurring in any one year that exceeds $100,000,000,000, provided that such *Insurer* has met its deductible.

The charge for *Insured Losses* for each Coverage Part to which this endorsement applies is included in the total premium for each Coverage Part indicated in the premium schedule. The charge for each coverage is indicated below and/or on the premium schedule, and does not include any charges for the portion of losses covered by the federal government under the Act.

    •   <u>1%</u> **of each applicable Commercial Liability Coverage premium.**

IL T3 68 01 06          © 2006 The St. Paul Travelers Companies, Inc.          Page 1 of 1

AAI - 000124

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK DEPARTMENT OF TRANSPORTATION
ENVIRONMENTAL HAZARD POLICY
EMPLOYEE BENEFITS LIABILITY COVERAGE PART
ELECTRONIC MANUFACTURERS AND COMPUTER SERVICES ERRORS AND OMISSIONS LIABILITY COVERAGE FORM
SELF-INSURED EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE FORM
SELF-INSURED EXCESS LIQUOR LIABILITY COVERAGE FORM
SELF-INSURED EXCESS EMPLOYEE BENEFITS LIABILITY COVERAGE FORM
SELF-INSURED EXCESS PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
EXCESS (FOLLOWING FORM) LIABILITY INSURANCE

With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

AAI - 000125

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

  COMMERCIAL AUTOMOBILE COVERAGE PART
  COMMERCIAL GENERAL LIABILITY COVERAGE PART
  FARM COVERAGE PART
  LIQUOR LIABILITY COVERAGE PART
  OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
  POLLUTION LIABILITY COVERAGE PART
  PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
  PROFESSIONAL LIABILITY COVERAGE PART
  RAILROAD PROTECTIVE LIABILITY COVERAGE PART
  UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

   **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

   **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

   **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

© ISO Properties, Inc., 2001

AAI - 000126

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2001
**IL 00 21 07 02**

AAI - 000127

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

   "Source material", "special nuclear material", and "by-product material" have the meanings given

AAI - 000128

them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2001

AAI - 000129

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VERMONT CHANGES – STATUTORY LIABILITY

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY – MORTGAGE HOLDER'S ERRORS AND OMISSIONS COVERAGE FORM
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

A. In addition to paying and satisfying judicial judgments rendered against you* in consequence of claims to which this Coverage Part applies, we will protect you* against the levy of executions issued on such judgments or claims against you*.

B. We may, without your* consent, continue litigation after a judgment has been rendered with respect to your* legal liability under this Coverage Part for damages in particular instance. In that event, no limitation of our liability will be valid where the matter of that litigation is concerned.

C. Under Coverage Forms to which this endorsement applies any legal action against us to recover for loss under this Coverage Part must be brought within one year after amount of loss is finally established. The amount of loss can be established only by:

1. Judicial judgment; or

2. An agreement between the parties involved with our written consent.

D. In the event of your* bankruptcy or insolvency, an injured person or claimant who has obtained a judgment against you* may bring suit against us, provided:

1. The judgment was for damages covered by this policy; and

2. The suit is for damages in amounts no greater than the applicable Limits of Insurance of this policy.

E. Payment by you* of any judicial judgment or claim for any of our liability under this Coverage Part will not deprive you* of the right to bring action against us.

* For the Commercial General Liability Coverage Part, Commercial Liability Umbrella Coverage Part, Employment-Related Practices Liability Coverage Part, Farm Coverage Part, Farm Umbrella Liability Policy, Liquor Liability Coverage Part, Owners and Contractors Protective Liability Coverage Part, Pollution Liability Coverage Part, Products/Completed Operations Liability Coverage Part, Professional Liability Coverage Part and Railroad Protective Liability Coverage Part, the word "you" is replaced by the term "the insured" and the word "your" is replaced by the term "the insured's".

© ISO Properties, 2000

AAI - 000130

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RHODE ISLAND CHANGES – PREJUDGMENT INTEREST

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
> COMMERCIAL PROPERTY - LEGAL LIABILITY COVERAGE FORM
> COMMERCIAL PROPERTY - MORTGAGE HOLDER'S ERRORS AND OMISSIONS COVERAGE
> FORM
> EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
> FARM COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> PROFESSIONAL LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> UNDERGROUND STORAGE TANK POLICY

The paragraph in the Supplementary Payments Section relating to prejudgment interest is replaced by the following:

1. Prejudgment interest awarded against you* on the entire judgment if we reject a written settlement offer by the plaintiff that is equal to or less than the applicable limit of insurance in this policy; or

2. If Paragraph 1. above does not apply, prejudgment interest awarded against you* on that part of the judgment we pay.

*   For the Commercial General Liability Coverage Part, Commercial Liability Umbrella Coverage Part, Employment-Related Practices Liability Coverage Part, Farm Coverage Part, Liquor Liability Coverage Part, Owners And Contractors Protective Liability Coverage Part, Pollution Liability Coverage Part, Products/Completed Operations Liability Coverage Part, Professional Liability Coverage Part, Railroad Protective Liability Coverage Part and the Underground Storage Tank Policy the word you is replaced by the term "the insured".

AAI - 000131

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VIRGINIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **2.**, **3.** and **5.** of the **Cancellation** Common Policy Condition are replaced by the following:

**2.** We may cancel this policy by mailing or delivering to you written notice of cancellation, stating the reason for cancellation, at least:

**a.** 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 45 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will send written notice by registered or certified mail or deliver written notice to your last mailing address known to us.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. The cancellation will be effective even if we have not made or offered a refund. The following provisions govern calculation of return premium.

**a.** We will compute return premium pro rata and round to the next higher whole dollar when this policy is cancelled:

**(1)** At our request;

**(2)** Because you no longer have a financial or insurable interest in the property or business operation that is the subject of insurance;

**(3)** And rewritten by us or a member of our company group; or

**(4)** After the first year, if it is a prepaid policy written for a term of more than one year.

**b.** When this policy is cancelled at your request (except when Paragraph **a.(2)**, **a.(3)** or **a.(4)** applies), we will return 90% of the pro rata unearned premium, rounded to the next higher whole dollar. However, when such cancellation takes place during the first year of a multi-year prepaid policy, we will return the full annual premium for the subsequent years. In addition, earned premium will not be less than our policywriting minimum premium.

**B.** The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

**1.** If we elect not to renew this policy, we will mail or deliver a notice of nonrenewal to you, stating the reason for nonrenewal, at least:

**a.** 15 days before the expiration date if the nonrenewal is due to nonpayment of premium; or

**b.** 45 days before the expiration date if the nonrenewal is for any other reason.

**2.** We will send written notice by registered or certified mail or deliver written notice of nonrenewal to your last mailing address known to us.

© ISO Properties, Inc., 2003

AAI - 000132

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONNECTICUT CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

> COMMERCIAL AUTOMOBILE COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
> ELECTRONIC DATA LIABILITY COVERAGE PART
> EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
> FARM COVERAGE PART
> FARM UMBRELLA LIABILITY POLICY
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> PRODUCT WITHDRAWAL COVERAGE PART
> PROFESSIONAL LIABILITY COVERAGE PART

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under Connecticut law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to the:

1. Individual Named Insured by blood, adoption, marriage or civil union recognized under Connecticut law, who is a resident of such Named Insured's household, including a ward or foster child; or

2. Individual named in the Schedule by blood, adoption, marriage or civil union recognized under Connecticut law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individual Endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, or Farm Umbrella Liability Policy, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under Connecticut law, who is a resident of your household, including a ward or foster child.

 © ISO Properties, Inc., 2005

AAI - 000133

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – DEFENSE COSTS

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART – MORTGAGEHOLDERS ERRORS AND OMISSIONS
COVERAGE FORM
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

**A.** The provisions of Paragraph **B.** are added to all Insuring Agreements that set forth a duty to defend under:

  **1.** Section **I** of the Commercial General Liability; Commercial Liability Umbrella, Employment-Related Practices Liability, Farm, Liquor Liability, Owners And Contractors Protective Liability, Pollution Liability, Products/Completed Operations Liability, Product Withdrawal, Professional Liability, Railroad Protective Liability, Underground Storage Tank Coverage Parts and the Farm Umbrella Liability Policy;

  **2.** Section **II** – Liability Coverage in Paragraph **A.** Coverage under the Business Auto, Garage, Motor Carrier and Truckers Coverage Forms;

  **3.** Section **A.** Coverage under the Legal Liability Coverage Form; and

  **4.** Coverage **C** – Mortgageholder's Liability under the Mortgageholders Errors And Omissions Coverage Form.

**B.** If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for defense costs.

© ISO Properties, Inc., 2005

AAI - 000134

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES – DUTIES

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
> FARM COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> PROFESSIONAL LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added to the **Duties** Condition.

We will notify the first Named Insured in writing of:

1. An initial offer to compromise or settle a claim made or "suit" brought against any insured under this coverage. The notice will be given not later than the 10th day after the date on which the offer is made.

2. Any settlement of a claim made or "suit" brought against the insured under this coverage. The notice will be given not later than the 30th day after the date of the settlement.

   © ISO Properties, Inc., 2001

AAI - 000135

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RHODE ISLAND CHANGES

This endorsement modifies insurance provided under the following:

> BOILER AND MACHINERY COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
> COMMERCIAL PROPERTY – LEGAL LIABILITY COVERAGE FORM
> COMMERCIAL PROPERTY – MORTGAGEHOLDERS ERRORS AND OMISSIONS COVERAGE FORM
> EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
> FARM LIABILITY COVERAGE FORM
> FARM UMBRELLA LIABILITY POLICY
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> PROFESSIONAL LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> UNDERGROUND STORAGE TANK POLICY

**A.** The following is added to the **Transfer Of Rights Of Recovery Against Others To Us** Condition:

When an insurer or its agents recover payment on a casualty loss from a third party through subrogation, the insurer must first pay the insured the deductible portion of the casualty loss, less the prorated share of subrogation expenses and thereafter retain any funds in excess of the deductible portion of the recovery.

**B.** The following provision is added:

**DIRECT LIABILITY OF INSURERS**

We will be directly liable for those sums the insured becomes legally obligated to pay as damages to the injured party to which this insurance applies. In the event of that injured party's death, we will be directly liable for those sums the insured becomes legally obligated to pay as damages to the party entitled to sue as a result of the injured party's death, and to which this insurance applies.

     © ISO Properties, Inc., 2001

AAI - 000136

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

> COMMERCIAL AUTOMOBILE COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
> FARM COVERAGE PART
> FARM UMBRELLA LIABILITY POLICY
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> PROFESSIONAL LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property threat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties;

© ISO Properties, Inc., 2001

AAI - 000137

"Nuclear material" means "source material", "Special nuclear material" or "by-product material";

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2001

IL 01 98 07 02

AAI - 000138

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW JERSEY CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

> BOILER AND MACHINERY COVERAGE PART
> CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
> COMMERCIAL AUTOMOBILE COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> CRIME AND FIDELITY COVERAGE PART
> EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
> FARM COVERAGE PART
> FARM UMBRELLA LIABILITY POLICY
> LIQUOR LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Pursuant to New Jersey law, this policy cannot be cancelled or nonrenewed for any underwriting reason or guideline which is arbitrary, capricious or unfairly discriminatory or without adequate prior notice to the insured. The underwriting reasons or guidelines that an insurer can use to cancel or nonrenew this policy are maintained by the insurer in writing and will be furnished to the insured and/or the insured's lawful representative upon written request.

This provision shall not apply to any policy which has been in effect for less than 60 days at the time notice of cancellation is mailed or delivered, unless the policy is a renewal policy.

**B.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

   **2.** If this policy has been in effect for less than 60 days, we may cancel this policy for any reason subject to the following:

   **a.** We may cancel this policy by mailing or delivering to the first Named Insured and any person entitled to notice under this policy written notice, of cancellation, at least:

   **(1)** 10 days before the effective date of cancellation if we cancel for:

   **(a)** Nonpayment of premium; or

**(b)** Existence of a moral hazard, as defined in N.J.A.C. 11:1-20.2(f) as follows:

   **(i)** "The risk, danger or probability that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. Any change in the circumstances of an insured that will increase the probability of such a destruction may be considered a 'moral hazard'"; and

   **(ii)** "The substantial risk, danger or probability that the character, circumstances or personal habits of the insured may increase the possibility of loss or liability for which an insurer will be held responsible. Any change in the character or circumstances of an individual, corporate, partnership or other insured that will increase the probability of such a loss or liability may be considered a 'moral hazard'".

   © ISO Properties, Inc., 2005

AAI - 000139

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**b.** In the notice of cancellation which is sent to the first Named Insured, we will state the reason for cancellation.

**C.** The following is added to the **Cancellation** Common Policy Condition:

**7. Cancellation Of Policies In Effect For 60 Days Or More**

**a.** If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Existence of a moral hazard, as defined in N.J.A.C. 11:1-20.2(f);

**(3)** Material misrepresentation or nondisclosure to us of a material fact at the time of acceptance of the risk;

**(4)** Increased hazard or material change in the risk assumed which we could not have reasonably contemplated at the time of assumption of the risk;

**(5)** Substantial breaches of contractual duties, conditions or warranties that materially affect the nature and/or insurability of the risk;

**(6)** Lack of cooperation from the insured on loss control matters materially affecting insurability of the risk;

**(7)** Fraudulent acts against us by the insured or its representative that materially affect the nature of the risk insured;

**(8)** Loss of or reduction in available insurance capacity;

**(9)** Material increase in exposure arising out of changes in statutory or case law subsequent to the issuance of the insurance contract or any subsequent renewal;

**(10)** Loss of or substantial changes in applicable reinsurance;

**(11)** Failure by the insured to comply with any Federal, State or local fire, health, safety or building or construction regulation, law or ordinance with respect to an insured risk which substantially increases any hazard insured against within 60 days of written notification of a violation of any such law, regulation or ordinance;

**(12)** Failure by the insured to provide reasonable and necessary underwriting information to us upon written request therefor and a reasonable opportunity to respond;

**(13)** Agency termination, provided:

**(a)** We document that replacement coverage at comparable rates and terms has been provided to the first Named Insured, and we have informed the first Named Insured, in writing, of the right to continue coverage with us; or

**(b)** We have informed the first Named Insured, in writing, of the right to continue coverage with us and the first Named Insured has agreed, in writing, to the cancellation or nonrenewal based on the termination of the first Named Insured's appointed agent.

**(14)** Any other reasons in accordance with our underwriting guidelines for cancellation of commercial lines coverage.

**b.** If we cancel this policy based on Paragraphs **7.a.(1)** or **(2)** above, we will mail or deliver a written notice, to the first Named Insured and any person entitled to notice under this policy, at least 10 days before the effective date of cancellation. If we cancel this policy for any other reason listed above, we will mail or deliver a written notice to the first Named Insured and any person entitled to notice under this policy, not more than 120 days nor less than 30 days before the effective date of such cancellation.

**c.** In the notice of cancellation which is sent to the first Named Insured, we will state the reason for cancellation. For cancellation due to the nonpayment of premium, the notice will state the effect of nonpayment by the due date. Cancellation for nonpayment of premium will not be effective if payment of the amount due is made before the effective date set forth in the notice.

**d.** Notice will be sent to the last mailing addresses known to us, by:

AAI - 000140

**(1)** Certified mail; or

**(2)** First class mail, if we have obtained from the post office a date stamped proof of mailing showing names and addresses.

**e.** We need not send notice of cancellation if you have:

**(1)** Replaced coverage elsewhere; or

**(2)** Specifically requested termination.

**D.** The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

**1.** We may elect not to renew this policy for any reason permitted to cancel it. If we elect not to renew this policy, we will mail a notice of nonrenewal, stating the reasons for nonrenewal, to the first Named Insured at least 30 days but not more than 120 days before the expiration date of this policy. If this policy does not have a fixed expiration date, it shall be deemed to expire annually on the anniversary of its inception.

**2.** This notice will be sent to the first Named Insured at the last mailing address known to us by:

**a.** Certified mail; or

**b.** First class mail, if we have obtained from the post office a date stamped proof of mailing showing the first Named Insured's name and address.

**3.** We need not mail or deliver this notice if you have:

**a.** Replaced coverage elsewhere; or

**b.** Specifically requested termination.

© ISO Properties, Inc., 2005

AAI - 000141

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VERMONT CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT RELATED PRACTICES LIABILITY COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** The CANCELLATION Common Policy Condition is replaced by the following:

CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. Cancellation of Policies in Effect for Less than 60 Days.

   If this policy has been in effect for less than 60 days and this policy is not a renewal of a policy we issued, we may cancel this policy by:

   **a.** Giving the first Named Insured at least 15 days' notice prior to the cancellation date for nonpayment of premium or substantial increase in hazard; or

   **b.** Mailing or delivering the first Named Insured at least 45 days' notice prior to the cancellation date for any other reason.

   If cancellation is for nonpayment of premium, written notice may be sent by certificate of mailing or certified mail. If cancellation is for any reason other than nonpayment of premium, written notice must be sent by certified mail.

3. Cancellation of Policies in Effect For 60 Days or More

If this policy has been in effect for 60 days or more, or if this is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**a.** Nonpayment of premium;

**b.** Fraud or material misrepresentation affecting this policy or in the presentation of claims under this policy;

**c.** Violation of any provisions of this policy; or

**d.** Substantial increase in hazard, provided we have secured approval for the cancellation from the commissioner of insurance.

If we cancel this policy for one of the reasons specified in Paragraph **3.**, we will cancel only in the following manner:

**a.** By giving at least 15 days' notice before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** By mailing or delivering at least 45 days' notice before the effective date of cancellation if we cancel for any other reason.

Written notice of cancellation, including the reason for cancellation, will be mailed or delivered to the first Named Insured at the first Named Insured's last mailing address known to us.

© ISO Properties, Inc., 2001

AAI - 000142

If cancellation is for nonpayment of premium, written notice may be sent by certificate of mailing or certified mail. If cancellation is for any reason other than nonpayment of premium, written notice must be sent by certified mail.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.** Any WHEN WE DO NOT RENEW Condition is deleted.

The following Conditions are added:

**1. WHEN WE DO NOT RENEW**

**a.** We may elect not to renew this policy by mailing, by certified mail, or delivering written notice of nonrenewal to the first Named Insured's last mailing address known to us. We will mail or deliver this notice at least 45 days before the:

(1) Expiration of the policy; or

(2) Anniversary date of this policy if this policy has been written for a term of more than one year.

**b.** This provision does not apply:

(1) If we have indicated a willingness to renew;

(2) In case of nonpayment of premium;

(3) If you do not pay any advance premium required by us for renewal; or

(4) If any property covered in this policy is insured under any other insurance policy.

**2. RENEWAL**

**a.** If we:

(1) Elect to renew this policy; and

(2) Have the necessary information to issue a renewal policy,

we will confirm in writing at least 45 days before it expires our intention to renew this policy; and the premium at which this policy will be renewed.

**b.** If we do not comply with the provisions of Paragraph **a.**, you will have renewal coverage. The renewal coverage will be at the rates:

(1) In effect under the expiring or expired policy; or

(2) In effect on the expiration date, that have been approved by the Commissioner,

whichever are lower.

This renewal coverage will be on a pro rata basis and will continue for 45 days after we confirm renewal coverage and premium. If you accept this renewal policy, this Paragraph **b.** does not apply.

© ISO Properties, Inc., 2001

**IL 02 19 07 02**

AAI - 000143

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COLORADO CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2.** If this policy has been in effect for less than 60 days, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**B.** The following is added to the **Cancellation** Common Policy Condition:

**7. Cancellation Of Policies In Effect For 60 Days Or More**

**a.** If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy by mailing through first-class mail to the first Named Insured written notice of cancellation:

**(1)** Including the actual reason, at least 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

**(2)** At least 45 days before the effective date of cancellation if we cancel for any other reason.

We may only cancel this policy based on one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** A false statement knowingly made by the insured on the application for insurance; or

**(3)** A substantial change in the exposure or risk other than that indicated in the application and underwritten as of the effective date of the policy unless the first Named Insured has notified us of the change and we accept such change.

**C.** The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

If we decide not to renew this policy, we will mail through first-class mail to the first Named Insured shown in the Declarations written notice of the nonrenewal at least 45 days before the expiration date, or its anniversary date if it is a policy written for a term of more than one year or with no fixed expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**D.** The following condition is added:

**INCREASE IN PREMIUM OR DECREASE IN COVERAGE**

 © ISO Properties, Inc., 2005

AAI - 000144

We will not increase the premium unilaterally or decrease the coverage benefits on renewal of this policy unless we mail through first-class mail written notice of our intention, including the actual reason, to the first Named Insured's last mailing address known to us, at least 45 days before the effective date.

Any decrease in coverage during the policy term must be based on one or more of the following reasons:

1. Nonpayment of premium;

2. A false statement knowingly made by the insured on the application for insurance; or

3. A substantial change in the exposure or risk other than that indicated in the application and underwritten as of the effective date of the policy unless the first Named Insured has notified us of the change and we accept such change.

