UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x
WOODY ALLEN,

               Plaintiff,                      08 Civ. 3179 (TPG) (KNF)

    -against-

AMERICAN APPAREL, INC.,

               Defendant.
_____x

## DEFENDANT AMERICAN APPAREL, INC.'S PRETRIAL MEMORANDUM

BUCHANAN INGERSOLL & ROONEY PC

    Stuart P. Slotnick (SS-1964)
    Kristi A. Davidson (KD-4753)
    620 Eighth Avenue, 23rd Floor
    New York, NY  10018-1669
    Phone:  (212) 440-4400

LAW OFFICES OF CURTIS, VASILE P.C.
    Dominick A. Piccininni, Jr. (DP-4303)
    2174 Hewlett Avenue
    PO Box 801
    Merrick, New York 11566
    Phone: (516) 623-1111

*Attorneys for Defendant*
*American Apparel Inc.*

## TABLE OF CONTENTS

I.     BRIEF SUMMARY OF FACTUAL BACKGROUND..........................................1

II.    OVERVIEW OF CLAIMS.......................................................................................2

        A.     False Advertising..........................................................................................2

        B.     False Endorsement........................................................................................3

        C.     New York Civil Rights Law.........................................................................5

III.   OVERVIEW OF FIRST AMENDMENT OVERLAY..........................................6

IV.   DAMAGES...............................................................................................................8

VI.   CONCLUSION......................................................................................................10

I.   BRIEF SUMMARY OF FACTUAL BACKGROUND

Plaintiff claims damages based upon American Apparel's limited use of artistic photographs taken from scenes in the 1977 film *Annie Hall* in which Plaintiff appeared as the character Alvy Singer. That breadth of use can generally be described as follows:

- One billboard on the corner of Houston and Allen street in New York City and one "double-sided" billboard on the corner of Sunset and Alvarado in the Echo Park neighborhood of Los Angeles. The billboards were each installed on May 8, 2007 and removed at the request of Plaintiff's counsel on May 14, 2007, less than one week after it was initially posted.

- One "banner" featuring a close-up photograph of Alvy Singer's eyes and glasses above an American Apparel store situated across from the Echo Park billboard and several of the same "banner" hung on the side of the American Apparel factory building in Echo Park, which faced an empty lot or bus garage. The banners were all installed on May 8, 2007 and removed at the request of Plaintiff's counsel on May 14, 2007, less than one week after it was initially posted.

- A "slideshow" on americanapparel.net, the company's informational website (not its online store, americanapparelstore.net), which was loaded on April 13, 2007 and removed at the request of Plaintiff's counsel on May 11, 2007. This slideshow was one of 40 slideshows that appeared on any given day during that time period. Visitors to americanapparel.net saw whichever one of these slideshows was randomly selected pursuant to a computer algorithm.

1

Even if one were to assume that every person driving by the billboards and every unique visitor to americanapparel.net saw the images, the evidence shows that no more than 1,100,000 people saw the images during the limited period of time they were displayed. As a point of comparison, the population of Italy, where Plaintiff did two exclusive year-long (or longer) advertising campaigns involving multiple television commercials among other things, is over 58 times that.

## II.  OVERVIEW OF CLAIMS

Plaintiff Woody Allen has asserted claims under Section 43(a) of the Lanham Act as well as under Sections 50 and 51 of the New York Civil Rights Law. Plaintiff has not yet indicated whether he is proceeding under the false advertising provisions of Section 43(a)(1)(B) of the Lanham Act or under the false endorsement provisions of Section 43(a)(1)(A) of the Lanham Act or both. *See generally Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1019 (3d Cir. 2008) (recognizing that claim may be brought under either section). Because the elements of these two types of claims differ materially, we provide an overview of each below.

### A.  False Advertising

In order to establish a claim for false advertising under Section 43(a)(1)(B) of the Lanham Act, Plaintiff must prove each of the following elements: (1) that American Apparel has made false or misleading statements as to its own product or another's; (2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods traveled in interstate commerce; and (5) that there is a likelihood of injury to Plaintiff in terms of declining sales, loss of good will, or the like. *Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87 (3d Cir. 2000).

