**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------X
)
WOODY ALLEN,                                         )          Civil Action No. 08 CV 3179 (TPG)(KNF)
)
            Plaintiff,                  )
)          **DECLARATION OF STUART P. SLOTNICK**
)          **IN SUPPORT OF DEFENDANT'S**
)          **OPPOSITION TO PLAINTIFF'S**
      -against-                           )          **OMNIBUS MOTION *IN LIMINE***
)          **REGARDING THE INTRODUCTION OF**
)          **CERTAIN EVIDENCE CONCERNING**
)          **PLAINTIFF**
)
AMERICAN APPAREL, INC.,                              )
)
)
           Defendant.                  )
)
-----------------------------------------------------X

      STUART P. SLOTNICK declares the following pursuant to 18 U.S.C. § 1746:

      1.      I am a shareholder with Buchanan Ingersoll & Rooney PC ("Buchanan"), and I

am currently counsel for American Apparel ("American Apparel"). I have personal knowledge

of the facts set forth herein and respectfully submit this declaration in opposition to Plaintiff's

omnibus motion *in limine* regarding the introduction of certain evidence concerning Plaintiff.

      2.      Plaintiff's counsel makes a number of egregiously misleading statements in his

Declaration in support of Plaintiff's motion in limine "regarding irrelevant and prejudicial

witness testimony and evidence." I submit this Declaration to correct the record.

      3.      First, Plaintiff's counsel states that fact discovery in this matter ended on

February 15, 2009. As an initial matter, I note that this February 15, 2009, date refers to a

discussion I understand took place during the Rule 26 conference with the Court in October,

2008. Although I was not counsel of record at the time, I understand from my co-counsel,

Dominick Piccininni, who was present at that conference, that during the conference Plaintiff's counsel advocated for a short fact discovery period. Mr. Piccininni expressed American Apparel's view that the discovery period advocated by Plaintiff's counsel would be insufficient and a longer period would be required. The Court encouraged all parties to complete fact discovery on or before February 15, 2009. The Court did not, however, enter a discovery Order setting a formal fact discovery cut-off date.

4.      It quickly became clear that Mr. Picininni's prediction was spot on. Among other things, Plaintiff's counsel noticed the depositions of more than ten (10) American Apparel employees and former employees. Ultimately, Plaintiff's counsel deposed nine (9) of these individuals. Plaintiff's counsel also served extremely broad document demands; thereafter, apparently dissatisfied with American Apparel's objections and responses to those demands, Plaintiff's counsel asked American Apparel to conduct a broad search of electronic data using numerous different key word search terms, many of which were extremely general in nature. American Apparel agreed to conduct that search. Not surprisingly, the broad search generated extensive electronic data. It then took several weeks to review the reams of print-outs for any arguably relevant data, to excise privileged communications, and to prepare them for production to Plaintiff's counsel.

5.      At the same time, American Apparel tried in vain to get Plaintiff's counsel to respond to American Apparel's own document demands and other discovery. During this period, Plaintiff's counsel made numerous misrepresentations concerning its alleged compliance with discovery obligations. It was only when American Apparel filed its Motion to Compel that Plaintiff's misrepresentations were proven. Among other things, after being ordered to do so by this Court, over the last two weeks Plaintiff's counsel has finally and for the first time produced

2

five of the commercials Mr. Allen did for COOP and Telecom Italia (one still has not been produced despite repeated demands) as well as emails and other documents concerning endorsement offers Mr. Allen has received.  And, despite their prior representations that no responsive documents had been withheld on privilege grounds, during the past two weeks Plaintiff's counsel also has produced two privilege logs (including one sent just *two days ago*).

6.      Moreover, notwithstanding their current argument that fact discovery closed on February 15, 2009, Plaintiff's factual fishing expedition did not stop on that date.[1]  For example, despite having been served with subpoenas in December, 2008 and January, 2009, Mr. Allen's manager and agent did not make themselves available for their depositions until well after February 15, 2009.  Putting aside their failure to make their own witnesses available for deposition before February 15, 2009, since that date Plaintiff's counsel have propounded their own affirmative discovery, such as subpoenas duces tecum directed to third parties (attached as Exhibit 1).  Documents produced in response to these third party subpoenas revealed the identity of additional persons who may have discoverable knowledge (including Matthew Wiger, identified on American Apparel's April 28, 2009 supplemental disclosures).  It is thus incredible that Plaintiff's counsel seeks to prevent American Apparel from calling any person listed on its supplemental disclosures as witnesses at trial.

7.      With respect to other individuals named on American Apparel's supplemental disclosures, the arguments of Plaintiff's counsel are no more credible and are equally misleading. For example, Plaintiff's counsel states that the "April Supplemental Disclosures were the first time that AAI had identified as having discoverable information various of the potential

---

[1]      Even Mr. Carbone acknowledges that depositions continued after February 15, 2009. (Carbone Decl. ¶ 6.)