If notice is mailed, proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2005
IL 02 28 04 06

AAI - 000145

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OHIO CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** With respect to a policy which has been in effect for more than 90 days, or is a renewal of a policy we issued, the **Cancellation** Common Policy Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** We may cancel this policy only for one or more of the following reasons, except as provided in Paragraph **6.** below:

**a.** Nonpayment of premium;

**b.** Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted thereunder;

**c.** Discovery of a moral hazard or willful or reckless acts or omissions on your part which increases any hazard insured against;

**d.** The occurrence of a change in the individual risk which substantially increases any hazard insured against after the insurance coverage has been issued or renewed except to the extent the insurer could reasonably have foreseen the change or contemplated the risk in writing the contract;

**e.** Loss of applicable reinsurance or a substantial decrease in applicable reinsurance, if the Superintendent has deter-

mined that reasonable efforts have been made to prevent the loss of, or substantial decrease in, the applicable reinsurance, or to obtain replacement coverage;

**f.** Failure of an insured to correct material violations of safety codes or to comply with reasonable written loss control recommendations; or

**g.** A determination by the Superintendent of Insurance that the continuation of the policy would create a condition that would be hazardous to the policyholders or the public.

**3.** We will mail written notice of cancellation to the first Named Insured, and agent if any, at the last mailing addresses known to us. Proof of mailing will be sufficient proof of notice.

**4.** We will mail the notice of cancellation at least:

**a.** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation, if we cancel for a reason stated in **2.b.** through **2.g.** above.

**5.** The notice of cancellation will:

**a.** State the effective date of cancellation. The policy period will end on that date.

IL 02 44 11 05     © ISO Properties, Inc., 2005     Page 1 of 2

AAI - 000146

**b.** Contain the date of the notice and the policy number, and will state the reason for cancellation.

**6.** Policies written for a term of more than one year or on a continuous basis may be cancelled by us for any reason at an anniversary date, upon 30 days' written notice of cancellation.

**7.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**B.** The following is added to the Common Policy Conditions and supersedes any provisions to the contrary:

**NONRENEWAL**

**1.** If we elect not to renew this policy, we will mail written notice of nonrenewal to the first Named Insured, and agent if any, at the last mailing addresses known to us. The notice will contain the date of the notice and the pol-

icy number, and will state the expiration date of the policy.

**2.** We will mail the notice of nonrenewal at least 30 days before the expiration date of the policy.

**3.** Proof of mailing will be sufficient proof of notice.

**C. Common Policy Conditions**

**1.** Paragraph **A.2.a.** of the **Businessowners** Common Policy Conditions is deleted.

**2.** Paragraph **E.2.** of the **Cancellation** Common Policy Condition in the Standard Property Policy is deleted. Paragraph **E.2.** is replaced by the following (unless Item **A.** of this endorsement applies):

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date, if we cancel for any other reason.

© ISO Properties, Inc., 2005

**IL 02 44 11 05**

AAI - 000147

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

> BOILER AND MACHINERY COVERAGE PART
> CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
> COMMERCIAL AUTOMOBILE COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> CRIME AND FIDELITY COVERAGE PART
> EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
> FARM COVERAGE PART
> FARM UMBRELLA LIABILITY POLICY
> LIQUOR LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

**1.** The first Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

**2.** **Cancellation Of Policies In Effect For Less Than 60 Days**

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

**3.** **Cancellation Of Policies In Effect For 60 Days Or More**

If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**a.** You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

**b.** You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

**c.** A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

**d.** Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

**e.** Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

**f.** Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

IL 02 46 07 02                              © ISO Properties, Inc., 2001                              Page 1 of 2

AAI - 000148

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

4. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

7. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

B. The following are added and supersede any provisions to the contrary:

1. **Nonrenewal**

   If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the policy.

2. **Increase Of Premium**

   If we increase your renewal premium, we will mail or deliver to the first Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2001

IL 02 46 07 02

AAI - 000149

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SOUTH CAROLINA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

> BOILER AND MACHINERY COVERAGE PART
> CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> CRIME AND FIDELITY COVERAGE PART
> EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
> FARM COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> PROFESSIONAL LIABILITY COVERAGE PART

**A.** Paragraphs **2.** and **3.** of **Cancellation** Common Policy Condition are replaced by the following:

**2.** We may cancel this policy by mailing or delivering to the first Named Insured and the agent, if any, written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's and agent's last known addresses.

**B.** The following is added to the **Cancellation** Common Policy Condition:

**7. Cancellation Of Policies In Effect For 90 Days Or More**

If this policy has been in effect for 90 days or more, or is a renewal or continuation of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**a.** Nonpayment of premium;

**b.** Material misrepresentation of fact which, if known to us, would have caused us not to issue the policy;

**c.** Substantial change in the risk assumed, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the policy;

**d.** Substantial breaches of contractual duties, conditions or warranties; or

**e.** Loss of our reinsurance covering all or a significant portion of the particular policy insured, or where continuation of the policy would imperil our solvency or place us in violation of the insurance laws of South Carolina.

Prior to cancellation for reasons permitted in this Item **e.**, we will notify the Commissioner, in writing, at least sixty days prior to such cancellation and the Commissioner will, within thirty days of such notification, approve or disapprove such action.

Any notice of cancellation will state the precise reason for cancellation.

**C.** The following is added and supersedes any provisions to the contrary:

**Nonrenewal**

**1.** If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured and agent, if any, at least 30 days before:

**a.** The expiration date of this policy, if the policy is written for a term of one year or less; or

AAI - 000150

**b.** An anniversary date of this policy, if the policy is written for a term of more than one year or for an indefinite term.

However, we will not refuse to renew a policy issued for a term of more than one year, until expiration of its full term, if anniversary renewal has been guaranteed by additional premium consideration.

**2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured's and agent's last known addresses. If notice is mailed, proof of mailing will be sufficient proof of notice.

**3.** Any notice of nonrenewal will state the precise reason for nonrenewal.

© ISO Properties Inc., 2001
IL 02 49 07 02

AAI - 000151

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TENNESSEE CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

The refund will be pro rata if:

**a.** We cancel; or

**b.** The policy is cancelled at the request of a premium finance company that has financed this policy under a premium finance agreement.

The refund may be less than pro rata if the first Named Insured cancels the policy.

The cancellation will be effective even if we have not made or offered a refund.

**B.** The following is added to the **Cancellation** Common Policy Condition:

**CANCELLATION OF POLICIES IN EFFECT FOR 60 DAYS OR MORE**

If this policy has been in effect for 60 days or more, or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**1.** Nonpayment of premium, including any additional premium, calculated in accordance with our current rating manual, justified by a physical change in the insured property or a change in its occupancy or use;

**2.** Your conviction of a crime increasing any hazard insured against;

**3.** Discovery of fraud or material misrepresentation on the part of either of the following:

**a.** You or your representative in obtaining this insurance; or

**b.** You in pursuing a claim under this policy;

**4.** Failure to comply with written loss control recommendations;

**5.** Material change in the risk which increases the risk of loss after we issued or renewed insurance coverage;

**6.** Determination by the insurance commissioner that the continuation of the policy would jeopardize our solvency or would place us in violation of the insurance laws of Tennessee or any other state;

**7.** Your violation or breach of any policy terms or conditions; or

**8.** Other reasons that are approved by the insurance commissioner.

Notice of cancellation will state the reason for cancellation.

**C.** The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

**1.** If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to

© ISO Properties, Inc., 2001

AAI - 000152

the first Named Insured and agent, at least 60 days before the expiration date unless:

a. We have offered to issue a renewal policy; or

b. You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's and agent's addresses shown in the policy. If no-

tice is mailed, proof of mailing will be sufficient proof of notice.

D. The following is added to the Premiums Common Policy Condition:

Whenever an insurance policy which is financed with a premium finance company is cancelled, the insurer shall return, within 30 days after the effective date of the cancellation, whatever gross unearned premiums are due under the insurance policy directly to the premium finance company for the account of the first Named Insured.

© ISO Properties, Inc., 2001

IL 02 50 07 02

AAI - 000153

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEVADA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The following are added to the **Cancellation** Common Policy Condition:

**7. a. Midterm Cancellation**

If this policy has been in effect for 70 days or more, or if this policy is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

(1) Nonpayment of premium;

(2) Conviction of the insured of a crime arising out of acts increasing the hazard insured against;

(3) Discovery of fraud or material misrepresentation in obtaining the policy or in presenting a claim thereunder;

(4) Discovery of an act or omission or a violation of any condition of the policy which occurred after the first effective date of the current policy, and substantially and materially increases the hazard insured against;

(5) A material change in the nature or extent of the risk, occurring after the first effective date of the current policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

(6) A determination by the commissioner that continuation of our present volume of premiums would jeopardize our solvency or be hazardous to the interests of our policyholders, creditors or the public;

(7) A determination by the commissioner that the continuation of the policy would violate, or place us in violation of, any provision of the code.

**b. Anniversary Cancellation**

If this policy is written for a term longer than one year, we may cancel for any reason at an anniversary, by mailing or delivering written notice of cancellation to the first Named Insured at the last mailing address known to us at least 60 days before the anniversary date.

**B.** The following is added as an additional Condition and supersedes any other provision to the contrary:

**NONRENEWAL**

**1.** If we elect not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations a notice of intention not to renew at least 60 days before the agreed expiration date.

     © ISO Properties, Inc., 2003

AAI - 000154

If notice is mailed, proof of mailing will be sufficient proof of notice.

2. We need not provide this notice if:

   a. You have accepted replacement coverage;

   b. You have requested or agreed to nonrenewal; or

   c. This policy is expressly designated as nonrenewable.

**C. Notices**

1. Notice of cancellation or nonrenewal in accordance with **A.** and **B.** above, will be mailed, first class or certified, or delivered to the first Named Insured at the last mailing address known to us and will state the reason for cancellation or nonrenewal.

2. We will also provide a copy of the notice of cancellation, for both policies in effect less than 70 days and policies in effect 70 days or more, to the agent who wrote the policy.

© ISO Properties, Inc., 2003

**IL 02 51 02 04**

AAI - 000155

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ARIZONA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

> BOILER AND MACHINERY COVERAGE PART
> CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> CRIME AND FIDELITY COVERAGE PART
> EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
> FARM COVERAGE PART
> FARM UMBRELLA LIABILITY POLICY
> LIQUOR LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> PROFESSIONAL LIABILITY COVERAGE PART

**A.** The following is added to the **Cancellation** Common Policy Condition (and applies except in situations where **B.**, below, applies):

**7. Cancellation Of Policies In Effect For 60 Days Or More**

If this policy has been in effect for 60 days or more, or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**a.** Nonpayment of premium;

**b.** Your conviction of a crime arising out of acts increasing the hazard insured against;

**c.** Acts or omissions by you or your representative constituting fraud or material misrepresentation in the procurement of this policy, in continuing this policy or in presenting a claim under this policy;

**d.** Substantial change in the risk assumed, except to the extent that we should have reasonably foreseen the change or contemplated the risk in writing the contract;

**e.** Substantial breach of contractual duties or conditions;

**f.** Loss of reinsurance applicable to the risk insured against resulting from termination of treaty or facultative reinsurance initiated by our reinsurer or reinsurers;

**g.** Determination by the Director of Insurance that the continuation of the policy would place us in violation of the insurance laws of this state or would jeopardize our solvency; or

**h.** Acts or omissions by you or your representative which materially increase the hazard insured against.

If we cancel this policy based on one or more of the above reasons, we will mail by certified mail to the first Named Insured, and mail to the agent, if any, written notice of cancellation stating the reasons for cancellation. We will mail this notice to the last mailing addresses known to us, at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

**b.** 60 days before the effective date of cancellation if we cancel for any of the other reasons.

**B.** If the Commercial Property Coverage Part, Capital Assets Program (Output Policy) Coverage Part or the Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form provides coverage for:

1. Real property which is used predominantly for residential purposes and consists of one through four dwelling units; and/or

2. Personal property (except business or farm personal property) of a person residing in such real property;

the following provisions apply (instead of those provided in Item **A.** above) with respect to cancellation of such coverage:

If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

   a. Nonpayment of premium;

   b. Your conviction of a crime arising out of acts increasing the hazard insured against;

   c. Acts or omissions by you or your representative constituting fraud or material misrepresentation in obtaining the policy, continuing the policy, or presenting a claim under the policy;

   d. Discovery of grossly negligent acts or omissions by you substantially increasing any of the hazards insured against;

   e. Substantial change in the risk assumed by us, since the policy was issued, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the contract;

   f. A determination by the Director of Insurance that the continuation of the policy would place us in violation of the insurance laws of this state; or

   g. Your failure to take reasonable steps to eliminate or reduce any conditions in or on the insured premises which contributed to a loss in the past or will increase the probability of future losses.

If we cancel this policy based on one or more of these reasons, we will mail written notice of cancellation, stating the reason(s) for cancellation, to the first Named Insured. We will mail this notice to the last mailing address known to us, at least:

   (1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

   (2) 30 days before the effective date of cancellation, if we cancel for any of the other reasons.

**C.** The following is added and supersedes any provision to the contrary (and applies except in situations where **D.**, below, applies):

**NONRENEWAL**

1. If we elect not to renew this policy, we will mail by certified mail to the first Named Insured, and mail to the agent, if any, written notice of nonrenewal. We will mail this notice to the last mailing addresses known to us at least 60 days prior to the expiration of this policy.

2. If notice is mailed, proof of mailing will be sufficient proof of notice.

3. If either one of the following occurs, we are not required to provide written notice of nonrenewal:

   a. We or a company within the same insurance group has offered to issue a renewal policy; or

   b. You have obtained replacement coverage or agreed in writing to do so.

**D.** If the Commercial Property Coverage Part, Capital Assets Program (Output Policy) Coverage Part or the Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form provides coverage for:

1. Real property which is used predominantly for residential purposes and consists of one through four dwelling units; and/or

2. Personal property (except business or farm personal property) of a person residing in such real property;

the following provisions apply (instead of those provided in Item **C.** above) with respect to nonrenewal of such coverage:

1. If we elect not to renew, we will mail written notice of nonrenewal, to the first Named Insured. We will mail this notice to the last mailing address known to us, at least 30 days before the end of the policy period. Proof of mailing will be sufficient proof of notice.

2. If either one of the following occurs, we are not required to provide notice of nonrenewal:

   a. You have agreed to nonrenewal; or

   b. You have accepted replacement coverage.

3. If our nonrenewal is based on the condition of the premises, you will be given 30 days' notice to remedy the identified conditions. If the identified conditions are remedied, coverage

© ISO Properties, Inc., 2001                    **IL 02 58 07 02**

AAI - 000157

will be renewed. If the identified conditions are not remedied to our satisfaction, you will be given an additional 30 days, upon payment of premium, to correct the defective condition.

**E.** The following Condition is added:

**RENEWAL**

1. If we elect to renew this policy and the renewal is subject to any of the following:

   **a.** Increase in premium;

   **b.** Change in deductible;

   **c.** Reduction in limits of insurance; or

   **d.** Substantial reduction in coverage;

   we will mail or deliver written notice of the change(s) to the first Named Insured, at the last mailing address known to us, at least 60 days before the anniversary or expiration date of the policy.

2. If renewal is subject to any condition described in **1.a.** through **1.d.** above, and we fail to provide notice 60 days before the anniversary or expiration date of this policy, the following procedures apply:

   **a.** The present policy will remain in effect until the earlier of the following:

      **(i)** 60 days after the date of mailing or delivery of the notice; or

      **(ii)** The effective date of replacement coverage obtained by the first Named Insured.

   **b.** If the first Named Insured elects not to renew, any earned premium for the period of extension of the terminated policy will be calculated pro rata at the lower of the following rates:

      **(i)** The rates applicable to the terminated policy; or

      **(ii)** The rates presently in effect.

   **c.** If the first Named Insured accepts the renewal, the premium increase, if any, and other changes are effective the day following this policy's anniversary or expiration date.

© ISO Properties, Inc., 2001
AAI - 000158

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONNECTICUT CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. Cancellation of policies in effect for less than 60 days.

   If this policy has been in effect for less than 60 days and is not a renewal of a policy we issued, we may cancel this policy for any reason by giving you written notice of cancellation at least:

   **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

3. Cancellation of policies in effect for 60 days or more.

   **a.** If this policy has been in effect for 60 days or more or this is a renewal of a policy we issued, we may cancel this policy by giving you written notice of cancellation at least:

   **(1)** 10 days before the effective date of cancellation if we cancel for one or more of the following reasons:

   **(a)** Nonpayment of premium;

   **(b)** Conviction of a crime arising out of acts increasing the hazard insured against;

   **(c)** Discovery of fraud or material misrepresentation by you in obtaining the policy or in perfecting any claim thereunder;

   **(d)** Discovery of any willful or reckless act or omission by you in creasing the hazard insured against; or

   **(e)** A determination by the Commissioner that continuation of the policy would violate or place us in violation of the law; or

   **(2)** 60 days before the effective date of cancellation if we cancel for one or more of the following reasons:

   **(a)** Physical changes in the property which increase the hazard insured against;

   **(b)** A material increase in the hazard insured against; or

   **(c)** A substantial loss of reinsurance by us affecting this particular line of insurance.

   **b.** We may not cancel policies in effect for 60 days or more or renewal policies for any reason other than the reasons described in Paragraph **3.a.** above.

IL 02 60 07 05                    © ISO Properties, Inc., 2004                    Page 1 of 2

AAI - 000159

c. If we cancel for nonpayment of premium, you may continue the coverage and avoid the effect of the cancellation by payment in full at any time prior to the effective date of cancellation.

d. Notice of cancellation will be delivered or sent by:

(1) Registered mail;

(2) Certified mail; or

(3) Mail evidenced by a United States Post Office certificate of mailing.

4. We will give notice to you at your last mailing address known to us.

5. Notice of cancellation will state the specific reason for the cancellation and the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

7. If notice is mailed, proof of mailing will be sufficient proof of notice.

B. The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

1. If we decide not to renew this policy, we will mail or deliver to you a written notice of nonrenewal, stating the specific reason for nonrenewal, at least 60 days before the expiration date of this policy. The notice will be sent to your address last known to us.

2. This notice will be delivered or sent by:

a. Registered mail;

b. Certified mail; or

c. Mail evidenced by a certificate of mailing.

If notice is mailed, proof of mailing is sufficient proof of notice.

3. However, we are not required to send this notice if nonrenewal is due to your failure to pay any advance premium required for renewal.

4. With respect to automobile liability insurance policies only, your policy shall terminate on the effective date of any other insurance policy you purchase with respect to any automobile designated in both policies.

© ISO Properties, Inc., 2004

IL 02 60 07 05

AAI - 000160

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** Paragraph **A.1.** of the CANCELLATION Common Policy Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the policy is to be cancelled, subject to the following:

**a.** If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later. However, upon receiving a written notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first Named Insured.

**b.** If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days notice to the first Named Insured and the third party as soon as practicable after receiving the first Named Insured's request for cancellation.

Our notice will state the effective date of cancellation, which will be the later of the following:

**(1)** 10 days from the date of mailing or delivering our notice, or

**(2)** The effective date of cancellation stated in the first Named Insured's notice to us.

**B.** Paragraph **A.5.** of the CANCELLATION Common Policy Condition is replaced by the following:

**5.** Premium Refund

**a.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

**b.** If we cancel, the refund will be pro rata, except as provided in **c.** below.

**c.** If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata. Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

**d.** If the first Named Insured cancels, the refund may be less than pro rata.

**e.** The cancellation will be effective even if we have not made or offered a refund.

IL 02 62 07 02                    © ISO Properties, Inc., 2001                    Page 1 of 2

AAI - 000161

C.  The following is added to the CANCELLATION Common Policy condition and supersedes any other provisions to the contrary:

If we decide to:

1.  Cancel or nonrenew this policy; or

2.  Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

3.  Change any policy provision which would limit or restrict coverage;

Then:

We will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing address known to us. Except as applicable as described in Paragraph **D.** below, we will mail or deliver notice at least:

1.  10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for nonpayment of premium; or

2.  45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

3.  45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

D.  The following provisions apply to insurance covering residential real property only provided under the:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART;

COMMERCIAL PROPERTY COVERAGE PART;
FARM COVERAGE PART;

if the named insured is a natural person.

With respect to such insurance, the following is added to the CANCELLATION Common Policy Condition and supersedes any provisions to the contrary:

1.  When this policy has been in effect for 60 days or less and is not a renewal with us, we may cancel for any reason by notifying the first named insured at least 10 days before the date cancellation takes effect.

2.  When this policy has been in effect for more than 60 days, or at any time if it is a renewal with us, we may cancel only for one or more of the following reasons:

    a.  Nonpayment of premium, whether payable to us or to our agent;

    b.  Upon discovery of fraud, concealment of a material fact, or material misrepresentation made by or with the knowledge of any person insured under this policy in obtaining this policy, continuing this policy or presenting a claim under this policy;

    c.  Upon the occurrence of a change in the risk which substantially increases any hazard insured against; or

    d.  Upon the violation of any of the material terms or conditions of this policy by any person insured under this policy.