2

The evidence will show that Plaintiff cannot meet these elements. Among other things, Plaintiff has made no attempt to show that there has been actual deception or that a substantial portion of American Apparel's consumers were actually deceived. Nor can Plaintiff make any showing that he has been injured in terms of the loss of good will or otherwise. Finally, survey evidence establishes that the billboards and other uses at issue had just as much negative impact on their purchasing decisions as any positive impact. In other words, American Apparel's consumers were just as likely <u>not</u> to purchase t-shirts or other American Apparel products after seeing the billboards at issue as were likely to actually purchase anything.

B.  **False Endorsement**

In order to establish a claim for false endorsement under Section 43(a)(1)(A) of the Lanham Act, Plaintiff must prove each of the following elements: (1) American Apparel made a false or misleading misrepresentation of fact; (2) that the misrepresentation was made in commerce; (3) that the misrepresentation was made in connection with the goods and services American Apparel provides; and (4) that the misrepresentation was likely to cause consumers of American Apparel's products to be confused as to Plaintiff's endorsement or sponsorship of American Apparel. *See, e.g., Burck v. Mars, Inc.*, 571 F. Supp. 2d 446 (S.D.N.Y. 2008).

Once again, Plaintiff will not be able to establish these elements. Among other things, there is no evidence that any statement (even if its assumed that statement was false or misleading) was made in connection with American Apparel's goods or services. Indeed, no goods or services were even depicted in the images, and as stated above, the images did not persuade a statistically significant number of persons to actually go to an American Apparel store and purchase product. Nor can Plaintiff prove that a statistically significant number of persons

3

were confused as to Plaintiff's endorsement or sponsorship. Indeed, three-quarters of people surveyed did not even recognize Plaintiff in the pictures.

On this issue – whether consumers were likely to be confused – it bears reiterating the factors to be applied in the false endorsement context:

1. the level of recognition that Plaintiff has among the segment of society for whom American Apparel's products are intended;

2. the relatedness of the fame or success of Plaintiff to American Apparel's products;

3. American Apparel's intent in selecting Plaintiff;

4. marketing channels used;

5. evidence of actual confusion and the length of time that American Apparel used Plaintiff's image before any evidence of actual confusion arose;

6. likely degree of purchaser care;

7. the similarity of the likeness used by American Apparel to Plaintiff; and

8. the likelihood of expansion of American Apparel's product lines.

*Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1019 (3d Cir. 2008).[1]

These factors weigh heavily in favor of American Apparel. There is no evidence that Plaintiff is recognized by young adults (American Apparel's target demographic and majority of its customers) who were not even born when the movie *Annie Hall* was released. Plaintiff's fame or success bears no relationship to American Apparel's products. American Apparel never intended to use the photographs for purposes of advertisement or trade, but instead used the images as part of artistic expression, as a form of parody and to make a social and newsworthy statement (discussed below). The marketing channels used (if one can call them marketing channels) were extremely limited in nature – primarily one billboard in New York and a double-

---

[1] These factors are a slightly-modified version of the *Polaroid* factors, which were crafted with a typical trademark infringement claim in mind.

4

sided billboard in Los Angeles. There is no evidence that anyone ever actually saw, much less commented on, the website slideshow. Plaintiff has not presented any evidence of actual confusion, which is not surprising considering the billboards were on display for less than one week and the internet images were taken down in less than one month. Other factors are inapplicable or a wash.

In short, Plaintiff will not be able to prove that American Apparel is liable for either false advertising or false endorsement.

### C. New York Civil Rights Law

Sections 50 and 51 of the New York Civil Rights Law, state that any person whose name, portrait, picture, or voice is used within the State of New York for purposes of advertising or trade without having first obtained the written consent of that person may sue and recover damages for any injuries sustained by reason of such use. N.Y. Civ. Rights Law § 50. Thus, Plaintiff must prove that American Apparel: (1) used Plaintiff's picture for purposes of advertising or trade (2) within New York (3) without Plaintiff's consent and (4) there was a direct and substantial connection between the appearance of Plaintiff's name or likeness and the advertising or trade purpose to which the image was put. *Molina v. Phoenix Sound Inc.*, 297 A.D.2d 595, 747 N.Y.S.2d 227 (N.Y.App.Div 2002); *Schoeman v. Agon Sports, LLC*, 816 N.Y.S. 2d 701 (Sup. Ct. Nassau Co. 2006). Plaintiff cannot establish even the first of these four elements. The evidence shows that American Apparel used the pictures for purposes of artistic expression, parody, and social and newsworthy commentary. There is no evidence that American Apparel intended to use the images for the purpose of selling t-shirts or other products. Because American Apparel did not intend to so capitalize on its use of the *Annie Hall* images, it cannot be held liable. *People v. Charles Schreibner's Sons*, 130 N.Y.S.2d 514 (N.Y.Cty.Ct