3

witnesses named therein." (Carbone Decl. ¶ 4.) Being generous, this statement can only be described as misleading. Among the persons listed on that supplemental disclosure are the following:

- Stephen Tenenbaum, Mr. Allen's manager, who Mr. Allen identified in his deposition on December 15, 2008, as someone with knowledge of his prior endorsements and offers, who American Apparel subpoenaed on December 24, 2008, and who is identified on Plaintiff's own initial disclosures;

- John Burnham, Mr. Allen's agent, who Mr. Allen identified in his deposition on December 15, 2008, as someone with knowledge of his prior endorsements and offers, and whom American Apparel subpoenaed on January 6, 2009;

- Joel Faden, Mr. Allen's business manager, who Mr. Allen identified in his deposition on December 15, 2008, who was the escrow agent for at least one of Mr. Allen's prior endorsement deals, and who American Apparel subpoenaed on January 6, 2009;

- . Leslee Dart, Mr. Allen's publicist, who has made public statements to the media about this case;

- Letty Aronson, Mr. Allen's producer, who Mr. Allen identified in his deposition on December 15, 2008, as someone with whom he regularly speaks about these types of matters;

- The records custodian from International Creative Management, Mr. Allen's talent agency, who produced documents pursuant to a subpoena issued on January 6, 2009;

- Alexandra Spunt, a former American Apparel employee, who Plaintiff's counsel deposed on November 19, 2008;

- Rasmus Schionning, American Apparel's web director, who Plaintiff's counsel deposed on November 18, 2008;

- Carolina Crespo, one of American Apparel's graphics designers, who Plaintiff's counsel deposed on January 1, 2009;

- Cynthia Semon, a former American Apparel public relations person, who Plaintiff's counsel deposed on January 10, 2009;

- Benno Russell, American Apparel's art director, who Plaintiff's counsel deposed on November 21, 2008;

- Henry Magallon, American Apparel's informational technology director, who Plaintiff's counsel deposed on November 18, 2008;

- Adrian Kowalewski, American Apparel's CFO, who Plaintiff's counsel noticed for deposition on October 22, 2008; and

- American Apparel's experts (Dr. Jacoby, Mr. Hollander, Mr. Sealey, Mr. Roesler, and Mr. Bakewell), who were each timely disclosed pursuant to a Stipulated Court Order.

8.      I also note that Mr. Carbone sent my colleague trial subpoenas commanding the presence of each of the American Apparel employees listed above.

9.      That leaves only four people listed on the April 10 supplemental disclosures. Plaintiff's counsel had prior knowledge of the identity of these persons as well:

- Documents referencing Morris Charney were produced to Plaintiff's counsel, and Plaintiff's counsel asked Dov Charney about these documents during his deposition;

- Joyce Crucillo, American Apparel's in-house counsel, who had extensive conversations with Plaintiff's counsel both prior to and after the commencement of this action;

- David Abitbol, who is referenced in various documents produced by American Apparel and who Plaintiff's counsel asked about on the very first day of depositions Plaintiff's counsel took in this case (and on the second day of depositions Plaintiff's counsel marked as a deposition exhibit Mr. Abitbol's purported profile from the online social networking site "LinkedIn"); and

- Charles DeLauder, who is also in American Apparel's web department.

10.      Plaintiff's counsel also grossly exaggerates the nature of the references to Mr. Allen's personal life in American Apparel's expert reports. (Carbone Decl. ¶ 5.) For example, in a 62 page report comprised of 171 paragraphs, Mr. Bakewell references Mr. Allen's

personal life at most 10 times.  Similarly, in a 26 page report, Mr. Roesler references Mr. Allen's

personal life only a handful of times; the bulk of his analysis focuses on the terms of the

television commercials endorsements Mr. Allen has done in the past and the various

endorsement offers he has received.

      11.     Finally, in their moving papers Plaintiff's counsel references a number of articles

written by the media about this case to argue that American Apparel intends "to make

Mr. Allen's personal life the centerpiece of AAI's defense." (Carbone Dec. ¶ 5.)  For example,

Plaintiff's counsel references an article in the April 21, 2009 edition of the *New York Post*, which

falsely reported that Mr. Charney claimed he would be "'completely justified' dragging Woody

Allen's wife into their court battle, because she badmouthed his company." As Plaintiff's

counsel is well aware, Mr. Charney did not make any statement of the sort.  What American

Apparel's *lawyers* stated (in papers publicly filed with the Court), was that although it would

have been proper for American Apparel to seek to depose Ms. Previn because Mr. Allen himself

testified about her knowledge of issues in this case, we intentionally refrained from doing so.

We have no intention of calling her or her mother at trial.

      12.     Plaintiff's counsel also cites an April 15, 2009 article in the internet news

publication, *The Huffington Post*, which falsely attributes me as saying Mr. Allen's personal life

will be the focus of the trial of this matter.  I never made such a statement, and it is not true.  The

focus of this matter relates to freedom of speech and expression.  As explained in our papers,

while Mr. Allen's perceived personal life is relevant to Mr. Charney's motivation in using his

image and potentially on damages, which must be considered by the jury, we have no plan to

delve into Mr. Allen's personal life as has been characterized by Plaintiff.

13.     Instead, as stated above, the focus of this trial will be American Apparel's freedom of expression, the use of the images at issue and how and why those images were used.

14.     A true and correct copy of excerpts of Mr. Allen's deposition transcript is attached as Exhibit 2.

Dated:  May 6, 2009
New York, New York

_____
Stuart P. Slotnick (SS-1964)