We may cancel by providing notice to the first named insured at least:

*   10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

*   45 days before the effective date of cancellation if we cancel for any of the reasons listed in **b., c.** or **d.** above.

© ISO Properties, Inc., 2001    **IL 02 62 07 02**

AAI - 000162

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **1.**, **2.**, **3.** and **5.** of the **Cancellation** Common Policy Condition are replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this entire policy by mailing or delivering to us advance written notice of cancellation.

**2. Cancellation Of Policies In Effect**

**a. 60 Days Or Less**

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 30 days before the effective date of cancellation if we cancel for any reason not included in Paragraph **A.2.a.(2)** below.

**(2)** 15 days before the effective date of cancellation if we cancel for any of the following reasons:

**(a)** Nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

**(b)** Conviction of a crime arising out of acts increasing the hazard insured against;

**(c)** Discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a claim;

**(d)** After issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and that occurred subsequent to inception of the current policy period;

**(e)** Material physical change in the property insured, occurring after issuance or last annual renewal anniversary date of the policy, that results in the property becoming uninsurable in accordance with our objective, uniformly applied underwriting standards in effect at the time the policy was issued or last renewed; or material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, that causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

**(f)** Required pursuant to a determination by the Superintendent that continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public;

© ISO Properties, Inc., 2005
AAI - 000163

(g) A determination by the Superintendent that the continuation of the policy would violate, or would place us in violation of, any provision of the Insurance Code; or

(h) Where we have reason to believe, in good faith and with sufficient cause, that there is a probable risk of danger that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. If we cancel for this reason, you may make a written request to the Insurance Department, within 10 days of receipt of this notice, to review our cancellation decision. Also, we will simultaneously send a copy of this cancellation notice to the Insurance Department.

**b. For More Than 60 Days**

If this policy has been in effect for more than 60 days, or if this policy is a renewal or continuation of a policy we issued, we may cancel only for any of the reasons listed in Paragraph **A.2.a.(2)** above, provided:

(1) We mail the first Named Insured written notice at least 15 days before the effective date of cancellation; and

(2) If we cancel for nonpayment of premium, our notice of cancellation informs the first Named Insured of the amount due.

3. We will mail or deliver our notice, including the reason for cancellation, to the first Named Insured at the address shown in the policy and to the authorized agent or broker.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata.

However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata. Under such financed policies, we will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

**B.** The following is added to the **Cancellation** Common Policy Condition:

7. If one of the reasons for cancellation in Paragraph **A.2.a.(2)** or **D.2.b.(2)** exists, we may cancel this entire policy, even if the reason for cancellation pertains only to a new coverage or endorsement initially effective subsequent to the original issuance of this policy.

**C.** The following conditions are added:

1. **Nonrenewal**

If we decide not to renew this policy we will send notice as provided in Paragraph **C.3.** below.

2. **Conditional Renewal**

If we conditionally renew this policy subject to a:

a. Change of limits;

b. Change in type of coverage;

c. Reduction of coverage;

d. Increased deductible;

e. Addition of exclusion; or

f. Increased premiums in excess of 10%, exclusive of any premium increase due to and commensurate with insured value added or increased exposure units; or as a result of experience rating, loss rating, retrospective rating or audit;

we will send notice as provided in Paragraph **C.3.** below.

3. **Notices Of Nonrenewal And Conditional Renewal**

a. If we decide not to renew this policy or to conditionally renew this policy as provided in Paragraphs **C.1.** and **C.2.** above, we will mail or deliver written notice to the first Named Insured shown in the Declarations at least 60 but not more than 120 days before:

(1) The expiration date; or

(2) The anniversary date if this is a continuous policy.

b. Notice will be mailed or delivered to the first Named Insured at the address shown in the policy and to the authorized agent or broker. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. Notice will include the specific reason(s) for nonrenewal or conditional renewal, in-

© ISO Properties, Inc., 2005

**IL 02 68 11 05**

AAI - 000164

cluding the amount of any premium increase for conditional renewal and description of any other changes.

d. If we violate any of the provisions of Paragraph **C.3.a.**, **b.** or **c.** above by sending the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice:

(1) Coverage will remain in effect at the same terms and conditions of this policy at the lower of the current rates or the prior period's rates until 60 days after such notice is mailed or delivered, unless the first Named Insured, during this 60 day period, has replaced the coverage or elects to cancel.

(2) On or after the expiration date of this policy, coverage will remain in effect at the same terms and conditions of this policy for another policy period, at the lower of the current rates or the prior period's rates, unless the first Named Insured, during this additional policy period, has replaced the coverage or elects to cancel.

e. If you elect to renew on the basis of a late conditional renewal notice, the terms, conditions and rates set forth in such notice shall apply:

(1) Upon expiration of the 60 day period; or

(2) Notwithstanding the provisions in Paragraphs **d.(1)** and **d.(2)**, as of the renewal date of the policy if we send the first Named Insured the conditional renewal notice at least 30 days prior to the expiration or anniversary date of the policy.

f. We will not send you notice of nonrenewal or conditional renewal if you, your authorized agent or broker or another insurer of yours mails or delivers notice that the policy has been replaced or is no longer desired.

D. The following provisions apply when the Commercial Property Coverage Part, the Farm Coverage Part or the Capital Assets Program (Output Policy) Coverage Part is made a part of this policy:

1. Items **D.2.** and **D.3.** apply if this policy meets the following conditions:

a. The policy is issued or issued for delivery in New York State covering property located in this state; and

b. The policy insures:

(1) For loss of or damage to structures, other than hotels or motels, used predominantly for residential purposes and consisting of no more than four dwelling units; or

(2) For loss of or damage to personal property other than farm personal property or business property; or

(3) Against damages arising from liability for loss of, damage to or injury to persons or property, except liability arising from business or farming; and

c. The portion of the annual premium attributable to the property and contingencies described in **1.b.** exceeds the portion applicable to other property and contingencies.

2. Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

2. **Procedure And Reasons For Cancellation**

a. We may cancel this entire policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

(1) 15 days before the effective date of cancellation if we cancel for nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

b. But if this policy:

(1) Has been in effect for more than 60 days; or

(2) Is a renewal of a policy we issued:

we may cancel this policy only for one or more of the following reasons:

(1) Nonpayment of premium, provided however, that a notice of cancellation on this ground shall

© ISO Properties, Inc., 2005

AAI - 000165

inform the first Named Insured of the amount due;

**(2)** Conviction of a crime arising out of acts increasing the risk of loss;

**(3)** Discovery of fraud or material misrepresentation in obtaining the policy or in making a claim;

**(4)** Discovery of willful or reckless acts or omissions increasing the risk of loss;

**(5)** Physical changes in the covered property that make that property uninsurable in accordance with our objective and uniformly applied underwriting standards in effect when we:

**(a)** Issued the policy; or

**(b)** Last voluntarily renewed the policy;

**(6)** The Superintendent of Insurance's determination that continuing the policy would violate Chapter 28 of the Insurance Law; or

**(7)** Required pursuant to a determination by the Superintendent of Insurance that the continuation of our present premium volume would be hazardous to the interests of our policyholders, our creditors or the public.

**3.** The following are added:

**a. Conditional Continuation**

Instead of cancelling this policy, we may continue it on the condition that:

**(1)** The policy limits be changed; or

**(2)** Any coverage not required by law be eliminated.

If this policy is conditionally continued, we will mail or deliver to the first Named Insured written notice at least 20 days before the effective date of the change or elimination. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

**b. Nonrenewal**

If, as allowed by the laws of New York State, we:

**(1)** Do not renew this policy; or

**(2)** Condition policy renewal upon:

**(a)** Change of limits; or

**(b)** Elimination of coverage;

we will mail or deliver written notice of nonrenewal or conditional renewal:

**(a)** At least 45 days; but

**(b)** Not more than 60 days;

before the expiration date of the policy. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

**E.** The following is added to the Farm Property – Other Farm Provisions Form – Additional Coverages, Conditions, Definitions, the Commercial Property Coverage Part and the Capital Assets Program (Output Policy) Coverage Part:

When the property is subject to the Anti-Arson Application in accordance with New York Insurance Department Regulation No. 96, the following provisions are added:

If you fail to return the completed, signed and affirmed anti-arson application to us:

**1.** Or our broker or agent within 45 days of the effective date of a new policy, we will cancel the entire policy by giving 20 days' written notice to you and to the mortgageholder shown in the Declarations.

**2.** Before the expiration date of any policy, we will cancel the policy by giving written notice to you and to the mortgageholder shown in the Declarations at least 15 days before the effective date of cancellation.

The cancellation provisions set forth in **E.1.** and **E.2.** above supersede any contrary provisions in this policy including this endorsement.

If the notice in **E.1.** or **E.2.** above is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

**F.** The following applies to the Commercial Property Coverage Part, the Farm Coverage Part and the Capital Assets Program (Output Policy) Coverage Part:

© ISO Properties, Inc., 2005    **IL 02 68 11 05**

AAI - 000166

Paragraphs **f.** and **g.** of the **Mortgageholders** Condition are replaced by the following:

**f.  Cancellation**

(1) If we cancel this policy, we will give written notice to the mortgageholder at least:

(a) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

(b) 30 days before the effective date of cancellation if we cancel for any other reason.

(2) If you cancel this policy, we will give written notice to the mortgageholder. With respect to the mortgageholder's interest only, cancellation will become effective on the later of:

(a) The effective date of cancellation of the insured's coverage; or

(b) 10 days after we give notice to the mortgageholder.

**g.  Nonrenewal**

(1) If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

(2) If you elect not to renew this policy, we will give written notice to the mortgageholder. With respect to the mortgageholder's interest only, non-renewal will become effective on the later of:

(a) The expiration date of the policy; or

(b) 10 days after we give notice to the mortgageholder.

**G.** The following provisions apply when the following are made a part of this policy:

Commercial General Liability Coverage Part
Employment-Related Practices Liability Coverage Part
Farm Liability Coverage Form
Liquor Liability Coverage Part
Products/Completed Operations Liability Coverage Part

**1.** The aggregate limits of this policy as shown in the Declarations will be increased in proportion to any policy extension provided in accordance with Paragraph **C.3.d.** above.

**2.** The last sentence of Limits Of Insurance does not apply when the policy period is extended because we sent the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice.

AAI - 000167

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NORTH CAROLINA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

> BOILER AND MACHINERY COVERAGE PART
> CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> CRIME AND FIDELITY COVERAGE PART
> EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
> FARM COVERAGE PART
> FARM UMBRELLA LIABILITY POLICY
> LIQUOR LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> PROFESSIONAL LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation Requirements**

**a. Policies In Effect Less Than 60 Days**

If this policy has been in effect for less than 60 days, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 15 days before the effective date of cancellation if we cancel for non-payment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**b. Policies In Effect More Than 60 Days**

If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy prior to the:

**(1)** Expiration of the policy term; or

**(2)** Anniversary date,

stated in the policy only for one or more of the following reasons:

**(a)** Nonpayment of premium;

**(b)** An act or omission by the insured or his or her representative that constitutes material misrepresentation or nondisclosure of a material fact in obtaining this policy, continuing this policy or presenting a claim under this policy;

**(c)** Increased hazard or material change in the risk assumed that could not have been reasonably contemplated by the parties at the time of assumption of the risk;

**(d)** Substantial breach of contractual duties, conditions or warranties that materially affects the insurability of the risk;

**(e)** A fraudulent act against us by the insured or his or her representative that materially affects the insurability of the risk;

**(f)** Willful failure by the insured or his or her representative to institute reasonable loss control measures that materially affect the insurability of the risk after written notice by us;

**(g)** Loss of facultative reinsurance, or loss of or substantial changes in applicable reinsurance as provided in G.S. 58-41-30;

© ISO Properties, Inc., 2001

AAI - 000168

**(h)** Conviction of the insured of a crime arising out of acts that materially affect the insurability of the risk;

**(i)** A determination by the Commissioner of Insurance that the continuation of the policy would place us in violation of the laws of North Carolina; or

**(j)** You fail to meet the requirements contained in our corporate charter, articles of incorporation or by-laws when we are a company organized for the sole purpose of providing members of an organization with insurance coverage in North Carolina.

We will mail or deliver written notice of cancellation to the first Named Insured at least:

**(i)** 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(ii)** 30 days before the effective date of cancellation if we cancel for any other reason.

**c.** Cancellation for nonpayment of premium will not become effective if you pay the premium amount due before the effective date of cancellation.

**d.** We may also cancel this policy for any reason not stated above provided we obtain your prior written consent.

**B.** The following provisions are added and supersede any other provisions to the contrary:

**1. Nonrenewal**

**a.** If we elect not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of nonrenewal at least 45 days prior to the:

**(1)** Expiration of the policy if this policy has been written for one year or less; or

**(2)** Anniversary date of the policy if this policy has been written for more than one year or for an indefinite term.

**b.** We need not mail or deliver the notice of nonrenewal if you have:

**(1)** Insured property covered under this policy, under any other insurance policy;

**(2)** Accepted replacement coverage; or

**(3)** Requested or agreed to nonrenewal of this policy.

**c.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**2.** The written notice of cancellation or nonrenewal will:

**a.** Be mailed or delivered to the first Named Insured and any designated mortgagee or loss payee at their addresses shown in the policy, or if not indicated in the policy, at their last known addresses; and

**b.** State the reason or reasons for cancellation or nonrenewal.

© ISO Properties, Inc., 2001

**IL 02 69 07 02**

AAI - 000169

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** Paragraphs **2.** and **3.** of the **Cancellation** Common Policy Condition are replaced by the following:

**2. All Policies In Effect For 60 Days Or Less**

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

**a.** 10 days before the effective date of cancellation if we cancel for:

**(1)** Nonpayment of premium; or

**(2)** Discovery of fraud by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3. All Policies In Effect For More Than 60 Days**

**a.** If this policy has been in effect for more than 60 days, or is a renewal of a policy

we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

**(1)** Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

**(2)** Discovery of fraud or material misrepresentation by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**(3)** A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

**(4)** Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

IL 02 70 11 04                    © ISO Properties, Inc., 2004                    Page 1 of 4

AAI - 000170

(5) Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

(6) A determination by the Commissioner of Insurance that:

  (a) Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

  (b) Continuation of the policy coverage would:

    (i) Place us in violation of California law or the laws of the state where we are domiciled; or

    (ii) Threaten our solvency.

(7) A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

**b.** We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

(1) 10 days before the effective date of cancellation if we cancel for non-payment of premium or discovery of fraud; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph **3.a.**

**B.** The following provision is added to the **Cancellation** Common Policy Condition:

  **7. Residential Property**

  This provision applies to coverage on real property which is used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household personal property in a residential unit, if such coverage is written under one of the following:

Commercial Property Coverage Part

Farm Coverage Part – Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

**a.** If such coverage has been in effect for 60 days or less, and is not a renewal of coverage we previously issued, we may cancel this coverage for any reason, except as provided in **b.** and **c.** below.

**b.** We may not cancel this policy solely because the first Named Insured has:

(1) Accepted an offer of earthquake coverage; or

(2) Cancelled or did not renew a policy issued by the California Earthquake Authority (CEA) that included an earthquake policy premium surcharge.

However, we shall cancel this policy if the first Named Insured has accepted a new or renewal policy issued by the CEA that includes an earthquake policy premium surcharge but fails to pay the earthquake policy premium surcharge authorized by the CEA.

**c.** We may not cancel such coverage solely because corrosive soil conditions exist on the premises. This Restriction **(c.)** applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

(1) Capital Assets Program Coverage Form (Output Policy);

(2) Commercial Property Coverage Part – Causes Of Loss – Special Form; or

(3) Farm Coverage Part – Causes Of Loss Form – Farm Property, Paragraph **D.** Covered Causes Of Loss – Special.

**C.** The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

**1.** Subject to the provisions of Paragraphs **C.2.** and **C.3.** below, if we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

© ISO Properties, Inc., 2004

AAI - 000171

We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

2. **Residential Property**

This provision applies to coverage on real property used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household property contained in a residential unit, if such coverage is written under one of the following:

Capital Assets Program (Output Policy) Coverage Part

Commercial Property Coverage Part

Farm Coverage Part – Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

a. We may elect not to renew such coverage for any reason, except as provided in **b., c.** and **d.** below:

b. We will not refuse to renew such coverage solely because the first Named Insured has accepted an offer of earthquake coverage.

However, the following applies only to insurers who are associate participating insurers as established by Cal. Ins. Code Section 10089.16. We may elect not to renew such coverage after the first Named Insured has accepted an offer of earthquake coverage, if one or more of the following reasons applies:

(1) The nonrenewal is based on sound underwriting principles that relate to the coverages provided by this policy and that are consistent with the approved rating plan and related documents filed with the Department of Insurance as required by existing law;

(2) The Commissioner of Insurance finds that the exposure to potential losses will threaten our solvency or place us in a hazardous condition. A hazardous condition includes, but is not limited to, a condition in which we make claims payments for losses resulting from an earthquake that occurred within the preceding two years and that required a reduction in policyholder surplus of at least 25% for payment of those claims; or

(3) We have:

(a) Lost or experienced a substantial reduction in the availability or scope of reinsurance coverage; or

(b) Experienced a substantial increase in the premium charged for reinsurance coverage of our residential property insurance policies; and

the Commissioner has approved a plan for the nonrenewals that is fair and equitable, and that is responsive to the changes in our reinsurance position.

c. We will not refuse to renew such coverage solely because the first Named Insured has cancelled or did not renew a policy, issued by the California Earthquake Authority that included an earthquake policy premium surcharge.

d. We will not refuse to renew such coverage solely because corrosive soil conditions exist on the premises. This Restriction (**d.**) applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

(1) Capital Assets Program Coverage Form (Output Policy);

(2) Commercial Property Coverage Part – Causes Of Loss – Special Form; or

(3) Farm Coverage Part – Causes Of Loss Form – Farm Property, Paragraph **D.** Covered Causes Of Loss – Special.

3. We are not required to send notice of nonrenewal in the following situations:

a. If the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between us and a member of our insurance group.

b. If the policy has been extended for 90 days or less, provided that notice has been given in accordance with Paragraph **C.1.**

c. If you have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

© ISO Properties, Inc., 2004

AAI - 000172

d. If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be re-newed.

e. If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

f. If we have made a written offer to the first Named Insured, in accordance with the timeframes shown in Paragraph **C.1.**, to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

© ISO Properties, Inc., 2004

**IL 02 70 11 04**

AAI - 000173

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RHODE ISLAND CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** With respect to the:

Capital Assets Program (Output Policy) Coverage Part
Commercial Inland Marine Coverage Part
Commercial Property Coverage Part
Farm Property – Other Farm Provisions Form – Additional Coverages, Conditions, Definitions
Farm – Livestock Coverage Form
Farm – Mobile Agricultural Machinery And Equipment Coverage Form;

Paragraph **1.** of the **Cancellation** Common Policy Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this policy by giving, mailing or delivering advance written notice of cancellation to us or to our agent who issued the policy.

**C.** With respect to all Coverage Parts and Policies addressed in this endorsement, the **Cancellation** Common Policy Condition is amended by replacing Paragraphs **2.**, **3.**, **5.** and **6.** with the following:

**2.** We may cancel this policy by giving, mailing or delivering to the first Named Insured and agent, if any, written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

If this policy has been in effect for 60 days or more, or if this is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

**a.** Nonpayment of premium;

**b.** Fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy, or in presenting a claim under the policy;

**c.** Activities or omissions on your part which increase any hazard insured against, including a failure to comply with loss control recommendations;

**d.** Change in the risk which increases the risk of loss after insurance coverage has been issued or renewed, including but not limited to an increase in exposure due to regulation, legislation, or court decision;

**e.** Loss or decrease of our reinsurance covering all or part of the risk or exposure covered by the policy;

**f.** Determination by the Commissioner of Insurance that the continuation of the pol-

IL 02 73 01 06 © ISO Properties, Inc., 2005 Page 1 of 3

AAI - 000174

icy would jeopardize our solvency or would place us in violation of the insurance laws of this state;

g. Owner or occupant incendiarism;

h. Violation or breach by you of any policy terms or conditions;

i. Constructive or actual total loss of the Covered Property; or

j. Such other reasons as may be approved by the Commissioner of Insurance.

3. We will give, mail or deliver written notice to the first Named Insured at the last address known to us, and to the agent, if any.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due.

The cancellation will be effective even if we have not made or offered a refund.