5

1954); *Nebb v. Bell Syndicate*, 41 F.Supp. 929 (S.D.N.Y. 1941). Plaintiff has not adduced any evidence that American Apparel intended to use Plaintiff's image to sell t-shirts. In fact, all of the evidence shows that American Apparel conceived and displayed an artistic expression, for parody, and to make a social and newsworthy statement (discussed below).

Moreover, a claim for invasion of privacy or violation of a right of publicity cannot be based upon an insignificant or fleeting use. *Doe v. Darien Lake Theme Park & Camping Resort, Inc.*, 715 N.Y.S.2d 825 (N.Y.App.Div. 2000); *Delan v. CBS, Inc.*, 458 N.Y.S.2d 608 (N.Y.App.Div. 1983); *Groden v. Liberty Cable*, 664 N.Y.S.2d 276 (N.Y.App.Div. 1997). A display on one billboard in a small New York neighborhood for less than a week, particularly when compared to the number and type of other images displayed throughout New York City, is certainly insignificant and fleeting, even when combined with the other short-lived and limited displays.

### III.   OVERVIEW OF FIRST AMENDMENT OVERLAY

As discussed above, the evidence establishes that Plaintiff has not and cannot prove the legal elements of the claims he has asserted against American Apparel. Even more fundamentally, however, Plaintiff should not be permitted to pursue those claims because American Apparel's use of the *Annie Hall* images constituted expressive speech protected by the First Amendment to United States Constitution.

The First Amendment states "Congress shall make no law . . . abridging the freedom of speech." This includes not only written or spoken words, but also other modes of speech or expression, including photographs. *Hurley v. Irish-American Gay, Lesbian, and Bisexual Group of Boston, Inc.*, 151 U.S. 557, 569 (1995).

In this instance, American Apparel used the *Annie Hall* images to artistically express the thoughts, perceptions and comments of American Apparel's CEO and President, Dov Charney, on matters that were both highly personal to Mr. Charney and his (then-private) company, American Apparel, as well as socially pertinent and newsworthy. In essence, through creative manipulation of images chosen with particular views in mind and then combined with a specific selection of Yiddish text, American Apparel created works of artistic expression. Those artistic expressions contained both parody speech as well as a social statement on the harm careless members of the media can inflict upon people while simultaneously obscuring their entire collection of professional work.

The images selected from the film *Annie Hall* were particularly poignant for this purpose. The character portrayed by Mr. Allen in the film *Annie Hall* felt self-conscious about aspects of his personality that he believed, rightly or wrongly, were being misperceived by Annie Hall's family. Similarly, Plaintiff himself had been the subject public criticism and media sensationalism based upon misperceptions of Plaintiff and his personal life. Mr. Charney, himself the target of unflattering and inaccurate media attention and alleged scandal, used the *Annie Hall* images to pictorially depict, and comment upon, these parallels. Mr. Charney intended to express his angst at the negative media sensationalism to which he had been subjected, and which was based upon misperceptions and distortions of the truth. He sought to express his frustration of being vilified by the press (much as Plaintiff was) and wanted to commence a dialogue on these issues as well as convey the message that media sensationalism too frequently overshadows the content of an individual's creative work. This is quintessential speech protected by the First Amendment. *See, e.g., ETW v. Corp. v. Jireh Pub., Inc.*, 332 F.3d 915 (6th Cir. 2003) (works of artistic expression); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S.

569, 580 (1994) (parody); *Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) (social commentary); *Rogers v. Grimaldi*, 695 F. Supp. 112 (S.D.N.Y. 1988), *aff'd*, 875 F.2d 994 (2d Cir. 1989) (newsworthy); *Lemerond v. Twentieth Century Fox Film Corp.*, 2008 U.S. Dist. LEXIS 26947 (S.D.N.Y., Mar. 31, 2008) (Preska, J.) (newsworthy).