The following provisions govern calculation of return premium:

a. We will compute return premium pro rata and round to the next higher whole dollar when this policy is:

(1) Cancelled at our request;

(2) Cancelled because you no longer have a financial or insurable interest in the property or business operation that is the subject of insurance;

(3) Cancelled and rewritten by us or a member of our company group;

(4) Cancelled after the first year, if it is a prepaid policy written for a term of more than one year; or

(5) Cancelled by us at the request of a premium finance company upon default of the first Named Insured, when this policy is financed under a premium finance agreement.

b. When this policy is cancelled at your request (except when Paragraph **a.(2)**, **a.(3)** or **a.(4)** applies), we will return 90% (75% for Boiler and Machinery policies) of the pro rata unearned premium, rounded to the next higher whole dollar. However, when such cancellation takes place during the first year of a multi-year prepaid policy, we will return the full annual premium for the subsequent years.

6. Proof of giving, mailing or delivering notice of cancellation will be sufficient proof of notice.

D. With respect to all Coverage Parts and Policies addressed in this endorsement, the following is added to the **Cancellation** Common Policy Condition:

7. We will provide you with the reason or reasons for cancellation if:

a. You request in writing a statement of the reasons for cancellation; and

b. You agree in writing to hold us harmless from liability for any:

(1) Communication giving notice of, or specifying the reasons for, cancellation; or

(2) Statement made in connection with an attempt to discover or verify the existence of conditions which would be a reason for cancellation as provided under Paragraph **C.2.**

E. With respect to all Coverage Parts and Policies addressed in this endorsement, the following is added and supersedes any provision to the contrary:

**NONRENEWAL**

1. If we elect not to renew this policy, we will give, mail or deliver to the first Named Insured and agent, if any, written notice of non-renewal at least 60 days before:

a. The expiration date of the policy; or

b. An anniversary date of the policy, if the policy is written for a term longer than one year or with no fixed expiration date.

2. However, we need not give, mail or deliver this notice if:

a. We have offered to issue a renewal policy; or

b. The first Named Insured has obtained, or has agreed in writing to obtain, replacement coverage.

F. With respect to the:

Capital Assets Program (Output Policy) Coverage Part
Commercial Inland Marine Coverage Part
Commercial Property Coverage Part
Farm Property – Other Farm Provisions Form – Additional Coverages, Conditions, Definitions
Farm – Livestock Coverage Form
Farm – Mobile Agricultural Machinery And Equipment Coverage Form;

© ISO Properties, Inc., 2005

IL 02 73 01 06

AAI - 000175

The following is added to the Common Policy Conditions:

If notice of cancellation or nonrenewal is mailed to the insured, we shall forward the notice of cancellation or nonrenewal to the last known address of the first Named Insured stated in the policy by first class mail and maintain proof of mailing by the United States Postal Service certificate of mailing. This proof of mailing will be sufficient proof of notice.

We will also give, mail or deliver written notice of cancellation, subject to **C.2.** above, and written notice of nonrenewal, subject to **E.1.** above, to any loss payee named in the policy. Mailing will be accomplished in accordance with the procedure stated in the above paragraph.

**G.** Under the Mortgageholders Condition, the paragraphs pertaining to cancellation and nonrenewal are replaced by the following:

   **1.** If we cancel this policy, we will give, mail or deliver written notice to the mortgageholder at least:

      **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

      **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

   **2.** If we do not renew this policy, we will give, mail or deliver written notice to the mortgageholder at least 10 days before:

      **a.** The expiration date of the policy; or

      **b.** An anniversary date of the policy, if the policy is written for a term longer than one year or with no fixed expiration date.

   **3.** If notice of cancellation or nonrenewal is mailed, we shall forward the notice of cancellation or nonrenewal to the last known address of the first Named Insured stated in the policy by first class mail and maintain proof of mailing by the United States Postal Service certificate of mailing. This proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2005

AAI - 000176

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES – CANCELLATION AND NONRENEWAL PROVISIONS FOR CASUALTY LINES AND COMMERCIAL PACKAGE POLICIES

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY
    FARM COVERAGE PART – FARM LIABILITY COVERAGE FORM
    LIQUOR LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This endorsement also modifies insurance provided under the following when written as part of a Commercial Package Policy:

    BOILER AND MACHINERY COVERAGE PART
    CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
    COMMERCIAL CRIME COVERAGE FORM
    COMMERCIAL CRIME POLICY
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    EMPLOYEE THEFT AND FORGERY POLICY
    EMPLOYMENT-RELATED PRACTICES LIABILITY
    FARM COVERAGE PART – FARM LIABILITY COVERAGE FORM
    FARM COVERAGE PART – LIVESTOCK COVERAGE FORM
    FARM COVERAGE PART – MOBILE AGRICULTURAL MACHINERY AND EQUIPMENT
    COVERAGE FORM
    GLASS COVERAGE FORM
    GOVERNMENT CRIME COVERAGE FORM
    GOVERNMENT CRIME POLICY
    LIQUOR LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

    **2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 10 days before the effective date of cancellation.

    However if this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then the notice of cancellation, as described above, will be provided to the First Named Insured 30 days before the effective date of cancellation. We will also provide 30 days' written notice to each unit-owner to whom we issued a certificate or memorandum of insurance, by mailing or delivering the notice to each last mailing address known to us.

The permissible reasons for cancellation are as follows:

AAI - 000177

**a.** If this policy has been in effect for 60 days or less, we may cancel for any reason except, that under the provisions of the Texas Insurance Code, we may not cancel this policy solely because the policyholder is an elected official.

**b.** If this policy has been in effect for more than 60 days, or if it is a renewal or continuation of a policy issued by us, we may cancel only for one or more of the following reasons:

**(1)** Fraud in obtaining coverage;

**(2)** Failure to pay premiums when due;

**(3)** An increase in hazard within the control of the insured which would produce an increase in rate;

**(4)** Loss of our reinsurance covering all or part of the risk covered by the policy; or

**(5)** If we have been placed in supervision, conservatorship or receivership and the cancellation is approved or directed by the supervisor, conservator or receiver.

**B.** The following condition is added and supersedes any provision to the contrary:

**NONRENEWAL**

**1.** We may elect not to renew this policy except, that under the provisions of the Texas Insurance Code, we may not refuse to renew this policy solely because the policyholder is an elected official.

**2.** This Paragraph, **2.**, applies unless the policy qualifies under Paragraph **3.** below.

If we elect not to renew this policy, we may do so by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal, stating the reason for nonrenewal, at least 60 days before the expiration date. If notice is mailed or delivered less than 60 days before the expiration date, this policy will remain in effect until the 61st day after the date on which the notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the previous year's premium.

**3.** If this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then we will mail or deliver written notice of nonrenewal, at least 30 days before the expiration or anniversary date of the policy, to:

**a.** The first Named Insured; and

**b.** Each unit-owner to whom we issued a certificate or memorandum of insurance.

We will mail or deliver such notice to each last mailing address known to us.

**4.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**5.** The transfer of a policyholder between admitted companies within the same insurance group is not considered a refusal to renew.

© ISO Properties, Inc., 2001

**IL 02 75 05 03**

AAI - 000178

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOUISIANA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation Common Policy Condition** is replaced by the following, which applies unless Paragraph **B.** of this endorsement applies.

**2. Notice Of Cancellation**

**a.** Cancellation Of Policies In Effect For Fewer Than 60 Days Which Are Not Renewals

If this policy has been in effect for fewer than 60 days and is not a renewal of a policy we issued, we may cancel this policy for any reason, subject to the following:

**(1)** Cancellation for nonpayment of premium

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 10 days before the effective date of cancellation.

**(2)** Cancellation for any other reason

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 60 days before the effective date of cancellation.

**b.** Cancellation Of Renewal Policies And New Policies In Effect For 60 Days Or More

If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Fraud or material misrepresentation made by you or with your knowledge with the intent to deceive in obtaining the policy, continuing the policy, or in presenting a claim under the policy;

**(3)** Activities or omissions by you which change or increase any hazard insured against;

**(4)** Change in the risk which increases the risk of loss after we issued or renewed this policy including an increase in exposure due to regulation, legislation, or court decision;

**(5)** Determination by the Commissioner of Insurance that the continuation of this policy would jeopardize our solvency or would place us in violation of the insurance laws of this or any other state;

IL 02 77 05 05                    © ISO Properties, Inc., 2004                    Page 1 of 3

**(6)** The insured's violation or breach of any policy terms or conditions; or

**(7)** Any other reasons that are approved by the Commissioner of Insurance.

We will mail or deliver written notice of cancellation under Paragraph **A.2.b.**, to the first Named Insured at least:

**(a)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(b)** 30 days before the effective date of cancellation if we cancel for a reason described in Paragraphs **A.2.b.(2)** through **(7)** above.

**B.** Paragraph **2.** of the **Cancellation Common Policy Condition** is replaced by the following, which applies with respect to premium payments due on new and renewal policies, including installment payments.

**2. Notice Of Cancellation**

**a.** If your premium payment check or other negotiable instrument is returned to us or our agent or a premium finance company because it is uncollectible for any reason, we may cancel the policy subject to Paragraphs **B.2.b.** and **B.2.c.**

**b.** We may cancel the policy effective from the date the premium payment was due, by sending you written notice by certified mail, or by delivering such notice to you within 10 days of the date that we receive notice of the returned check or negotiable instrument.

**c.** The cancellation notice will also advise you that the policy will be reinstated effective from the date the premium payment was due, if you present to us a cashier's check or money order for the full amount of the returned check or other negotiable instrument within 10 days of the date that the cancellation notice was mailed.

**C.** Paragraph **5.** of the **Cancellation Common Policy Condition** is replaced by the following:

**5. Premium Refund**

If this policy is cancelled, we will return any premium refund due, subject to Paragraphs **C.5.a.**, **C.5.b.**, **C.5.c.**, **C.5.d.**, **C.5.e.** and **C.5.f.** The cancellation will be effective even if we have not made or offered a refund.

**a.** If we cancel, the refund will be pro rata.

**b.** If the first Named Insured cancels, the refund may be less than pro rata, and will be returned within 30 days after the effective date of cancellation.

**c.** We will send the refund to the first Named Insured unless Paragraph **C.5.d.** or **C.5.e.** applies.

**d.** If we cancel based on Paragraph **B.2.** of this endorsement, we will return the premium due, if any, within 10 days after the expiration of the 10-day period referred to in **B.2.c.** If the policy was financed by a premium finance company, or if payment was advanced by the insurance agent, we will send the return premium directly to such payor.

**e.** With respect to any cancellation of the Commercial Auto Coverage Part, we will send the return premium, if any, to the premium finance company if the premium was financed by such company.

**f.** When return premium payment is sent to the premium finance company or the agent of the insured, we will provide notice to you, at the time of cancellation, that a return of unearned premium may be generated by the cancellation.

**D.** The **Premiums Common Policy Condition** is replaced by the following:

**PREMIUMS**

**1.** The first Named Insured shown in the Declarations is responsible for the payment of all premiums.

**2.** We will pay return premiums, if any, to the first Named Insured, unless another person or entity is entitled to be the payee in accordance with Paragraph **C.** of this endorsement.

**E.** Paragraph **f.** of the **Mortgageholders Condition** in the Commercial Property Coverage Part and the Capital Assets Program (Output Policy) Coverage Part and Paragraph **4.(f)** of the **Mortgageholders Condition** in the Farm Coverage Part are replaced by the following:

If we cancel a policy that has been in effect for fewer than 60 days and is not a renewal of a policy we issued, we will give written notice to the mortgageholder at least:

© ISO Properties, Inc., 2004

**IL 02 77 05 05**

AAI - 000180

**(1)** 10 days before the effective date of cancellation, if we cancel for non-payment of premium; or

**(2)** 60 days before the effective date of cancellation, if we cancel for any other reason.

If we cancel a policy that has been in effect for 60 days or more, or is a renewal of a policy we issued, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation, if we cancel for non-payment of premium; or

**(2)** 30 days before the effective date of cancellation, if we cancel for any other reason.

**F.** The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

**1.** If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured, at least 60 days before its expiration date, or its anniversary date if it is a policy written for a term of more than one year or with no fixed expiration date.

**2.** We need not mail or deliver this notice if:

**a.** We or another company within our insurance group have offered to issue a renewal policy; or

**b.** You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

**3.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**4.** Such notice to the insured shall include the insured's loss run information for the period the policy has been in force within, but not to exceed, the last three years of coverage.

© ISO Properties, Inc., 2004

AAI - 000181

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DISTRICT OF COLUMBIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the CANCELLATION Common Policy Condition is replaced by the following:

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation. At least 5 days before sending notice to the first Named Insured, we will notify the agent or broker, if any, who wrote the policy.

If this policy has been in effect for 30 days or less and is not a renewal of a policy we issued, we may cancel this policy for any reason.

If this policy has been in effect more than 30 days, or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**1.** You have refused or failed to pay a premium due under the terms of the policy;

**2.** You have made a material and willful misstatement or omission of fact to us or our employees, agents or brokers in connection with any application to or claim against us;

**3.** You have transferred your property or other interest to a person other than you or your beneficiary, unless the transfer is permitted under the terms of the policy; or

**4.** The property, interest or use of the property or interest has materially changed with respect to its insurability.

**B.** The following is added:

NONRENEWAL

We may elect not to renew this policy by mailing or delivering written notice of nonrenewal to the first Named Insured's last mailing address known to us. We will mail or deliver the notice at least 30 days before the expiration of the policy. At least 5 days before sending notice to the first Named Insured, we will notify the agent or broker, if any, who wrote the policy. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

AAI - 000182

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OREGON CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

> BOILER AND MACHINERY COVERAGE PART
> CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
> COMMERCIAL AUTOMOBILE COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> CRIME AND FIDELITY COVERAGE PART
> EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
> FARM COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> PROFESSIONAL LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2.** If this policy has been in effect for:

  **a.** Fewer than 60 days and is not a renewal policy, we may cancel for any reason.

  **b.** 60 days or more or is a renewal policy, we may cancel only for one or more of the following reasons:

    **(1)** Nonpayment of premium;

    **(2)** Fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy or in presenting a claim under the policy;

    **(3)** Substantial increase in the risk of loss after insurance coverage has been issued or renewed, including but not limited to an increase in exposure due to rules, legislation or court decision;

    **(4)** Failure to comply with reasonable loss control recommendations;

    **(5)** Substantial breach of contractual duties, conditions or warranties;

    **(6)** Determination by the commissioner that the continuation of a line of insurance or class of business to which the policy belongs will jeopardize our solvency or will place us in violation of the insurance laws of Oregon or any other state; or

    **(7)** Loss or decrease in reinsurance covering the risk.

  **c.** 60 days or more or is a renewal policy, we may cancel for any other reason approved by the commissioner by rule, but only with respect to insurance provided under the following:

    **(1)** A package policy that includes commercial property and commercial liability insurance;

    **(2)** Commercial Automobile Coverage Part;

    **(3)** Commercial General Liability Coverage Part;

    **(4)** Commercial Property Coverage Part – Legal Liability Coverage Form;

    **(5)** Commercial Property Coverage Part – Mortgageholders Errors And Omissions Coverage Form;

    **(6)** Employment-Related Practices Liability Coverage Part;

    **(7)** Farm Coverage Part – Farm Liability Coverage Form;

    **(8)** Liquor Liability Coverage Part;

    **(9)** Products/Completed Operations Liability Coverage Part; or

    **(10)** Professional Liability Coverage Part.

© ISO Properties, Inc., 2005
AAI - 000183

**B.** Paragraph **3.** of the **Cancellation** Common Policy Condition is amended by the addition of the following:

    **3.** We will mail or deliver to the first Named Insured written notice of cancellation, stating the reason for cancellation.

**C.** The following is added to the **Cancellation** Common Policy Condition:

    **7. Number Of Days' Notice Of Cancellation:**

      **a.** With respect to insurance provided under **2.c.(1)** through **(10)** above, cancellation will not be effective until at least 10 working days after the first Named Insured receives our notice.

      **b.** With respect to insurance other than that provided under **2.c.(1)** through **(10)** above, cancellation will not be effective until at least:

        **(1)** 10 days after the first Named Insured receives our notice, if we cancel for nonpayment of premium; or

        **(2)** 30 days after the first Named Insured receives our notice, if we cancel for any other reason.

**D.** Paragraph **6.** of the **Cancellation** Common Policy Condition does not apply.

**E.** The following are added and supersede any provision to the contrary:

    **1. Nonrenewal**

    We may elect not to renew this policy by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal before the:

      **a.** Expiration date of the policy; or

      **b.** Anniversary date of the policy if the policy is written for a term of more than one year or without a fixed expiration date.

However, if this policy is issued for a term of more than one year and for additional consideration the premium is guaranteed, we may not refuse to renew the policy at its anniversary date.

Nonrenewal will not be effective until at least 45 days after the first Named Insured receives our notice.

    **2. Mailing Of Notices**

      **a.** If notice of cancellation or nonrenewal is mailed, a post office certificate of mailing will be conclusive proof that the first Named Insured received the notice on the third calendar day after the date of the certificate of mailing.

      **b.** The following provision applies with respect to coverage provided under the Farm Coverage Part:

    If the first Named Insured has affirmatively consented to our use of an electronic record to deliver notice of cancellation or nonrenewal and has not withdrawn such consent, then the electronic record delivering notice of cancellation or nonrenewal satisfies the requirement that the notice of cancellation or nonrenewal be provided, or made available, to the first Named Insured in writing if we send the first Named Insured the electronic record with a request for a return receipt and we receive the return receipt. If we do not receive the return receipt, we may cancel or nonrenew the policy only after providing or delivering the notice of cancellation or nonrenewal to the first Named Insured in writing, subject to Paragraph **2.a.** above.

© ISO Properties, Inc., 2005

**IL 02 79 01 06**

AAI - 000184

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MICHIGAN CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

> BOILER AND MACHINERY COVERAGE PART
> COMMERCIAL AUTOMOBILE COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> CRIME AND FIDELITY COVERAGE PART
> EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
> FARM COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> PROFESSIONAL LIABILITY COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is amended as follows:

   **1.** Paragraph **1.** is replaced by the following:

      The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us or our authorized agent advance notice of cancellation.

   **2.** Paragraph **3.** is replaced by the following:

      We will mail or deliver our notice to the first Named Insured's last mailing address known to us or our authorized agent.

   **3.** Paragraph **5.** is replaced by the following:

      If this policy is cancelled, we will send the first Named Insured any pro rata premium refund due. The minimum earned premium shall not be less than the pro rata premium for the expired time or $25.00, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

**B.** The following Condition is added and supersedes any other provision to the contrary:

**NONRENEWAL**

If we decide not to renew this policy, we will mail or deliver to the first Named Insured's last mailing address known to us or our authorized agent written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing shall be sufficient proof of notice.

© ISO Properties, Inc., 2001

AAI - 000185

# PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;

2. Consultation or advice; or

3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or

3. If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

**Instruction to Policy Writers**

Attach the Pennsylvania Notice to all new and renewal certificates insuring risks located in Pennsylvania.

© ISO Properties, Inc., 2001

AAI - 000186

POLICY NUMBER: Y-660-4790A876-TIL-07

ISSUE DATE: 04-02-07

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# INSURER AMENDMENT ENDORSEMENT

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE COVERAGE PART(S) INDICATED IN THE SCHEDULE BELOW.

**SCHEDULE:**

This endorsement applies to the following Coverage Part(s):

      X       All Coverage Parts forming a part of this policy.

             The Coverage Part(s) shown below.

| State | Insurer | Coverage Parts (if "All" is not applicable) |
|-------|---------|---------------------------------------------|
| TX | TLC | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement. When indicated in the State column, "*" shall mean "all other states".)

**PROVISIONS:**

The insuring company abbreviation(s) shown in Item 4 of the Common Policy Declarations is/are replaced with the abbreviation(s) shown above for the respective state(s) and Coverage Part(s) shown above.

**IL T3 05 12 99**

AAI - 000187

POLICY NUMBER: Y-660-4790A876-TIL-07                    ISSUE DATE: 04-02-07

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# INSURER AMENDMENT ENDORSEMENT

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE COVERAGE PART(S) INDICATED IN THE SCHEDULE BELOW.

### SCHEDULE:

This endorsement applies to the following Coverage Part(s):
>    All Coverage Parts forming a part of this policy.
>    The Coverage Part(s) shown below.

| State | Insurer | Coverage Parts (if "All" is not applicable) |
|-------|---------|---------------------------------------------|
| ** | TIL | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement. When indicated in the State column, "**" shall mean "all other states".)

### PROVISIONS:

The insuring company abbreviation(s) shown in Item 4 of the Common Policy Declarations is/are replaced with the abbreviation(s) shown above for the respective state(s) and Coverage Part(s) shown above.

**IL T3 05 12 99**                                    Page 1 of 1

AAI - 000188

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES —
# NOTICE OF CLAIM OR SETTLEMENT

This endorsement modifies insurance provided under the following:

    BOILER AND MACHINERY COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    FARM LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    PHARMACISTS PROFESSIONAL LIABILITY COVERAGE FORM
    VETERINARIANS PROFESSIONAL LIABILITY COVERAGE PART
    CATASTROPHE UMBRELLA POLICY
    EMPLOYEE BENEFITS LIABILITY

**PROVISIONS**

If a claim is made against you under a casualty policy, we must notify you of the initial offer to compromise or settle the claim. We must do so within 10 business days after the date on which the offer is made.