In order to overcome the First Amendment protections, Plaintiff cannot simply point to an implied misrepresentation concerning the use of his image. *Rogers v. Grimaldi*, 875 F.2d 994, 999-1000 (2d Cir. 1989). Rather, Plaintiff must prove either (1) The use of Plaintiff's image had no artistic relevance to the idea or concept being expressed; or (2) Although the use of Plaintiff's image had some artistic relevance to the idea or concept being expressed by American Apparel, American Apparel explicitly misled purchasers as to the source or the content of the image. *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002) (citing *Rogers*, 875 F.2d at 999). Plaintiff cannot meet this heavy burden.

## IV. DAMAGES

[REDACTED] Plaintiff has offered no concrete support for this alleged damage. To the contrary, this range vastly exceeds both the fees Plaintiff has been paid to do commercial endorsements in the past and bona fide offers Mr. Allen has received to endorse products – including offers made close in time to the use at issue here. Notably, both Mr. Allen's prior endorsements and the offers he has received generally seek the exclusive use of his skills as a writer, director or producer (or a combination thereof) in connection with a national or multi-national advertising campaign involving multiple television commercials and other related advertising over a period of a year or more. It is unreasonable to suggest or to conclude that Mr. Allen's damages in this case, which relate to images displayed on

*[handwritten margin note: FILED ← UNDER SEAL]*

three billboards and a few banners for less than a week and on American Apparel's informational website (not its online store) for less than a month would command a similar fee.

Finally, Plaintiff seeks disgorgement of American Apparel's sales. Plaintiff has failed to establish, or even attempt to establish, a nexus between the use of the images at issue and American Apparel's sales. This is not surprising considering the image at issue was not intended to increase sales, had no meaning to American Apparel's target customer demographic (young adults born after *Annie Hall* was released), and was one of 2,598 images displayed by American Apparel throughout 2007. In fact, when one actually looks at American Apparel's sales data, it quickly becomes clear that the fleeting use of the *Annie Hall* images had no impact at all on American Apparel's sales.

V.   CONCLUSION

In sum, Defendant respectfully submits that the evidence adduced at trial will demonstrate that Plaintiff does not have any valid claim, that American Apparel is not liable and that damages of any nature should not be assessed.[2]

Dated:  May 4, 2009
         New York, New York

Respectfully submitted,

BUCHANAN INGERSOLL & ROONEY PC

By: _____
    Stuart P. Slotnick (SS-1964)
    Kristi A. Davidson (KD-4753)
    620 Eighth Avenue, 23rd Floor
    New York, NY  10018-1669
    Phone:  (212) 440-4400

LAW OFFICES OF CURTIS, VASILE P.C.
    Dominick A. Piccininni, Jr. (DP-4303)
    2174 Hewlett Avenue
    PO Box 801
    Merrick, New York 11566
    Phone: (516) 623-1111

*Attorneys for Defendant
American Apparel Inc.*

---

[2] In their pretrial memorandum, which was received just prior to the filing of the instant pretrial memorandum, Plaintiff's counsel conclude that evidence at trial will demonstrate that American Apparel is liable for, among other thing, attorneys' fees. As the Court is aware, Defendant sought an order prohibiting Plaintiff from referencing in any manner at the trial of this matter his claim for attorneys' fees. Both Plaintiff and the Court stated that whether Plaintiff will or will not be awarded attorneys' fees is a matter reserved for the Court to decide *after* trial has concluded and then only in the event that Plaintiff prevails. Based upon Plaintiff's pretrial memorandum, we again ask the Court to instruct Plaintiff's counsel that they are prohibited from referencing in any manner at the trial of this matter his claim for attorneys' fees.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Defendant American Apparel Inc.'s Pretrial Memorandum** has been filed electronically on May 4, 2009 through the Court's ECF filing system and that counsel listed below have been served via electronic mail with a true and correct copy of the foregoing by First Class Mail delivery this 4th day of May, 2009 upon the following counsel of record for Plaintiffs:

Christian Carbone
Loeb & Loeb LLP
345 Park Avenue
New York, NY 10154-1895

_____