If a claim under a casualty policy is settled, we must notify you within 30 days of the settlement.

**IL T9 56 04 93**

AAI - 000189

**POLICYHOLDER NOTICES**

AAI - 000190



**POLICYHOLDER NOTICES**

AAI - 000191

# IMPORTANT NOTICE TO POLICYHOLDERS

## EXCLUSION – WAR

| (CG D2 42) | (UM 01 91) |
| (CG F2 45) | (UM 03 76) |
| (CG F2 46) | (UM 03 77) |
| (CG I3 48) | |

**NO COVERAGE IS PROVIDED BY THIS SUMMARY NOR CAN IT BE CONSTRUED TO REPLACE ANY PROVISIONS IN YOUR POLICY. YOU SHOULD READ YOUR POLICY TO DETERMINE YOUR RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED. If there is any conflict between the policy and this summary, <u>THE PROVISIONS OF THE POLICY SHALL PREVAIL.</u>**

## PLEASE READ THIS NOTICE CAREFULLY.

We are now attaching a war exclusion to all Commercial General Liability, Commercial Excess Liability (Umbrella) Insurance and Travelers World Cover<sup>sm</sup> International policies that provide CGL coverage. This notice is intended to make you aware that this exclusion is being added to your policy.

If you have any questions about your insurance program, please contact your agent or local Company representative.

PN T3 25 11 03

Page 1 of 1

AAI - 000192

# NOTICE TO MICHIGAN POLICYHOLDERS

THIS POLICY IS EXEMPT FROM THE FILING REQUIREMENTS OF SECTION 2236 OF THE INSURANCE CODE OF 1956, 1956 PA 218, MCL 500.2236.

## IMPORTANT NOTICE REGARDING INDEPENDENT AGENT AND BROKER COMPENSATION

For information about how St. Paul Travelers compensates independent agents and brokers, please visit www.StPaulTravelers.com, or you may request a written copy from Marketing at One Tower Square, 2GSA, Hartford, Connecticut 06183.

# IMPORTANT NOTICE

# NOTIFICATION OF PENDING CHANGES FOREIGN TERRORISM/TRIA

Pursuant to the requirements of the Terrorism Risk Insurance Act of 2002 (TRIA), this policy includes disclosure of the rate or premium charged for exposure to *"Insured Losses"* as defined under TRIA. TRIA is set to expire as of 12/31/07. If TRIA expires and is not extended or reenacted, the rate or premium disclosed for exposure to *"Insured Losses"* shall instead be applicable to exposure to loss caused by "act(s) of foreign terrorism", defined as follows:

    **a.** Any act that is violent or dangerous to human life, property or infrastructure; and

    **b.** The act has been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Any coverage provided for loss caused by an "act of foreign terrorism" shall be subject to all of the terms, definitions, exclusions and conditions of the applicable policy, and any applicable federal and/or state laws, rules or regulations.

AAI - 000195

# POLICYHOLDER NOTICE – ASBESTOS

Asbestos has long been a difficult problem for society as a whole and the insurance industry in particular. As a consequence, we are attaching an asbestos exclusion to your policy.

If you have questions about your insurance program, please contact your agent or local representative.

AAI - 000196

# TEXAS SAFETY SERVICES

**Notice to policy recipient**: If you are not the person directly responsible for accident prevention activities for your company, please direct this Safety Services notice to the person that is directly responsible for them.

## SAFETY IS OUR CONCERN

Thank you for purchasing your insurance from our company. Along with your agent, we appreciate your business and welcome the opportunity to be of service.

An important part of that service concerns accident prevention and safety engineering. Travelers Loss Prevention & Engineering Division (LP&E) has the experience, resources and capabilities to provide a range of safety services including site surveys, phone consultations or the provision of selected safety material. The following are some examples of our available services:

**Accident Prevention** - Our staff can help you identify present and potential safety hazards in your operations, premises and equipment, recommending measures for reducing or eliminating these hazards.

**Analysis of Accident Causes** - Although you investigate and keep records of accidents, we're available to help if you need us.

**Safety Consultations** - Our field staff, supported by Home Office and field specialists, can help you with special problems including Auto, General Liability, Product safety and Premises Security issues.

**Safety Videos and Literature** - We can provide you with basic videos and literature to assist you in your loss control efforts. Also, we can put you in contact with several companies able to provide additional safety materials including brochures, pamphlets and videos.

**Safety Training** - We can help you improve your safety training programs.

**Internet Website** - Visit our LP&E website page for helpful safety information. This website (http://www.travelerspc.com/commercial) also has hot links to other safety-related Internet sites. For all requests for loss control assistance **ONLY**, please directly contact your local office listed below.

Travelers will provide these services upon request. Telephone consultation is also available if the nature of the operations and hazards warrant such service. See below for the LP&E office nearest to you.

## SAFETY IS YOUR CONCERN

U. S. companies spend billions of dollars each year on the direct and indirect costs of accidents. Dollar figures can't begin to reflect the pain and suffering of an injured person and his or her family. But they do give some indication of the multiple consequences of an accident... loss of time, interrupted productivity, damaged materials and equipment, possible legal action from government regulatory agencies, and increased insurance costs.

It makes good sense for both companies and their employees to actively participate in a sound accident prevention program. The success of such a program depends to a large extent on your commitment to safety procedures and accident prevention techniques. Safety is a management concern. Maybe we can help.

You may want to consider the following **"Safety Checkpoints"** as you evaluate your organization's safety activities:

**SELF-INSPECTION PROGRAM:**
- Do you conduct periodic surveys of premises, equipment and operations?
- Do you analyze each activity to determine inherent hazards?

- If you discover hazards, do you follow up with immediate corrective action?
- Do you monitor such action to make sure it is implemented and effective?

**ACCIDENT INVESTIGATION:**
- Do you investigate each accident and find the cause?
- Do you take immediate steps to prevent a recurrence?
- Do you keep records of accident investigations and follow-up measures?
- Do you complete accident statistics and analyze trends?

**EDUCATION AND TRAINING:**
- Do you take the time to train each of your employees to perform tasks in a proper and safe manner?
- Do more-experienced employees receive training to correct any bad habits that developed over time?
- Do all employees understand that safety is an important part of their jobs?

| Texas Loss Prevention & Engineering Offices | Dallas | 1301 E. Collins Blvd., Suite 300 Richardson, TX 75081 (214) 570-6194 | Houston | 10800 Richmond Ave., Suite 120 P. O. Box 42928 Houston, TX 77242-2928 (713) 787-4031 |
|---|---|---|---|---|

PN T2 27 01 04

AAI - 000197

# IMPORTANT NOTICE TO POLICYHOLDERS

## MOBILE EQUIPMENT REDEFINED
## EXCLUSION OF VEHICLES SUBJECT TO MOTOR VEHICLE LAWS
## (CG D3 56)
## (EX G4 61)

**NO COVERAGE IS PROVIDED BY THIS SUMMARY NOR CAN IT BE CONSTRUED TO REPLACE ANY PROVISIONS IN YOUR POLICY. YOU SHOULD READ YOUR POLICY TO DETERMINE YOUR RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED. IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS SUMMARY, <u>THE PROVISIONS OF THE POLICY SHALL PREVAIL.</u>**

### PLEASE READ THIS NOTICE CAREFULLY.

The endorsement referenced above is being attached to your new policy. This endorsement clarifies our position with respect to the coverage for land vehicles subject to compulsory or financial responsibility or other motor vehicle insurance laws. Such vehicles are now specifically defined as "autos" and not "mobile equipment", and will <u>not be covered</u> under your Commercial General Liability policy for use other than the operation of attached machinery or equipment.

In any jurisdiction where the law holds that coverage required by compulsory or financial responsibility or other motor vehicle insurance laws for the mobile equipment is provided under your Commercial General Liability policy, this coverage change is a reduction of coverage.

If we also provide your Commercial Auto Insurance coverage, your new Commercial Auto policy will automatically provide the coverage required by compulsory or financial responsibility or other motor vehicle insurance laws for such land vehicles. If your Auto policy is written by another carrier, that coverage for such vehicles may be provided under your Auto policy automatically or may require the mobile equipment to be specifically scheduled.

If you have any questions about your insurance program, please contact your agent or local Company representative.

# FLORIDA POLICYHOLDERS
# AVAILABILITY OF RISK MANAGEMENT PLANS

Florida insurance statute require insurers to provide insureds, at their request, with guidelines for risk management plans. Travelers Loss Prevention & Engineering has available guidelines to assist you with your accident prevention activities.

The companion Safety Services notice describes the range of services available to our insureds. Should you desire assistance with regard to your accident prevention activities, please contact us at the Florida location specified in the notice.

AAI - 000199

 **TRAVELERS**

# FLORIDA SAFETY SERVICES

**Notice to policy recipient**: If you are not the person directly responsible for accident prevention activities for your company, please direct this Safety Services notice to the person that is directly responsible for them.

## SAFETY IS OUR CONCERN

Thank you for purchasing your insurance from our company. Along with your agent, we appreciate your business and welcome the opportunity to be of service.

An important part of that service concerns accident prevention and safety engineering. The Travelers Loss Prevention & Engineering Division (LP&E) has the experience, resources and capabilities to provide a range of safety services including site surveys, phone consultations or the provision of selected safety material. The following are some examples of our available services:

**Accident Prevention** – Our staff can help you identify present and potential safety hazards in your operations, premises and equipment, recommending measures for reducing or eliminating these hazards.

**Analysis of Accident Causes** – Although you investigate and keep records of accidents, we're available to help if you need us.

**Safety Consultations** – Our field staff, supported by Home Office and field specialists, can help you with special problems including Auto, General Liability, Product safety and Premises Security issues.

**Safety Videos and Literature** – We can provide you with basic videos and literature to assist you in your loss control efforts. Also, we can put you in contact with several companies able to provide additional safety materials including brochures, pamphlets and videos.

**Safety Training** – We can help you improve your safety training programs.

**Internet Website** – Visit our LP&E website page for helpful safety information. This website (http://www.travelerspc.com/commercial) also has hot links to other safety-related Internet sites. For all requests for loss control assistance ONLY, please directly contact your local office listed below.

**The Travelers will provide these services upon request. Telephone consultation is also available if the nature of the operations and hazards warrant such service. See below for the LP&E office nearest to you.**

## SAFETY IS YOUR CONCERN

U. S. companies spend billions of dollars each year on the direct and indirect costs of accidents. Dollar figures can't begin to reflect the pain and suffering of an injured person and his or her family. But they do give some indication of the multiple consequences of an accident... loss of time, interrupted productivity, damaged materials and equipment, possible legal action from government regulatory agencies, and increased insurance costs.

It makes good sense for both companies and their employees to actively participate in a sound accident prevention program. The success of such a program depends to a large extent on your commitment to safety procedures and accident prevention techniques. Safety is a management concern. Maybe we can help.

You may want to consider the following **"Safety Checkpoints"** as you evaluate your organization's safety activities:

**SELF–INSPECTION PROGRAM:**

- Do you conduct periodic surveys of premises, equipment and operations?

- Do you analyze each activity to determine inherent hazards?

- If you discover hazards, do you follow up with immediate corrective action?

- Do you monitor such action to make sure it is implemented and effective?

**PN T0 61 09 01**

AAI - 000200

**ACCIDENT INVESTIGATION:**

- Do you investigate each accident and find the cause?

- Do you take immediate steps to prevent a recurrence?

- Do you keep records of accident investigations and follow-up measures?

- Do you complete accident statistics and analyze trends?

**EDUCATION AND TRAINING:**

- Do you take the time to train each of your employees to perform tasks in a proper and safe manner?

- Do more-experienced employees receive training to correct any bad habits that developed over time?

- Do all employees understand that safety is an important part of their jobs

| Florida Loss Prevention & Engineering Offices | Orlando | 1000 Legion Place, P.O. Box 35555 Orlando, FL 32802-3555 (407) 649-2596 |
|---|---|---|

PN T0 61 09 01

AAI - 000201

# IMPORTANT INFORMATION REGARDING
# YOUR INSURANCE

In the event you need to contact someone about this insurance for any reason, please contact your agent. If you have additional questions you may contact the Travelers office nearest you at the following address and telephone number:

WASHINGTON, D.C. OFFICE
14048 Parkeast Circle
Chantilly, Virginia 20151
(703) 818-6632

RICHMOND OFFICE
300 Arboretum Place
Richmond, VA 23236
(804) 330-6666

Someone in Commercial Lines will be available at the above locations to assist you.

If you have been unable to contact or obtain satisfaction from Travelers or your agent, you may contact the Virginia State Corporation Commission's Bureau of Insurance at:

Property and Casualty Division
P.O. Box 1157
Richmond, VA 23218

In state, toll free: 1-800-552-7945
Out of state, toll free: 1-877-310-6560

Written correspondence is preferable so that a record of your inquiry is maintained. When contacting your agent, Travelers or the Bureau of Insurance, have your policy number available.

PN T1 01 01 04

AAI - 000202

# IMPORTANT INFORMATION FOR FLORIDA POLICYHOLDERS

Please review your policy carefully. Should you have any questions concerning coverages, billings, additions or deletions, please contact your Agent. Should you feel the need for additional information or wish to make a complaint, we offer the following number:

### FOR INFORMATION, OR TO MAKE A COMPLAINT, CALL:

### 1-860-277-0111

AAI - 000203



## COMMERCIAL EXCESS LIABILITY
## (UMBRELLA)
## INSURANCE POLICY

**A Custom Insurance Policy Prepared for:**

```
AMERICAN APPAREL, INC.
AND AS PER CG DO 74 04 93
747 WAREHOUSE STREET
BUILDING 4, 7TH FLOOR
LOS ANGELES            CA 90021
```

This policy consists of the policy cover, the Policy Declarations and the Policy Forms and endorsements listed in that declaration form.

In return for payment of the premium, The Travelers agrees with the Named Insured to provide the insurance afforded by this policy. That insurance will be provided by the company indicated as insuring company in the Declarations by the abbreviation of its name.

The companies listed below (each a stock company) have executed this policy, but it is valid only if countersigned on the Declarations by our authorized representative.

The Travelers Indemnity Company (IND)
Travelers Property Casualty Company of America (TIL)
The Travelers Indemnity Company of Connecticut (TCT)

General Counsel & Secretary

Chairman of the Board & Chief Executive Officer

(Rev. 02-04)

 **TRAVELERS**

One Tower Square, Hartford, Connecticut 06183

**POLICY DECLARATIONS**
**COMMERCIAL EXCESS LIABILITY**
**(UMBRELLA) INSURANCE POLICY**

**POLICY NO.:** YSM-CUP-4790A876-TIL-07
**ISSUE DATE:** 04-02-07

**INSURING COMPANY:**
TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

**1. NAMED INSURED AND MAILING ADDRESS:**
AMERICAN APPAREL, INC.
AND AS PER CG DO 74 04 93
747 WAREHOUSE STREET
BUILDING 4, 7TH FLOOR
LOS ANGELES          CA 90021

THIS POLICY DOES NOT
COVER LIABILITY
ARISING OUT OF
ASBESTOS MATERIAL
SEE ENDORSEMENT
UM 01 96 07 96

**2. THE NAMED INSURED IS A:**
[x] CORPORATION   [ ] SOLE PROPRIETOR   [ ] PARTNERSHIP OR JOINT VENTURE   [ ] OTHER

**3. POLICY PERIOD:** From 04-01-07 to 04-01-08 12:01 A.M. Standard Time at your mailing address.

**4. PREMIUM:**   $ 61,693   [x] Flat Charge   [ ] Adjustable (See premium schedule)

**5. LIMITS OF INSURANCE:**

| COVERAGES | | LIMITS OF LIABILITY |
|---|---|---|
| **AGGREGATE LIMITS OF LIABILITY** | 9,000,000 | **Products/Completed Operations Aggregate** |
| | 9,000,000 | **General Aggregate** |
| **COVERAGE A - Bodily Injury and Property Damage Liability** | 9,000,000 | **any one occurrence** subject to the Products/ Completed Operations and the General Aggregate Limits |
| **COVERAGE B - Personal and Advertising Injury Liability** | 9,000,000 | **any one person or organization** subject to the General Aggregate Limit of Liability |
| **RETAINED LIMIT** | 0 | **any one occurrence or offense** |

**6. SCHEDULE OF UNDERLYING INSURANCE:**

| POLICY | LIMITS (000 omitted) | COVERAGE | COMPANY |
|---|---|---|---|
| SEE ENDORSEMENT CG DO 23 04 96 | | | |

**7.** On the effective date shown in Item 3, the Commercial Excess Liability (Umbrella) Insurance Policy numbered above includes this Declarations Page and the Policy Jacket (Form UM 00 76 which contains the Nuclear Energy Liability Exclusion) and any endorsements listed hereafter:
SEE END. IL T8 01 01 01

**NAME AND ADDRESS OF AGENT OR BROKER:**

C M MEIERS COMPANY INC      VC547
21045 CALIFA ST #100
WOODLAND HILLS              CA 91367

**COUNTERSIGNED BY:**

_____
Authorized Representative

DATE: _____

CG TO 14 04 96
OFFICE: GLENDALE CA

Page 1 of 1

POLICY NUMBER: YSM-CUP-4790A876-TIL-07

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 04-02-07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NAMED INSURED

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

Item 1 of the Declarations is amended as follows:

AMERICAN APPAREL, INC.
AMERICAN APPAREL RETAIL, INC.
AMERICAN APPAREL DYEING & FINISHING, INC.
AMERICAN APPAREL 1090, INC.
KCL KNITTING, LLC

PRODUCER: C M MEIERS COMPANY INC                          OFFICE: 05C   GLENDALE CA

CG D0 74 04 93                                             Page   1 of  1

**POLICY NUMBER:** YSM-CUP-4790A876-TIL-07

**EFFECTIVE DATE:** 04-01-07

**ISSUE DATE:** 04-02-07

LISTING OF FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS

THIS LISTING SHOWS THE NUMBER OF FORMS, SCHEDULES AND ENDORSEMENTS
BY LINE OF BUSINESS.

```
CG T0 14 04 96    COML EXCESS LIABILITY (UMBRELLA) DEC
CG D0 74 04 93    NAMED INSURED
IL T8 01 01 01    FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS
```

UMBRELLA / EXCESS

```
CG D0 23 04 96    UNDERLYING POLICIES AND LIMITS END
UM 00 01 11 03    COML EXCESS LIAB (UMBRELLA) INSURANCE
UM 02 59 02 98    NOTICE OF OCCURRENCE
UM 03 81 01 03    CAP ON LOSSES FROM CERT ACTS OF TERRISM
UM 03 98 11 03    AMEND OF COV-ADV INJURY AND PROPERTY DMG
UM 00 94 08 86    AMENDMENT OF COVERAGE-NAMED INSURED
UM 01 52 11 03    EMPLOYEE BENEFITS LIABILITY
UM 02 87 10 96    REDUCED OR EXHAUSTED AGGREGATE LIMITS
UM 03 55 08 00    EXCESS, PERSONAL, ADV, WEB SITE INJ LIAB
UM 00 76 01 86    NUCLEAR ENERGY LIAB EXCL ENDT(BROAD FORM
UM 01 91 01 02    WAR EXCLUSION
UM 01 96 07 96    EXCLUSION-ASBESTOS
UM 02 03 07 96    EXCLUSION-INTERCOMPANY PRODUCTS SUITS
UM 02 12 07 02    EXCL-AIRCRAFT PRODUCTS AND GROUNDING
UM 02 13 11 03    EXCL-LIQUOR LEGAL LIAB EXCP FOR SCHD ACT
UM 03 76 07 02    WAR EXCLUSION - WASHINGTON
UM 04 15 01 04    EXCLUSION-UNSOLICITED COMMUNICATIONS
UM 01 09 11 03    CALIFORNIA MANDATORY ENDORSEMENT
UM 01 40 06 88    VERMONT CHANGES-POLLUTION
```

INTERLINE ENDORSEMENTS

```
IL T3 68 01 06    FEDERAL TERRORISM RISK INSURANCE ACT
```

AAI_000208

UMBRELLA

POLICY NUMBER: YSM-CUP-4790A876-TIL-07          ISSUE DATE: 04-02-07

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
# SCHEDULE OF UNDERLYING INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

Item 6 of the Declarations to include:

| POLICY | LIMITS (000 OMITTED) | COVERAGE | COMPANY |
|---|---|---|---|
| 810-5158B471-TIL-06<br>11/15/06-07 | 1000 CSL | BAP | TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA |
| WA-766D-064680-015 | 1000 EACH ACCIDENT<br>1000 POLICY LIMIT FOR DISEASE<br>1000 PER EMPLOYEE (DISEASE) | EMPLOYERS LIABILITY | LIBERTY MUTUAL |
| GB06100567 | 1000 EACH ACCIDENT | FOREIGN AUTO LIABILITY | ST PAUL FIRE AND MARINE INSURANCE COMPANY |

(If you have any employee exposure in the State of New York,
the Employers Liability Limits are applicable only to bodily injury to your
"non-subject employees" as defined under Rule VIII - Limits of Liability,
A.2., of the WC/EL Manual of the State of New York)

PRODUCER: C M MEIERS COMPANY INC          OFFICE:                    05C
CG D0 23 04 96                                        Page  1 of 1

# COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this insurance the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II – WHO IS AN IN-SURED**.

Other words and phrases that appear in quotation marks have special meaning. Refer **to SECTION V – DEFINI-TIONS**.

## SECTION I – COVERAGES

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; and COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY.**

**1. INSURING AGREEMENT.**

    **a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit" which the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies.

    This insurance applies to "bodily injury" or "property damage" only if:

      **(i)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place anywhere in the world;

      **(ii)** The "bodily injury" or "property damage" occurs during the policy period;

      **(iii)** Prior to the policy period, no insured listed under Paragraph **1. of SECTION II – WHO IS AN INSURED** and no employee authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized employee knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

This insurance applies to "personal injury" or "advertising injury" caused by an "offense" committed during the policy period, anywhere in the world.

    **b.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

    **c.** "Property damage" that is loss of use of tangible property that is not physically injured shall be deemed to occur at the time of the "occurrence" that caused it.

    **d.** The amount we will pay for damages is limited as described in **SECTION III – LIMITS OF INSURANCE**.

The following provisions apply only with respect to Parts **1.a.(i), (ii)** and **(iii)** above:

**1.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1. of Section II – Who Is An Insured** or any employee authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**2.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1. of SECTION II – WHO IS AN INSURED** or any employee authorized by you to give or receive notice of an "occurrence" or claim:

    **(a)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

UMBRELLA

(b) Receives a written or verbal demand or claim for damages because of "bodily injury" or "property damage"; or

(c) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**2.  DEFENSE OF CLAIMS OR SUITS.**

a.  We will have no duty to defend any claim or "suit" that any other insurer has a duty to defend. If we elect to join in the defense of such claims or "suits", we will pay all expenses we incur.

b.  We will have the right and duty to defend any "suit" for damages which are payable under Coverages **A** or **B** (including damages wholly or partly within the "retained limit") but which are not payable by a policy of "underlying insurance", or any other available insurance, because:

(1) Such damages are not covered; or

(2) The "underlying insurance" has been exhausted by the payment of claims.

c.  We may investigate and settle any claim or "suit" in **b.** above at our discretion.

d.  Our right and duty in **b.** above end when we have used up the "applicable limit of insurance" in the payment of judgments or settlements.

e.  We will pay, with respect to any claim or "suit" we defend in **b.** above:

(1) All expenses we incur.

(2) The cost of appeal bonds and bonds to release attachments, but only for bond amounts within the "applicable limit of insurance". We do not have to furnish these bonds.

(3) All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

(4) All costs taxed against the insured in the "suit".

(5) All interest on the full amount of any judgment that accrues after entry of the judgment and before we have:

(a) paid, or offered to pay; or

(b) deposited in court:

the part of the judgment that is within the "applicable limit of insurance".

(6) Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the "applicable limit of insurance", we will not pay any prejudgment interest based on that period of time after the offer.

These payments will not reduce the limits of insurance.

In any jurisdiction outside the United States of America (including its territories and possessions), Puerto Rico or Canada where we may be prevented by law or some other factor beyond our control from carrying out the agreements under **1. INSURING AGREEMENT** or **2. DEFENSE OF CLAIMS OR SUITS** above:

a.  You must arrange to investigate, defend or settle any claim or "suit".

b.  You will not make any settlement without our consent.

c.  We will pay expenses incurred with our consent.

**3.  EXCLUSIONS.**

This insurance does not apply to:

a.  **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b.  **"Advertising Injury" "Offenses"**

(1) **Breach of Contract**

"Advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in the course of advertising your goods, products or services.

(2) **Quality Or Performance Of Goods – Failure To Conform To Statements**

"Advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in the course of advertising your goods, products or services.

    Copyright, The Travelers Indemnity Company, 2003    UM 00 01 11 03

**(3) Wrong Description Of Prices**

"Advertising injury" arising out of the wrong description of the price of goods, products or services stated in the course of advertising your products, goods or services.

**c. Employment-Related Practices**

"Bodily injury" or "personal injury" to:

1. A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

2. The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal injury" to that person at whom any of the employment-related practices described in paragraphs **(a)**, **(b)** or **(c)** above is directed.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity; and, to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**d. Contractual Liability**

"Bodily injury", "property damage", "personal injury" or "advertising injury" for which the insured assumed liability under a contract or agreement. This exclusion does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" to which any policy of "underlying insurance" listed in the SCHEDULE OF UNDERLYING INSURANCE of the DECLARATIONS of this insurance, or any renewal or replacement thereof, applies or would apply but for the exhaustion of its limits of liability. Coverage provided will follow the same provisions, terms, definitions, exclusions, limitations and conditions of the policy(ies) of "underlying insurance" listed in the SCHEDULE OF UNDERLYING INSURANCE of the DECLARATIONS of this insurance.

**e. Workers Compensation And Similar Laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

**f. Pollution**

"Bodily injury", "property damage", "personal injury" or "advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants", or any loss, cost, expense or damages resulting therefrom, but this exclusion does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" to which any policy of "underlying insurance" listed in the SCHEDULE OF UNDERLYING INSURANCE of the DECLARATIONS of this insurance, or any renewal or replacement thereof, applies or would apply but for the exhaustion of its limits of liability. Coverage provided will follow the same provisions, terms, definitions, exclusions, limitations and conditions of the policy(ies) of "underlying insurance" listed in the SCHEDULE OF UNDERLYING INSURANCE of the DECLARATIONS of this insurance.

**g. Watercraft Or Aircraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, operation, use, including loading or unloading, or entrustment to others of any watercraft or any aircraft.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** Liability assumed under any contract or agreement for the ownership, maintenance or use of a watercraft;

**(3)** A watercraft over 50 feet in length which is chartered with crew by or on behalf of any insured;

**(4)** A watercraft less than 50 feet long which you own; or

**(5)** A watercraft less than 50 feet long which you do not own and is not being used to carry persons or property for a charge.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance,

UMBRELLA

use or entrustment to others of any watercraft or any aircraft that is owned or operated by or rented or loaned to any insured.

h. **"Personal Injury" Or "Advertising Injury" "Offenses"**

**(1) Knowing Violation Of Rights Of Another**

"Personal injury" or "advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal injury" or "advertising injury".

**(2) Material Published With Knowledge Of Falsity**

"Personal injury" or "advertising injury" arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**(3) Material Published Prior To Policy Period**

"Personal injury" or "advertising injury" arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period. All "personal injury" or "advertising injury" arising out of publication of the same or similar material subsequent to the beginning of the policy period is also excluded.

**(4) Criminal Acts**

"Personal injury" or "advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**(5) Contractual Liability**

"Personal injury" or "advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to "personal injury" or "advertising injury" to which any policy of "underlying insurance" listed in the SCHEDULE OF UNDERLYING INSURANCE of the DECLARATIONS of this insurance, or any renewal or replacement thereof, applies or would apply but for the exhaustion of its limits of liability. Coverage provided will follow the same provisions, terms, definitions, exclusions, limitations and conditions of the policy(ies) of

"underlying insurance" listed in the SCHEDULE OF UNDERLYING INSURANCE of the DECLARATIONS of this insurance.

**(6) Insureds In Media And Internet Type Businesses**

"Personal injury" or "advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **a.**, **b.** and **c.** of the "personal injury" definition in **SECTION V – DEFINITIONS**.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**(7) Electronic Chatrooms Or Bulletin Boards**

"Personal injury" or "advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**(8) Unauthorized Use Of Another's Name Or Product**

"Personal injury" or "advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

i. **Damage To Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

    Copyright, The Travelers Indemnity Company, 2003    **UM 00 01 11 03**

UMBRELLA

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**j. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**k. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**l. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**m. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**n. Uninsured Motorists, Underinsured Motorists, "Auto" No-Fault, Medical Expenses Benefits and Income Loss Benefits**

Any liability imposed on the insured, or the insured's insurer, under any of the following laws:

(1) Uninsured Motorists;

(2) Underinsured Motorists;

(3) "Auto" No-Fault Laws or other first party personal injury laws; or

(4) Medical Expense Benefits and Income Loss Benefits Laws of any applicable state or jurisdiction.

**o. Liquor Legal Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

AAI - 000214

UMBRELLA

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

This exclusion does not apply to "bodily injury" or "property damage" to which any policy of "underlying insurance" listed in the SCHEDULE OF UNDERLYING INSURANCE of the DECLARATIONS of this insurance, or any renewal or replacement thereof, applies or would apply but for the exhaustion of its limits of liability. Coverage provided will follow the same provisions, terms, definitions, exclusions, limitations and conditions of the policy(ies) of "underlying insurance" listed in the SCHEDULE OF UNDERLYING INSURANCE of the DECLARATIONS of this insurance.

## SECTION II – WHO IS AN INSURED.

1.  If you are designated in the Declarations as:

    a.  An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    b.  A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    c.  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    d.  An organization other than a partnership, joint venture or limited liability company, you are an insured.

    e.  A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2.  Each of the following is also an insured:

    a.  As respects the "auto hazard":

        (1) Anyone using an "auto" you own, hire or borrow including any person or organization legally responsible for such use provided it is with your permission; and

        (2) Any of your executive officers, directors, partners, employees or stockholders, operating an "auto" you do not own, hire or

borrow while it is being used in your business.

None of the following is an insured under **(1)** or **(2)** above:

(a) Any person employed by or engaged in the duties of an auto sales agency, repair shop, service station, storage garage or public parking place that you do not operate;

(b) The owner or lessee of any "auto" hired by or for you or loaned to you, and any agent or employee of such owner or lessee.

b.  Except as respects the "auto hazard":

    (1) Your executive officers, employees, directors or stockholders while acting within the scope of their duties; and

    (2) Any person or organization while acting as real estate manager for you.

c.  Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will be deemed to be a Named Insured. However, coverage does not apply to:

    (1) "Bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

    (2) "Personal injury" or "advertising injury" arising out of an "offense" committed before you acquired or formed the organization.

d.  Any person or organization having proper temporary custody of your property if you die, but only:

    (1) With respect to liability arising out of the maintenance or use of that property; and

    (2) Until your legal representative has been appointed.

e.  Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this insurance.

f.  Any other person or organization insured under any policy of the "underlying insurance" listed in the SCHEDULE OF UNDERLYING INSURANCE of the DECLARATIONS of this insurance for whom you have agreed in a written contract executed prior to loss to provide insurance. This insurance is subject to all

AAI-000215

the limitations upon coverage under such policy of "underlying insurance", and, the limits of insurance afforded to such person or organization will be:

(i)  The difference between the "underlying insurance" limits and the minimum limits of insurance which you agreed to provide; or

(ii)  The limits of insurance of this policy

whichever is less.

If the minimum limits of insurance you agreed to provide such person or organization in a written contract are wholly within the "underlying insurance", this policy shall not apply.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

No person is an insured as respects "bodily injury" to a fellow employee unless insurance for such liability is afforded by the "underlying insurance".

## SECTION III – LIMITS OF INSURANCE.

1.  The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a.  Insureds;

    b.  Claims made or "suits" brought; or

    c.  Persons or organizations making claims or bringing "suits".

2.  The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of injury and damage included in the "products-completed operations hazard".

3.  The General Aggregate Limit is the most we will pay for damages under Coverage **A** and Coverage **B**, except:

    a.  Damages because of injury and damage included in the "products-completed operations hazard"; and

    b.  Damages because of injury and damage included in the "auto hazard".

4.  Subject to **3.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

Non cumulation of Personal and Advertising Injury Limit – If "personal injury" and/or "advertising injury" is sustained by any one person or organization during the policy period and during the policy period of one or more prior and/or future policies that include a **COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE** policy for the insured issued by us or any affiliated insurance company, the amount we will pay is limited. This policy's Personal and Advertising Injury Limit will be reduced by the amount of each payment made by us and any affiliated insurance company under the other policies because of such "personal injury" and/or "advertising injury".

5.  Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of damages under Coverage **A** because of all "bodily injury" and "property damage" arising out of any one "occurrence".

    Non cumulation of Each Occurrence Limit – If one "occurrence" causes "bodily injury" and/or "property damage" during the policy period and during the policy period of one or more prior and/or future policies that include a **COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE** policy for the insured issued by us or any affiliated insurance company, the amount we will pay is limited. This policy's Each Occurrence Limit will be reduced by the amount of each payment made by us and any affiliated insurance company under the other policies because of such "occurrence".

To determine the limit of our liability, all "bodily injury" and "property damage" arising out of continuous or repeated exposure to the same general conditions shall be considered one "occurrence".

The limits of this insurance apply separately to each consecutive annual period and to any remaining period of less than 12 months. The policy period begins with the effective date shown in the Declarations. If the policy period is extended after issuance for an additional period of less than 12 months, the additional period will be deemed part of the last preceding period.

## SECTION IV – CONDITIONS.

1.  **APPEALS.**

    a.  If the insured or the insured's "underlying insurer" elects not to appeal a judgment which exceeds the "applicable underlying limit", we may do so.

    b.  If we do, we will pay all costs of the appeal. We will also pay all costs on appeals related

AAI - 000216

UMBRELLA

to the defense of the insured as provided in **SECTION 1, 2. DEFENSE OF CLAIMS OR SUITS**. These sums are in addition to the "applicable limit of insurance". In no event shall our liability for "ultimate net loss" exceed the "applicable limit of insurance".

**2. BANKRUPTCY.**

   **a.** Bankruptcy or insolvency of the insured or the insured's estate will not relieve us of our obligations under this insurance.

   **b.** Bankruptcy or insolvency of the "underlying insurer" will not relieve us of our obligations under this insurance.

However, this insurance will not replace the "underlying insurance" in event of bankruptcy or insolvency of the "underlying insurer". This insurance will apply as if the "underlying insurance" were in full effect.

**3. CANCELLATION.**

   **a.** You may cancel this insurance by mailing or delivering to us advance written notice of cancellation.

   **b.** We may cancel this insurance by mailing or delivering to you written notice of cancellation at least:

     **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

     **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

   **c.** We will mail or deliver our notice to your last mailing address known to us.

   **d.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

   **e.** If this insurance is cancelled, we will send you any premium refund due. If we cancel, the refund will be pro rata. If you cancel, the refund will be pro rata less 10% of the pro rata unearned premium. The cancellation will be effective even if we have not made or offered a refund.

   **f.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**4. CHANGES.**

This contract contains all the agreements between you and us concerning the insurance afforded. No change can be made in the terms of this insurance except with our consent. The terms of this insurance can be amended or waived only by endorsement issued by us and made a part of this insurance.

**5. DUTIES IN THE EVENT OF OCCURRENCE OR OFFENSE, CLAIM OR SUIT.**

   **a.** You must see to it that we are notified promptly of an "occurrence" or an "offense" which may result in a claim under this insurance. Notice should include:

     **(1)** How, when and where the "occurrence" or "offense" took place; and

     **(2)** The names and addresses of any injured persons and witnesses.

   **b.** If a claim is made or "suit" is brought against any insured which may result in a claim against this insurance, you must see to it that we receive prompt written notice of the claim or "suit".

   **c.** The insured must:

     **(1)** Cooperate with the "underlying insurers";

     **(2)** Comply with the terms of the "underlying insurance"; and

     **(3)** Pursue all rights of contribution or indemnity against any person or organization who may be liable to the insured because of "bodily injury", "property damage", "personal injury" or "advertising injury" with respect to which insurance is provided under this or any policy of "underlying insurance".

   **d.** When we believe that a claim may exceed the "underlying insurance", we may join with the insured and the "underlying insurer" in the investigation, settlement and defense of all claims and "suits" in connection with such "occurrence" or "offense". In such event, the insured must cooperate with us.

**6. EXAMINATION OF YOUR BOOKS AND RECORDS.**

We may examine and audit your books and records as they relate to this insurance:

   **a.** At any time during the policy period;

   **b.** Up to three years afterward; or

   **c.** Within one year after final settlement of all claims under this insurance.

**7. INSPECTIONS AND SURVEYS.**

We have the right but are not obligated to:

Copyright, The Travelers Indemnity Company, 2003     UM 00 01 11 03

AAI - 000217

UMBRELLA

a. Make inspections and surveys at any time;

b. Give you reports on the conditions we find; and

c. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. We do not warrant that conditions are safe or healthful; or comply with laws, regulations, codes or standards.

**8. LEGAL ACTION AGAINST US.**

No person or organization has a right under this insurance:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this insurance unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured. We will not be liable for damages that are not payable under the terms of this insurance; or are in excess of the "applicable limit of insurance".

An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**9. MAINTENANCE OF UNDERLYING INSURANCE.**

The insurance afforded by each policy in the schedule of "underlying insurance" in the Declarations will be maintained for the full term of this insurance. This provision does not apply to the reduction of the aggregate limit or limits due to payment of judgments or settlements for "bodily injury", "personal injury", "property damage" or "advertising injury". As these policies expire, you will renew them at limits at least equal to the expiring limits of insurance.

If you fail to comply with the above, this insurance is not invalidated. However, in the event of a loss, we will pay only to the extent that we would have paid had you so complied.

You must give us a written notice of any change in the "underlying insurance" as respects:

a. Coverage;

b. Limits of insurance;

c. Termination of any coverage; or

d. Exhaustion of aggregate limits.

**10. OTHER INSURANCE.**

This insurance is excess over any other valid and collectible insurance whether such other insurance is stated to be primary, contributing, excess, contingent or otherwise. This provision does not apply to a policy bought specifically to apply in excess of this insurance.

**11. OUR RIGHT TO RECOVER FROM OTHERS.**

If we make a payment under this insurance, the insured will assist us and the "underlying insurer" in recovering what we paid by using the insured's rights of recovery. Reimbursement will be made in the following order:

a. First, to any interest (including the insured) who has paid any amount in excess of the limits of this insurance;

b. Next to us; and

c. Then to any interest (including the insured and the "underlying insurer") as are entitled to claim the remainder, if any.

A different order may apply if agreed upon by all interests. Expenses incurred in the process of recovery will be divided among all interests according to the ratio of their respective recoveries.

**12. PREMIUM.**

a. You are responsible for the payment of all premiums and will be the payee for any return premiums.

b. If the premium is a flat charge, it is not subject to adjustment except as provided in **d.** below.

c. If the premium is other than a flat charge, it is an advance premium only. The earned premium will be computed at the end of each year in which this insurance is in force at the rate shown in the Declarations, subject to the Minimum Annual Premium.

d. Additional premium may become payable when coverage is provided for additional insureds and named insureds under the provisions of **SECTION II – 2.c.** and **f.**

**13. PREMIUM AUDIT.**

a. You must keep records of the information we need for premium computation, and send us copies at such times as we may request.

AAI - 000218

UMBRELLA

**b.** At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured.

**c.** The due date for audit and retrospective premiums is the date as shown as the due date on the bill.

**d.** If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to you subject to the minimum premiums.

**14. REPRESENTATION.**

By accepting this insurance, you agree:

**a.** The statements in the Declarations and any subsequent notice relating to "underlying insurance" are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this insurance in reliance upon your representations.

**15. SEPARATION OF INSUREDS.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to you in this insurance, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**16. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS INSURANCE.**

Your rights and duties under this insurance may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**17. WHEN LOSS IS PAYABLE.**

If we are liable under this insurance, we will pay for "ultimate net loss" after:

**a. (1)** The insured's liability is established by court decision; or

**(2)** There is a written agreement between the claimant, the insured, any "underlying insurer" and us; and

**b.** The amount of the "applicable underlying limit" is paid by or on behalf of the insured.

We will pay all claims within thirty days provided all terms of this insurance are met.

The insured will reimburse us for any payment we make for damages which are within the "retained limit".

**18. TITLES OF PARAGRAPHS.**

The titles of paragraphs of this policy and any endorsements attached to this policy are inserted solely for convenience of reference and are not to be deemed in any way to limit or affect the provisions to which they relate.

**19. CURRENCY**

Loss payments and expense reimbursements will be in the same currency as the currency of the Limits of Insurance stated in the Declarations. At our sole option, we may agree to pay loss or reimburse expense under this policy in another currency. Any necessary currency conversion shall be calculated based on the rate of exchange published in the next Wall Street Journal subsequent to the date of judgment, settlement or agreement.

**SECTION V – DEFINITIONS.**

**1.** "Advertising injury" means injury arising out of one or more of the following "offenses":

**a.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services provided that claim is made or "suit" is brought by a person or organization that claims to have been slandered or libeled, or whose goods, products or services have allegedly been disparaged;

**b.** Oral or written publication of material that appropriates a person's likeness, unreasonably places a person in a false light or gives unreasonable publicity to a person's private life; or

**c.** Infringement of copyright, title or slogan, provided that claim is made or "suit" is brought by a person or organization claiming ownership of such copyright, title or slogan.

Such "offenses" must be committed in the course of advertising your goods or products.

**2.** "Applicable limit of insurance" means the maximum amount we will pay as damages in accor-

AAI-000219

dance with **SECTION III – LIMITS OF INSUR-ANCE.**

3. "Applicable underlying limit" means:

   a. If the policies of "underlying insurance" apply to the "occurrence" or "offense", the greater of:

      (1) The amount of insurance stated in the policies of "underlying insurance" in the Declarations or any other available insurance less the amount by which any aggregate limit so stated has been reduced solely due to payment of claims; or

      (2) The "retained limit" shown in the Declarations; or

   b. If the policies of "underlying insurance" do not apply to the "occurrence" or "offense", the amount stated in the Declarations as the "retained limit".

   The limits of insurance in any policy of "underlying insurance" will apply even if:

      (i) The "underlying insurer" claims the insured failed to comply with any condition of the policy; or

      (ii) The "underlying insurer" becomes bankrupt or insolvent.

4. "Auto" means a land motor vehicle, trailer or semi-trailer.

5. "Auto hazard" means all "bodily injury" and "property damage" for which liability insurance is afforded under the terms, other than limits of insurance, of the auto policy of "underlying insurance".

6. "Bodily injury" means bodily injury, shock, fright, mental injury, disability, mental anguish, humiliation, sickness or disease sustained by a person, including death resulting from any of these at any time.

7. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work"; or your fulfilling the terms of the contract or agreement.

8. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

9. "Offense" means any of the offenses listed in the definition of "personal injury" or "advertising injury".

10. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is performed by or on behalf of the owner, landlord or lessor of that room, dwelling or premises;

    d. Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that claim is made or "suit" is brought by a person or organization that claims to have been slandered or libeled, or whose goods, products or services have allegedly been disparaged; or

    e. Oral, written or electronic publication of material that appropriates a person's likeness, unreasonably places a person in a false light or gives unreasonable publicity to a person's private life.

    Such "offenses" must arise out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you.

11. "Pollutants" means one or more solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

12. a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

       (1) Products that are still in your physical possession; or

AAI - 000220

UMBRELLA

(2) Work that has not yet been completed or abandoned.

b. "Your work" will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

c. "Products-completed operations hazard" does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the loading or unloading of that vehicle by any insured; or

(2) The existence of tools, uninstalled equipment or abandoned or unused materials.

13. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

"Property damage" does not include "electronic media and records".

As used in this definition, "electronic media and records" means:

(1) Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

(2) Data stored on such media; or

(3) Programming records for electronic data processing or electronically controlled equipment.

14. "Retained limit" is the sum stated in the Declarations as such. If the policies of "underlying insurance" do not apply to the "occurrence" or "offense", the insured shall retain this amount as self insurance with respect to:

a. "Bodily injury" or "property damage" caused by each "occurrence"; or

b. "Personal injury" or "advertising injury" sustained by any one person or organization and caused by an "offense".

15. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding alleging such damages to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

16. "Ultimate net loss" means the sum actually paid or payable due to a claim for which the insured is liable either by a settlement to which we agreed or a final judgment. Such sum will include proper adjustments for recoveries and salvage.

17. "Underlying insurance" means the policies listed in the Schedule of Underlying Insurance and includes:

a. Any renewal or replacement of such policies; and

b. Any other insurance available to the insured.

18. "Underlying insurer" means any insurer which provides a policy listed in the Schedule of Underlying Insurance or any other insurance available to the insured.

19. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

 Copyright, The Travelers Indemnity Company, 2003 **UM 00 01 11 03**

AAI - 000221

UMBRELLA

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

20. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

AAI - 000222

UMBRELLA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# KNOWLEDGE AND NOTICE OF OCCURRENCE OR OFFENSE UNINTENTIONAL OMISSION

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

**PROVISIONS**

**1. KNOWLEDGE AND NOTICE OF OCCURRENCE OR OFFENSE**

The following is added to SECTION IV – CONDITIONS, Part 5. DUTIES IN THE EVENT OF OCCURRENCE OR OFFENSE, CLAIM OR SUIT:

**e.** Notice of an "occurrence" or of an "offense" which may result in a claim under this insurance shall be given as soon as practicable after knowledge of the "occurrence" or "offense" has been reported to you, one of your executive officers (if you are a corporation), one of your partners (if you are a partnership), one of your managers (if you are a limited liability company), or an employee (such as an insurance, loss control or risk manager or administrator) designated by you to give such notice.

Knowledge by other employee(s) of an "occurrence" or of an "offense" does not imply that you also have such knowledge.

**f.** Notice shall be deemed prompt if given in good faith as soon as practicable to your workers' compensation company. This applies only if you subsequently give notice to us as soon as practicable after you, one of your "ex-ecutive officers" (if you are a corporation), one of your partners (if you are a partnership), one of your managers (if you are a limited liability company), or an "employee" (such as an insurance, loss control or risk manager or administrator) designated by you to give such notice discovers that the "occurrence", offense" or claim may involve this policy.

**g.** However, this Provision 1. does not apply as respects the specific number of days within which you are required to notify us in writing of the abrupt commencement of a discharge, release or escape of "pollutants" which causes "bodily injury" or "property damage" which may otherwise be covered under this policy, or, any applicable policy of "underlying insurance".

**2. UNINTENTIONAL OMISSION**

The following is added to SECTION IV – CONDITIONS, Part 14. REPRESENTATION:

The unintentional omission of, or unintentional error in, any information by you shall not prejudice your rights under this insurance. However, this Provision 2. does not affect our right to collect additional premium or to exercise our right of cancellation or nonrenewal.

**UM 02 59 02 98**    Copyright, Travelers Indemnity Company, 1998    Page 1 of 1

AAI - 000223

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

AAI 000224

UMBRELLA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF COVERAGE – ADVERTISING INJURY AND PROPERTY DAMAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

**PROVISIONS:**

A. Part **b.(1)** of Paragraph **3. EXCLUSIONS of SECTION I – COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; and COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY** is deleted and replaced by the following:

(This insurance does not apply to:)

b. "Advertising Injury" "Offenses"

(1) "Advertising injury" arising out of a breach of contract.

B. The definition of "property damage" in **SECTION V – DEFINITIONS** is deleted and replaced by the following:

13. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

"Property damage" does not include loss of or damage to "electronic media and records".

As used in this definition, "electronic media and records" means:

(1) Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

(2) Data stored on such media; or

(3) Programming records for electronic data processing or electronically controlled equipment.

AAI - 000225

UMBRELLA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF COVERAGE — NAMED INSURED

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

The second paragraph of this insurance is replaced by:

Throughout this insurance the words "you" and "your" refer to the Named Insured shown in the Declarations and any subsidiary thereof. The words "we", "us" and "our" refer to the Company providing this insurance.

AAI - 000226

UMBRELLA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFITS LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

1. This insurance applies to damages due to any negligent act, error or omission by you or any person for whose acts you are legally responsible in the administration or management of public employee benefits or private employee benefits, but, only if you have a policy of "underlying insurance" listed in the SCHEDULE OF UNDERLYING INSURANCE of the DECLARATIONS of this insurance, or any renewal or replacement thereof, which provides coverage for such damages or would provide coverage for such damages but for the exhaustion of its limits of liability. Coverage provided will follow the same provisions, terms, definitions, exclusions, limitations and conditions of the policy(ies) of "underlying insurance" listed in the SCHEDULE OF UNDERLYING INSURANCE of the DECLARATIONS of this insurance.

2. With respect to the insurance provided in **1.** above, **SECTION III – LIMITS OF INSURANCE** is amended as follows:

   a. Subject to all the provisions of **SECTION III – LIMITS OF INSURANCE** of the Umbrella policy, the following also applies:

      (1) As respects the insurance provided by this endorsement, the Limit of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

      (a) insureds; or

      (b) claims made or "suits" brought.

      (2) The General Aggregate Limit shown in the Umbrella policy Declarations also applies to this insurance and is the most we will pay for all damages:

      (a) under this insurance and Coverage A and Coverage B, except:

          (i) damages because of injury and damage included in the "products-completed operations hazard"; and

          (ii) damages because of injury and damage included in the "auto hazard".

      (b) due to negligent acts, errors or omissions.

      (3) Subject to **(2)** above the any one occurrence limit shown in the Umbrella policy Declarations is the most we will pay for all damages to any one employee including dependents and beneficiaries.

AAI - 000227

UMBRELLA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# REDUCED OR EXHAUSTED AGGREGATE LIMITS

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

You represent that the "underlying insurance" aggregate limits, as shown in Item 6. of the Declarations, have not been reduced or exhausted by the payment of claims as of the effective date of this policy, and agree that only "bodily injury", "property damage", "personal injury" or "advertising injury" taking place during the term of this policy will be considered in determining the extent to which an "underlying insurance" aggregate limit has been reduced or exhausted.

**UM 02 87 10 96**        Copyright, The Travelers Indemnity Company, 1996        Page 1 of 1

AAI - 000228

UMBRELLA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCESS PERSONAL, ADVERTISING AND WEB SITE INJURY LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

Only as respects the insurance provided by this endorsement, none of the insuring agreements, terms, definitions or exclusions of the policy to which this endorsement is attached apply, except for **SECTION IV – CONDITIONS.**

**SECTION I – INSURING AGREEMENT**

1.  We will pay on behalf of the insured those sums, in excess of the amount payable under the terms of any Personal, Advertising and Web Site Injury Liability Insurance included in the "underlying insurance", that the insured becomes legally obligated to pay as damages because of:

    **a.**  "Personal injury" and "advertising injury"; and,

    **b.**  "Web site injury" caused by an offense committed in the course of the visual or audio presentation of material on "your web site" or in the numerical expression of computer code used to enable "your web site";

    provided that the Personal, Advertising and Web Site Injury Liability Insurance applies or would apply except for the exhaustion of its "underlying personal, advertising or web site injury liability limit".

2.  The amount we will pay is limited as described in **SECTION III – LIMITS OF INSURANCE** in this endorsement.

3.  This insurance is subject to the same insuring agreements, terms, definitions, exclusions and conditions as any Personal, Advertising and Web Site Injury Liability Insurance included in the "underlying insurance", except for the provisions of this endorsement.

**SECTION II – WHO IS AN INSURED**

Any person or organization qualifying as an insured subject to the terms and provisions of any Personal, Advertising and Web Site Injury Liability Insurance included in the "underlying insurance" is an insured under the insurance provided by this endorsement.

**SECTION III – LIMITS OF INSURANCE**

1.  As respects the insurance provided by this endorsement, the Limit of Insurance shown in the Declarations of the policy to which this endorsement is attached and the rules below fix the most we will pay regardless of the number of:

    **a.**  Insureds;

    **b.**  Claims made or "suits" brought; or

    **c.**  Persons or organizations making claims or bringing "suits".

2.  The General Aggregate Limit shown in the Declarations of the policy to which this endorsement is attached is the most we will pay for all sums payable under this endorsement.

    The sum of all payments made under this endorsement and all payments made under the policy to which it is attached shall not exceed the General Aggregate Limit shown on the Declarations of the policy to which this endorsement is attached.

3.  Subject to **2.** above, the Personal, Advertising and Web Site Injury Limit is the most we will pay under COVERAGE B for the sum of all damages because of all "personal injury", all "advertising injury" and all "web site injury" sustained by any one person or organization.

**SECTION IV – MAINTENANCE OF UNDERLYING PERSONAL, ADVERTISING AND WEB SITE INJURY LIABILITY INSURANCE**

The insurance afforded by the Personal, Advertising and Web Site Injury Liability insurance included in the "underlying insurance" in the Declarations of the policy to which this endorsement is attached will be maintained for the full term of this endorsement. This provision does not apply to the reduction of the "underlying personal, advertising and web site injury liability limit" due to payment of claims or "suits" arising out of damages. As coverage for Personal, Advertising and Web Site Injury Liability insurance included in the "underlying insurance" expires, you

AAI - 000229

UMBRELLA

will renew it at limits at least equal to the expiring limits of insurance.

If you fail to comply with the above, this insurance is not invalidated. However, in the event of a loss, we will pay only to the extent that we would have paid had you so complied.

## SECTION V – CONDITIONS

Any references to "advertising injury" or "personal injury" throughout **SECTION IV – CONDITIONS** of the policy to which this endorsement is attached, will have the same meaning as defined below in **SECTION VI – DEFINITIONS** of this endorsement.

## SECTION VI – DEFINITIONS

1. "Advertising injury" has the same meaning as defined in any Personal, Advertising and Web Site Injury Liability insurance included in the "underlying insurance" of policies listed in the Schedule of Underlying Insurance on the policy to which this endorsement is attached.

2. "Personal injury" has the same meaning as defined in any Personal, Advertising and Web Site Injury Liability insurance included in the "underlying insurance" of policies listed in the Schedule of Underlying Insurance on the policy to which this endorsement is attached.

3. "Suit" has the same meaning as defined in any Personal, Advertising and Web Site Injury Liability insurance included in the "underlying insurance" of policies listed in the Schedule of Underlying Insurance on the policy to which this endorsement is attached.

4. "Underlying insurance" means the policy(ies) listed in the Schedule of Underlying Insurance

on the policy to which this endorsement is attached, and includes any renewal or replacement of such policy(ies).

5. "Underlying insurer" means any insurer which provides a policy(ies) listed in the Schedule of Underlying Insurance on the policy to which this endorsement is attached.

6. "Underlying personal, advertising and web site injury liability limit" means the amount of insurance stated in the "underlying insurance" in the Declarations of the policy to which this endorsement is attached, less the amount by which any aggregate limit so stated has been reduced solely due to payment of claims.

   The limits of insurance in any policy of "underlying insurance" will apply even if:

   a. The "underlying insurer" claims the insured failed to comply with any condition of the policy; or

   b. The "underlying insurer" becomes bankrupt or insolvent.

7. "Your web site" has the same meaning as defined in any Personal, Advertising and Web Site Injury Liability insurance included in the "underlying insurance" of policies listed in the Schedule of Underlying Insurance on the policy to which this endorsement is attached.

8. "Web site injury" has the same meaning as defined in any Personal, Advertising and Web Site Injury Liability insurance included in the "underlying insurance" of policies listed in the Schedule of Underlying Insurance on the policy to which this endorsement is attached.

     Copyright, The Travelers Indemnity Company, 2000     **UM 03 55 08 00**

AAI - 000230

UMBRELLA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM)

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

1. The insurance does not apply:

   a. Under any Liability Coverage, to "bodily injury"or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   b. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   c. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" include radioactive, toxic or explosive properties;

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material";

   "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

   "Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

   "Nuclear facility" means:

   a. Any "nuclear reactor";

   b. Any equipment or device designed or used for (1) separating the isotopes of uranium or pluto-

A A I - 000231

UMBRELLA

nium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste";

c. Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

d. Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

Copyright, The Travelers Indemnity Company

UM 00 76 01 86

AAI - 000232

UMBRELLA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAR EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

The following exclusion is added to Paragraph **3., EXCLUSIONS** of **SECTION I – COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; and COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY:**

**3. Exclusions**

This insurance does not apply to:

**War**

"Bodily injury", "property damage", "personal injury" or "advertising injury" arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

AAI - 000233

UMBRELLA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION — ASBESTOS

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of the actual or alleged presence or actual, alleged or threatened dispersal of asbestos, asbestos fibers or products containing asbestos, provided that the injury or damage is caused or contributed to by the hazardous properties of asbestos. This includes:

a. Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above; and

b. Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage.

AAI-000234

UMBRELLA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION—INTERCOMPANY PRODUCTS SUITS

This endorsement modifies insurance provided under the following:

    COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

This insurance does not apply to any claim for damages by any Named Insured against another Named Insured because of "bodily injury" or "property damage" arising out of "your products" and included within the "products-completed operations hazard."

AAI - 000235

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION — AIRCRAFT PRODUCTS AND GROUNDING

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

This insurance does not apply to "bodily injury" or "property damage" included within the "products-completed operations hazard" and arising out of any "aircraft product" or the "grounding" of any aircraft.

"Aircraft product" means:

1. Aircraft (including missile or spacecraft, and any ground support or control equipment used therewith); and

2. Any of "your products" manufactured for, in connection with, or incorporated into aircraft, aircraft parts, aircraft equipment or aircraft accessories, including, but not limited to, ground handling tools and equipment; and

3. Any of "your products" used at an airport for the purpose of guidance, navigation or direction of aircraft; and

4. Training aids, manuals, blueprints, engineering or other data or advice, and services and labor relating to such aircraft, articles or products.

"Grounding" means the withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft, by reason of the existence of or alleged or suspected existence of any defect, fault or condition in such aircraft or any part therefore sold, handled or distributed by the insured or manufactured, assembled or processed by any other person or organization according to specifications, plans, suggestions, orders, or drawings of the insured or with tools, machinery or other equipment furnished to such persons or organizations by the insured, whether such aircraft so withdrawn are owned or operated by the same or different persons, organizations or corporations.

AAI - 000236

POLICY NUMBER: YSM-CUP-4790A876-TIL-07

UMBRELLA
ISSUE DATE: 04-02-07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – LIQUOR LEGAL LIABILITY – EXCEPTION FOR SCHEDULED ACTIVITIES

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

## SCHEDULE

**Description of Activity(ies)**

ALL ACTIVITIES WHICH DO NOT GENERATE
REVENUE TO ANY INSURED

Exclusion **3.o. Liquor Legal Liability** of **SECTION I – COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; and COVERAGE B. PERSONAL INJURY AND AD-VERTISING INJURY LIABILITY** is deleted and replaced by the following:

(This insurance does not apply to:)

**o. Liquor Legal Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

1. Causing or contributing to the intoxication of any person;

2. The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3. Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you:

1. Manufacture, sell or distribute alcoholic beverages;

2. Serve or furnish alcoholic beverages for a charge whether or not such activity:

   **(a)** Requires a license;

   **(b)** Is for the purpose of financial gain or livelihood, or

3. Serve or furnish alcoholic beverages without a charge, if a license is required for such activity.

However, this exclusion does not apply to "bodily injury" or "property damage" arising out of the serving or furnishing of alcoholic beverages at the specific activity(ies) described above.

AAI - 000237

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAR EXCLUSION - WASHINGTON

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

The following exclusion is added to Paragraph **3.**, **EXCLUSIONS** of **SECTION I – COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; and COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY:**

**3. Exclusions**

This insurance does not apply to:

**War**

"Bodily injury", "property damage", "personal injury" or "advertising injury" arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

 Copyright, The Travelers Indemnity Company, 2002

AAI - 000238

UMBRELLA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – UNSOLICITED COMMUNICATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

This insurance does not apply to any injury or damage arising out of unsolicited communications by or on behalf of any insured. Unsolicited communications means any form of communication, including but not limited to facsimile, electronic mail, posted mail or telephone, in which the recipient has not specifically requested the communication. Unsolicited communications also include but are not limited to communications which are made or allegedly made in violation of the Telephone Consumer Protection Act and any amendments, and/or local or state statutes that bar, prohibit or penalize such communications.



UMBRELLA

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALIFORNIA MANDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

1. **SECTION IV - CONDITIONS**, Part **3.b.** is amended by adding the following:

   **INSURANCE IN EFFECT FOR 60 DAYS OR LESS**

   If this insurance has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this insurance by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

   **a.** 10 days before the effective date of cancellation if we cancel for:

   **(1)** Nonpayment of premium; or

   **(2)** Discovery of fraud or material misrepresentation by:

   **(a)** Any insured or his or her representative in obtaining this insurance; or

   **(b)** You or your representative in pursuing a claim under this policy.

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

   **INSURANCE IN EFFECT FOR MORE THAN 60 DAYS**

   **(1)** If this insurance has been in effect for more than 60 days or is a renewal, we may cancel this insurance only upon the occurrence, after the effective date of the insurance, of one or more of the following:

   **(a)** Nonpayment of premium, including payment due on prior insurance we issued and due during the current insurance term covering the same risks.

   **(b)** Discovery of fraud or material misrepresentation by:

   **i.** Any insured or his or her representative in obtaining this insurance; or

   **ii.** You or your representative in pursuing a claim under this insurance.

   **(c)** A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

   **(d)** Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

   **(e)** Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of insurance issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

   **(f)** A determination by the Commissioner of Insurance that the:

   **i.** Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

   **ii.** Continuation of the insurance would:

   **(i)** Place us in violation of California law or the laws of the state where we are domiciled, or

   **(ii)** Threaten our solvency.

   **(g)** A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the insurance.

   **(2)** We will mail or deliver advance notice of cancellation, stating the reason for cancellation, to you, and to the producer of record, at least:

---

**UM 01 09 11 03**      Copyright, The Travelers Indemnity Company, 2003      Page 1 of 2

UMBRELLA

    **a.** 10 days before the effective date of cancellation if we cancel for a reason listed in paragraph **(1) (a)** or **(b).**

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason listed in paragraph **(1).**

**2.** The following is added to **SECTION IV - CONDITIONS** and supersedes any other provisions to the contrary:

**WHEN WE DO NOT RENEW**

    **a.** Subject to the provisions of paragraphs **b.** and **c.** below, if we elect not to renew this insurance, we will mail or deliver written notice stating the reason for nonrenewal to you and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

    **b.** We will mail or deliver our notice to you, and the producer of record, at the mailing address shown in the Declarations.

    **c.** We are not required to send notice of non-renewal in the following situations:

        **(1)** If the transfer or renewal of insurance, without any changes in terms, conditions, or rates, is between us and a member of our insurance group.

        **(2)** If the insurance has been extended for 90 days or less, provided that notice has been given in accordance with paragraph **a.**

        **(3)** If you have obtained replacement coverage, or if you have agreed, in writing, within 60 days of the termination of the insurance, to obtain that coverage.

        **(4)** If the insurance is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

        **(5)** If you request a change in the terms or conditions or risks covered by the insurance within 60 days of the end of the insurance period.

        **(6)** If we have made a written offer to you, in accordance with the timeframes shown in paragraph **a.**, to renew the insurance under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

Copyright, The Travelers Indemnity Company, 2003
UM 01 09 11 03

AAI - 000241

UMBRELLA

POLICY NUMBER: YSM-CUP-4790A876-TIL-07

ISSUE DATE: 04-02-07

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# VERMONT CHANGES — POLLUTION

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

### SCHEDULE

**POLLUTION LIABILITY AGGREGATE LIMIT**

15,000

**A.** The following is added to COVERAGES (Section 1): COVERAGE C. POLLUTION BODILY INJURY AND PROPERTY DAMAGE

   **1. INSURING AGREEMENT**

      **a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit" which the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" included within the "pollution liability hazard" to which this insurance applies. This insurance applies only to:

        **(1)** "Bodily injury or property damage

          **(a)** Occurring during the policy period; and

          **(b)** Caused by an "occurrence."

      **b.** This insurance applies to "bodily injury" and "property damage" only if a claim for damages because of the "bodily injury" or "property damage" is first made against any insured during the policy period.

        **(1)** A claim by a person or organization seeking damages will be deemed to have been made when notice of such claim is received and recorded by an insured or by us, whichever comes first.

        **(2)** All claims for damages because of "bodily injury" to the same person including damages claimed by any person or organization for care, loss of services, or death resulting at any time from the "bodily injury," will be deemed to have been made at the time the first of those claims is made against any insured.

        **(3)** All claims for damages because of "property damage" causing loss to the same person or organization as a result of an "occurrence" will be deemed to have been made at the time the first of those claims is made against any insured.

        **(4)** All claims for injury or damage arising out of a discharge, release or escape of pollutants, including all injury or damage arising out of all subsequent exposure of persons and property to such pollutants, shall be deemed to have been made at the time the first of those claims is made against any insured.

      **c.** The amount we will pay for damages is limited as described in SECTION III – **LIMITS OF INSURANCE.**

   **2. DEFENSE OF CLAIMS OR SUITS**

      **a.** We will have no duty to defend any claim or "suit" that any other insurer has a duty to defend. If we elect to join in the defense of such claims or "suits," we will pay all expenses we incur.

      **b.** We will have the right and duty to defend any "suit" for damages which are payable under Coverage C (including damages wholly or partly within the "retained limit") but which are not payable by a policy of "underlying insurance," or any other available insurance, because:

        **(1)** Such damages are not covered; or

        **(2)** The "underlying insurance" has been exhausted by the payment of claims.

      **c.** We may investigate and settle any claim or "suit" in **b.** above at our discretion.

      **d.** Our right and duty in b. above end when we have used up the Pollution Liability Aggregate Limit payment of judgments or settlements.

 Copyright, The Travelers Indemnity Company.

UMBRELLA

**e.** We will pay, with respect to any claim or "suit" we defend in **b.** above:

    **(1)** All expenses we incur.

    **(2)** The cost of appeal bonds and bonds to release attachments, but only for bond amounts within the Pollution Liability Aggregate Limit. We do not have to furnish these bonds.

    **(3)** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $100 a day because of time off from work.

    **(4)** All costs taxed against the insured in the "suit."

    **(5)** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have:

        **(a)** paid, or offered to pay; or

        **(b)** deposited in court;

        the part of the judgment that is within the "applicable limit of insurance."

These payments will not reduce the limits of insurance.

In any jurisdiction outside the United States of America (including its territories and possessions), Puerto Rico or Canada where we may be prevented by law or otherwise from carrying out this agreement:

**a.** You must arrange to investigate, defend or settle any claim or "suit."

**b.** You will not make any settlement without our consent.

**c.** We will pay expenses incurred with our consent.

## 3. EXCLUSIONS

This insurance does not apply to:

**a.** "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b.** "Bodily injury or property damage" for which the insured assumed liability under a contract or agreement. This exclusion applies only if the damage or injury occurred prior to the effective date of the contract or agreement.

**c.** Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law. This exclusion does not apply to liability you assume under any contract or agreement.

**d.** "Bodily injury" or "property damage" arising out of the ownership, maintenance, operation, use, including loading or unloading, or entrustment to others of watercraft over 50 feet in length or any aircraft:

    **(1)** Owned by any insured;

    **(2)** Chartered without crew by or on behalf of any insured; or

    **(3)** Owned and operated by an employee of any insured.

This exclusion does not apply to:

    **(1)** A watercraft while ashore on premises you own or rent; or

    **(2)** Liability assumed under any contract or agreement.

**e.** "Personal injury" consisting of discrimination directly or indirectly related to the employment or prospective employment of any person or persons by any insured.

**f.** "Property damage" to:

    **(1)** Property you rent, occupy or which is in your care, custody or control if:

        **(a)** You agreed to provide insurance for it; or

        **(b)** Such property is owned by a person or organization controlling the insured or is under the control of the insured.

**g.** "Property damage" to "your product" arising out of it or any part of it.

**h.** "Property damage" to "your work" arising out if it or any part of it and included in the "products-completed operations hazard." This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**i.** "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

Copyright, The Travelers Indemnity Company.

UM 01 40 06 88

AAI - 000243

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms. This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**j.** Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusion **b.** through **j.** do not apply to damage by fire to premises rented to you.

**B.** The following is added to **LIMITS OF INSURANCE** (Section III):

**6.** The Pollution Liability Aggregate Limit is the most we will pay under Coverage C for all damages because of injury and damage for which claim is first made during the policy period.

**C.** The following additional definition applies: "Pollution Liability hazard" means all "bodily injury" and "property damage" arising out of the discharge, release or escape of pollutants at or from:

**a.** premises you own, rent or occupy; or

**b.** any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

AAI - 000244

# INTERLINE
# ENDORSEMENTS

AAL-000245

# INTERLINE
# ENDORSEMENTS

AAL 000246

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FEDERAL TERRORISM RISK INSURANCE ACT DISCLOSURE

This endorsement applies to the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY - NEW YORK DEPARTMENT OF
    TRANSPORTATION
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
LIMITED ABOVE GROUND POLLUTION LIABILITY COVERAGE PART
ENVIRONMENTAL HAZARD POLICY
EMPLOYEE BENEFITS LIABILITY COVERAGE PART
ELECTRONIC MANUFACTURERS AND COMPUTER SERVICES ERRORS AND OMISSIONS
    LIABILITY COVERAGE FORM
SELF-INSURED EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE FORM
SELF-INSURED EXCESS LIQUOR LIABILITY COVERAGE FORM
SELF-INSURED EXCESS EMPLOYEE BENEFITS LIABILITY COVERAGE FORM
SELF-INSURED EXCESS PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE
EXCESS (FOLLOWING FORM) LIABILITY INSURANCE

## PROVISIONS

On November 26, 2002, the President of the United States signed into law the Terrorism Risk Insurance Act of 2002 (the "Act"). The Act establishes a program under which the Federal Government will partially reimburse *"Insured Losses"* caused by certain *"Acts of Terrorism"* (each as defined in the Act).

The Federal Government's share of compensation for *Insured Losses* in each year up to and including calendar year 2006 is 90% of the amount of *Insured Losses* in excess of each *Insurer's* statutorily established deductible for that year, subject to the *"Program Trigger"* (as defined in the Act). For calendar year 2007 the Federal Government's share is 85% of the amount of Insured Losses in excess of each *Insurer's* deductible, subject to the *Program Trigger*. In no event, however, will the Federal Government or any *Insurer* be required to pay any portion of the amount of aggregate *Insured Losses* occurring in any one year that exceeds $100,000,000,000, provided that such *Insurer* has met its deductible.

The charge for *Insured Losses* for each Coverage Part to which this endorsement applies is included in the total premium for each Coverage Part indicated in the premium schedule. The charge for each coverage is indicated below and/or on the premium schedule, and does not include any charges for the portion of losses covered by the federal government under the Act.

- **1%** **of each applicable Commercial Liability Coverage premium.**

AAI - 000247

# POLICYHOLDER NOTICES

AAI - 000248

# POLICYHOLDER NOTICES

AAI - 000249

# IMPORTANT NOTICE REGARDING INDEPENDENT AGENT
# AND BROKER COMPENSATION

For information about how St. Paul Travelers compensates independent agents and brokers, please visit www.StPaulTravelers.com, or you may request a written copy from Marketing at One Tower Square, 2GSA, Hartford, Connecticut 06183.

AAI - 000250

# IMPORTANT NOTICE

## NOTIFICATION OF PENDING CHANGES FOREIGN TERRORISM/TRIA

Pursuant to the requirements of the Terrorism Risk Insurance Act of 2002 (TRIA), this policy includes disclosure of the rate or premium charged for exposure to *"Insured Losses"* as defined under TRIA. TRIA is set to expire as of 12/31/07. If TRIA expires and is not extended or reenacted, the rate or premium disclosed for exposure to *"Insured Losses"* shall instead be applicable to exposure to loss caused by "act(s) of foreign terrorism", defined as follows:

**a.** Any act that is violent or dangerous to human life, property or infrastructure; and

**b.** The act has been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Any coverage provided for loss caused by an "act of foreign terrorism" shall be subject to all of the terms, definitions, exclusions and conditions of the applicable policy, and any applicable federal and/or state laws, rules or regulations.

AAI - 000251

# POLICYHOLDER NOTICE – ASBESTOS

Asbestos has long been a difficult problem for society as a whole and the insurance industry in particular. As a consequence, we are attaching an asbestos exclusion to your policy.

If you have questions about your insurance program, please contact your agent or local representative.

AAI - 000252

OVERPRINT
COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

POLICY NUMBER: YSM-CUP-4790A876-TIL-07
ISSUE DATE: 04-02-07
RATER: RM

EFFECTIVE DATE: 04-01-07
EXPIRATION DATE: 04-01-08

INSURED'S NAME: AMERICAN APPAREL, INC.
AND AS PER CG DO 74 04 93

| | | |
|---|---|---|
| New/Renewal: R | Special Code: SM | Watch File: 0 |
| Solicitor Code: | Program Code: P76 | Survey Code: 2 |
| SAI: 7664J9098 | Paymode: P | Reinsurance: N |
| MSI: | Audit Frequency: N | DOWNSTREAM |
| Rating Mode: G | Responsibility: Y | Pro Rata Factor: 1.000 |
| | Situs State: CA | |

PREMIUM SUMMARY

| S.B. | ACCT. MO. | EFF. DATE | PREMIUM .1500 | | TOTAL |
|---|---|---|---|---|---|
| | 04/07 | 04-01-07 | 61,693.00 | | 61,693.00 |
| | | | 61,693.00 | | 61,693.00 |

PREMIUM SPLIT BY LINE:

Auto
G.L. Other        61,693
Products
Malpractice

(RENEWING   YSM-CUP-4790A87-6-TIL-06   )

OFFICE: GLENDALE CA          05C
PRODUCER NAME: C M MEIERS COMPANY INC          VC547

Page 1 of 1

AAI - 000253

 **TRAVELERS**

One Tower Square, Hartford, Connecticut 06183

**CHANGE ENDORSEMENT**

**INSURING COMPANY:**
TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

| | |
|---|---|
| **Named Insured:** | AMERICAN APPAREL, INC. |
| | AND AS PER CG DO 74 04 93 |
| **Policy Number:** | YSM-CUP-4790A876-TIL-07 |
| **Policy Effective Date:** | 04-01-07 |
| **Policy Expiration Date:** | 04-01-08 |
| **Issue Date:** | 05-01-07 |
| **Premium $** | NIL |

Effective from 04-01-07 at the time of day the policy becomes effective.

THIS INSURANCE IS AMENDED AS FOLLOWS:

UNDERLYING POLICIES AND LIMITS ARE CHANGED AS FOLLOW:

| POLICY | LIMITS (000 OMITTED) | COVERAGE | COMPANY |
|---|---|---|---|
| 810-5158B471-TIL-06 11/15/06-07 | 1000 CSL | BAP | TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA |
| WA-766D-064680-015 | 1000 EACH ACCIDENT 1000 POLICY LIMIT FOR DISEASE 1000 PER EMPLOYEE (DISEASE) | EMPLOYERS LIABILITY | LIBERTY MUTUAL |
| GB06100567 | 1000 EACH ACCIDENT | FOREIGN AUTO LIABILITY | ST PAUL FIRE AND MARINE INSURANCE COMPANY |
| 660-4790A876-TIL-07 | 1000 EACH OCCURRENCE 1000 EACH PERSON OR ORG. 2000 GEN. AGG. 2000 PROD/COMP OPS AGG. | CGL | TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA |

NAME AND ADDRESS OF AGENT OR BROKER

C M MEIERS COMPANY INC        VC547
21045 CALIFA ST #100
WOODLAND HILLS               CA   92367

Countersigned by

_____
Authorized Representative

DATE: _____

**IL T0 07 09 87** (Page  1  of  1)

Office:  GLENDALE CA

AAI - 000254

POLICY NUMBER: YSM-CUP-4790A876-TIL-07
EFFECTIVE DATE: 04-01-07
ISSUE DATE: 05-01-07

LISTING OF FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS

THIS LISTING SHOWS THE NUMBER OF FORMS, SCHEDULES AND ENDORSEMENTS
BY LINE OF BUSINESS.

IL T0 07 09 87   CHANGE ENDORSEMENT

IL T8 01 01 01                                          PAGE:   1 OF   1

AAI-000255

CHANGE OVERPRINT/CHANGE SLIP
COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

POLICY NUMBER: YSM-CUP-4790A876-TIL-07
ISSUE DATE: 05-01-07
RATER: CC
CHANGE EFFECTIVE DATE:    04-01-07
EFFECTIVE DATE: 04-01-07
EXPIRATION DATE: 04-01-08

INSURED'S NAME: AMERICAN APPAREL, INC.
AND AS PER CG DO 74 04 93

New/Renewal:  R        Special Code:    SM        Watch File:  0
Solicitor Code:        Program Code:  P76        Survey Code:  2
SAI:  7664J9098        Paymode:  P            Reinsurance: N
MSI:               Audit Frequency: N        DOWNSTREAM
Rating Mode:  G        Responsibility:  Y        Pro Rata Factor: 1.000
                   Situs State:  CA

PREMIUM SUMMARY

|  | ACCT. | EFF. | PREMIUM |  |  |
|---|---|---|---|---|---|
| S.B. | MO. | DATE | .1500 |  | TOTAL |

PREMIUM SPLIT BY LINE:

   Auto
   G.L. Other
   Products
   Malpractice

OFFICE: GLENDALE CA        05C

PRODUCER NAME: C M MEIERS COMPANY INC        VC547

Page 1 of  1

AAI - 000256


**TRAVELERS**

One Tower Square, Hartford, Connecticut  06183

**CHANGE ENDORSEMENT**

**INSURING COMPANY:**
TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

|  |  |
|---|---|
| **Named Insured:** | AMERICAN APPAREL, INC. |
|  | AND AS PER CG DO 74 04 93 |
| **Policy Number:** | YSM-CUP-4790A876-TIL-07 |
| **Policy Effective Date:** | 04-01-07 |
| **Policy Expiration Date:** | 04-01-08 |
| **Issue Date:** | 08-21-07 |
| **Premium $** | NIL |

Effective from  04-01-07  at the time of day the policy becomes effective.

THIS INSURANCE IS AMENDED AS FOLLOWS:

UNDERLYING POLICIES AND LIMITS ARE CHANGED AS FOLLOW:

| POLICY | LIMITS (000 OMITTED) | COVERAGE | COMPANY |
|---|---|---|---|
| 810-5158B471-TIL-06 11/15/06-07 | 1000 CSL | BAP | TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA |
| WA-766D-064680-015 | 1000 EACH ACCIDENT<br>1000 POLICY LIMIT FOR DISEASE<br>1000 PER EMPLOYEE (DISEASE) | EMPLOYERS LIABILITY | LIBERTY MUTUAL |
| GB06100567 | 1000 EACH ACCIDENT | FOREIGN AUTO LIABILITY | ST PAUL FIRE AND MARINE INSURANCE COMPANY |
| 660-4790A876-TIL-07 | 1000 EACH OCCURRENCE<br>1000 EACH PERSON OR ORG.<br>2000 GEN. AGG.<br><br>2000 PROD/COMP OPS AGG. | CGL | TRAVELERS PROPERTY CASUALTY<br><br>COMPANY OF AMERICA |
| WC7-661-064680-27 | 1000 EACH ACCIDENT<br>1000 POLICY LIMIT FOR DISEASE<br>1000 PER EMPLOYEE (DISEASE) | EMPLOYERS LIABILITY | LIBERTY MUTUAL |

NAME AND ADDRESS OF AGENT OR BROKER

Countersigned by

C M MEIERS COMPANY INC    VC547
21045 CALIFA ST #100
WOODLAND HILLS            CA  92367

_____
Authorized Representative

DATE: _____

**IL T0 07 09 87** (Page  1  of  2)

Office:  GLENDALE CA

AAI - 000257



One Tower Square, Hartford, Connecticut 06183

**CHANGE ENDORSEMENT**

**Policy Number:** YSM-CUP-4790A876-TIL-07
**Policy Effective Date:** 04-01-07
**Policy Expiration Date:** 04-01-08
**Issue Date:** 08-21-07

WC7-661-064680-27      1000 EACH ACCIDENT          EMPLOYERS      LIBERTY
                        1000 POLICY LIMIT FOR       LIABILITY      MUTUAL

                        DISEASE
                        1000 PER EMPLOYEE (DISEASE)

WA7-66D064680-017      1000 EACH ACCIDENT          EMPLOYERS      LIBERTY
                        1000 POLICY LIMIT FOR       LIABILITY      MUTUAL
                        DISEASE
                        1000 PER EMPLOYEE (DISEASE)

**IL T0 07 09 87** (Page  2 of  2 )
Office: GLENDALE CA
Producer Name: C M MEIERS COMPANY INC

POLICY NUMBER: YSM-CUP-4790A876-TIL-07

EFFECTIVE DATE: 04-01-07

ISSUE DATE: 08-21-07

LISTING OF FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS

THIS LISTING SHOWS THE NUMBER OF FORMS, SCHEDULES AND ENDORSEMENTS
BY LINE OF BUSINESS.

IL TO 07 09 87    CHANGE ENDORSEMENT

IL T8 01 01 01                                    PAGE:   1 OF   1

CHANGE OVERPRINT/CHANGE SLIP
COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

POLICY NUMBER: YSM-CUP-4790A876-TIL-07
ISSUE DATE: 08-21-07
RATER: LW
CHANGE EFFECTIVE DATE:   04-01-07
EFFECTIVE DATE: 04-01-07
EXPIRATION DATE: 04-01-08

INSURED'S NAME: AMERICAN APPAREL, INC.
AND AS PER CG DO 74 04 93

New/Renewal: R          Special Code:   SM          Watch File:  0
Solicitor Code:         Program Code:  P76          Survey Code: 2
SAI: 7664J9098          Paymode: P                  Reinsurance: N
MSI:                    Audit Frequency: N          DOWNSTREAM
Rating Mode: G          Responsibility: Y           Pro Rata Factor: 1.000
                        Situs State: CA

PREMIUM SUMMARY

| S.B. | ACCT. MO. | EFF. DATE | PREMIUM .1500 | | TOTAL |
|------|-----------|-----------|---------------|---|-------|

PREMIUM SPLIT BY LINE:

Auto
G.L. Other
Products
Malpractice

OFFICE: GLENDALE CA        05C

PRODUCER NAME: C M MEIERS COMPANY INC        VC547

Page 1 of  1